IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

EILEEN AHERN,
MAUREEN MASTALERZ,
DEBRA AUGER
Plaintiff,

v. N 05 117 ML

ANTHONY J. PRINCIPI,
Secretary, Department of
Veterans Affairs,
Defendant

COMPLAINT

1. This action is a complaint of employment discrimination practiced at the Providence Veterans Administration Medical Center based on gender and brought under 42 U.S.C. §§1981 and 1983 and 42 U.S.C. § 2000e *et seq.*

2. The Plaintiffs are seeking a declaration that the Providence Veterans Medical Center (Hereinafter "PVAMC") engaged in gender discrimination and retaliation and reprisal against the Plaintiffs for complaining about discrimination, and maintained a hostile working environment for these Plaintiffs in the Radiology Department.

3. The Plaintiffs are seeking injunctive relief to restore them to the status ante, Along with lost wages and benefits of employment that occurred as a result of the above discrimination, effects of discrimination and hostile environment.

JURISDICTION, VENUE, AND PARTIES

4. This Court has jurisdiction pursuant to 42 U.S.C. § 2000e, *et seq.* Venue is proper as the discrimination against the Plaintiff occurred in the Federal District of Rhode Island.

5. Plaintiffs are all female, and are, or were, employed in the radiology department of the PVAMC. Plaintiff Maureen Mastalerz is no longer employed at the PVAMC, while Plaintiffs Ahern and Auger remain employed by the PVAMC but are out on Workmans Compensation from injuries sustained by the actions of the PVAMC which led to this complaint. All plaintiffs are citizens of the United States.

6. After multiple fruitless attempts to resolve the issue and obtain relief using the administrative process available to the Plaintiffs at the PVAMC, Plaintiffs Maureen Mastalerz and Debra Auger filed a formal complaint with the Equal Employment Opportunity Office of the Veterans Administrations' Office of Resolution Management on September 17, 2004, Plaintiff Eileen Ahern on September 22, 2004 based on the discrimination and hostile environment rampant in their department at the PVAMC.

7. Ms. Ahern and Mastalerz received notices of a final agency decision on December 22, 2004. It has been more than one-hundred and eighty days since Ms. Auger filed her formal complaint. They are thus properly before This Court having exhausted administrative remedies or otherwise complied with the directives of the Equal Employment Opportunity office in the Office of Resolution Management of the Department of Veterans Affairs.

8. The Defendant, Anthony J. Principi, is the Secretary of the United States Department of Veterans Affairs, a United States Agency which is responsible for the management of personnel at the PVAMC.

9. Mehrdad Khatib is a male, and is, or was the Administrative Officer of the radiology

department of the PVAMC.

FACTS RELEVANT TO ALL CLAIMS

10. Plaintiffs Ahern, Auger and Mastalerz were all full time permanent employees in good standing in the radiology department at the PVAMC prior to May 3, 2003.

11. On or about May, 2003, Mehrdad Khatib (hereinafter "Khatib") expressed that he would rather have the male radiology technicians that worked at the hospital across the street from the PVAMC work for him rather than the women he had working for him.

12. On or about September 12, 2003 Khatib attempted to hire a male technician at a grade that would be a promotion without going through the process of updating a position discription and then posting the position so that others could apply.

13. Khatib engaged in numerous threatening contacts with the Plaintiffs at all times relative to the events in this complaint.

14. Sometime on or about September 12, 2003, Khatib referred the male employee he had tried to hire before to an employment agency so that Khalib could hire him at a higher salary than he would have been able to hire him as a Veterans Administration employee.

15. Khatib then hired the male employee as a contract employee. Soon after he placed this employee in the role as a *de facto* "charge" tech, who supervised and scheduled the activities of the Plaintiffs, who were not only full time VA employees and had more seniority than the male contract employee, but were all capable of taking the "charge" tech position.

16. Khatib soon after hired other male contract employees through employment agencies.

17. Plaintiffs tried to complain to their superiors about hostile treatment by Khatib, however, he would always find out and treat the Plaintiffs worse, doing such things as changing their schedules without notice, making their work unmanageable by scheduling patients in impossible numbers, and yelling at them in public or constantly criticizing their work, and coercing them.

18. On or about January 22, 2004, the Plaintiffs called a staff meeting with Khatibs' supervisor, who was also a women, to complain about Khatibs' behavior toward them. Khatib burst into the room, broke up the meeting, then demanded to know what was said about him, and by whom it was said.

19. The Plaintiffs eventually sought EEOC intervention and counseling, and eventually filed the above referenced complaints.

20. On information and belief, Khatib knew about the complaints against him and stepped up his active hostility toward the Plaintiffs, citing them for any infractions that he could find, badgered them about taking leave, threatened them with administrative action for taking leave, and accusing them of things like stealing and charging them with leaves of absence, even though he knew they would be off, and withheld call.[1]

21. At no time were any male radiology department employees treated in the same manner as the Plaintiff's who were all females. Khatib was often seen laughing and joking around with the male employees, his demeanor much different with the male

[1] "Call" is where a tech is "on call" to come in after regular hours if needed, usually paid at time and a half if they get called in. The contract techs got all the call, the Plaintiffs were not allowed to.

techs.

22. Plaintiff Ms. Mastalerz went out on leave because of the stress she endured under Khatib. When she returned, Khatib failed to restore her, despite a valid letter of fitness for duty from her physician. When she returned she was denied call, which would have allowed her to make extra money, and she was given a letter of reprimand by Khatib for some alleged breach of conduct. She finally was forced to resign as a result of the badgering of Khatib. She incurred medical expenses, lost sick time, vacation time, pension and wages as a result of having to be away from work because of her treatment at the PVAMC.

23. Plaintiff Ms. Ahern went out on family leave due to the hostile conduct of Khatib. She too breifly tried to return, but was soon treated badly by Khatib, who accused her of stealing government documents. She is now out on Workers Compensation. She incurred medical expenses, lost sick time, vacation time, pension and wages as a result of having to be away from work because of her treatment at the PVAMC.

24. Plaintiff Debra Auger is currently out on Workers Compensation because of her treatment by the PVAMC. She incurred medical expenses, lost sick time, vacation time, pension and wages as a result of having to be away from work because of her treatment at the PVAMC.

## COUNT I

## INTENTIONAL GENDER DISCRIMINATION

25. Khatib intentionally discriminated on the basis of gender when he intentionally

sought to hire more male radiology techs as opposed to the female techs he had, and hired more male contract techs than females.

26. Khatib intentionally discriminated on the bases of gender when he decided to direct a male applicant to an employment agency because he didn't feel that the position paid enough for the male applicant, and he wouldn't post a higher paid position that a female tech who was more senior may have gotten.

27. Khatib intentionally discriminated on the bases of gender when he hired that male contract tech at a contract salary that was higher than the salaries that the Plaintiff s received as permanent VA employees.

28. Khatib intentionally discriminated on the bases of gender when he appointed the male contract tech to be in charge of the Plaintiffs, and he told them that they had to report to the contract tech, despite the fact that they were all permanent employees and senior to that tech, and all could have functioned in the charge position.

29. That as a direct and proximate cause of the Defendant's intentional discrimination the Plaintiffs suffered damages.

COUNT II

GENDER DISCRIMINATION

30. Khatib discriminated on the basis of gender when he intentionally sought to hire more male radiology techs as opposed to the female techs he had, and hired more male contract techs than females.

31. Khatib discriminated on the bases of gender when he decided to direct a male applicant to an employment agency because he didn't feel that the position paid enough for the male applicant, and he wouldn't post a higher paid position that a female tech who was more senior may have gotten.

32. Khatib discriminated on the bases of gender when he hired that male contract tech at a contract salary that was higher than the salaries that the Plaintiff s received as permanent VA employees.

33. Khatib discriminated on the bases of gender when he appointed the male contract tech to be in charge of the Plaintiffs, and he told them that they had to report to the contract tech, despite the fact that they were all permanent employees and senior to that tech, and all could have functioned in the charge position.

34. That as a direct and proximate cause of the Defendant's discrimination the Plaintiffs suffered damages.

## COUNT III

## HOSTILE WORK ENVIRONMENT

35. Khatib created a hostile work environment where he treated male techs well and was constantly elevating them above the female techs. He placed a contract tech as charge, and told the plaintiffs, all women, that they would have to report to him.

36. While Khatib was laughing and joking around with the male contract techs, he was constantly talking harshly at and threatening the Plaintiffs, all females, increasing their workload, and threatening to change changing their working hours.

37. The hostile environment created by Khalib was severe and pervasive enough to cause the Plaintiffs to either resign, or go out on sick leave. All Plaintiffs suffered emotional distress as a result of the hostile environment created by Khatib.

38. That as a direct and proximate cause of the Defendant causing a hostile environment, the Plaintiffs suffered damages.

## COUNT IV

## RETALIATION/REPRISAL FOR GREIVANCES AND EEO ACTIVITY

39. When Plaintiffs would complain to Khatibs' superiors, Khalib would find out and the hostile treatment would become worse, as he would pick on and threaten the Plaintiffs.

40. When Khalib found out that the Plaintiffs had filed formal complaints against him, he became more agitated and hostile with the Plaintiffs, threatening them by getting uncomfortably close to them and talking at them through gritted teeth.

41. That on January 22, 2004, Khatib broke up a meeting that Plaintiffs were having with Khatib's supervisor regarding his behavior toward them, then demanded the tape of the meeting and demanding to know who had complained about him, and what they had said.

42. That as a direct and proximate cause of the Defendant's retaliation and reprisal the Plaintiffs suffered damages.

## RELIEF REQUESTED

43. WHEREFORE, Plaintiffs Eileen Ahern, Maureen Mastalerz, and Debra Auger prays that This Court:

(a) Declare that the Defendant has illegally intentionally discriminated or otherwise discriminated against the Plaintiffs on the bases of gender;

(b) Order the Defendant to cease gender discrimination in the radiology department at the PVAMC, and restore the Plaintiffs to the positions they held before they were discriminated against;

(c) Award the Plaintiffs damages for all lost income, benefits, terms and conditions of employment, and / or other adverse impacts;

(d) Award all costs and attorneys' fees pursuant to 42 U.S.C. §§ 1981, 1983, 2000e *et seq.*; and

(e) Order such other relief as the Court or jury may deem just and appropriate.

JURY DEMAND

Plaintiffs demand trial by jury on all issues that may be considered by a jury.

Respectfully Submitted,

Thomas E. Folcarelli #6393
94 Warner Street
Newport, RI 02840
401.619.0166
Fax: 401.274.2480
Counsel for Plaintiffs Eileen Ahern,
Maureen Mastalerz, and Debra Auger

**Department of Veterans Affairs**
**Office of Resolution Management**
**151 Knollcroft Road Building 16**
**Lyons NJ 07939**

**VIA: Federal Express**

DEC 22 2004

In Reply Refer To: **ORM/08E**

Thomas E. Folcarelli, Esq.
55 Bradford Street
Providence, RI 02903

**Subj: Notice of Final Agency Decision, EEO Complaint of Ms. Eileen Ahern, ORM Case No. 200G-0650-2004103754, Filed on September 22, 2004**

1. The purpose of this letter is to advise you and the complainant of the disposition of her complaint of discrimination which she filed against officials of the Department of Veterans Affairs Medical Center, Providence, Rhode Island. On August 3, 2004, the complainant initiated contact with an EEO Counselor. Counseling concluded on September 9, 2004, when the complainant was mailed via Federal Express, her Notice of Right to File a Discrimination Complaint letter which she received on September 14, 2004. On September 22, 2004, the complainant filed a Complaint of Discrimination, VA Form 4939.

2. The complainant's Complaint of Discrimination raises the following claim:

**A. Whether the complainant was subjected to a hostile work environment on the basis of sex (female) when:**

1. **On January 22, 2004, after an all employee staff meeting regarding her supervisor (M.K.) he (supervisor) demanded from the recording secretary that "all comments made by individuals be played back on the tape recorder so that he could identify any employee who spoke badly of him."**

2. **On January 27, 2004, while passing her supervisor (M.K.) in a corridor, he "threatened" her by stating, "Excuse me, come back here when I talk to you. I asked you how your day was going;" and upon hearing her response he further stated "it should be, because yesterday you asked me for help and today I got you help!"**

3. **On February 10, 2004, he gave a former department supervisor (B.F.), who was no longer "allowed in the department, a tour of the department.**

4. **On February 12, 2004, he informed her that she would be the "Lead CT Tech" however; he later sent an e-mail to all**

**CT Techs asking for "a technologist to be the main contact person in CT."**

5. **On February 10 and 19, 2004, her supervisor (M.K.) gave departmental tours thru CT to "outside male technologists" informing staff that they were looking for job openings in the department.**

6. **On March 12, 2004, the Department Chief, Dr. S.I., informed her that she spoke to her supervisor (M.K.) and told him not to "change the girl's tour of duty" although he (M.K.) had threatened to do so.**

7. **On or around March 2, 2004, her supervisor (M.K.) told her to "falsify patient records" by putting only the name of the CT Technician who "worked on the scanner" and not the name of all technicians involved in the case.**

8. **On March 11, 2004, her supervisor (M.K.) informed the CT techs that he had approval to change their tour of duty.**

9. **On April 2 and 5, 2004, her supervisor (M.K.) told her to "falsify patient records" by putting only the name of the CT Technician who "worked on the scanner" and not the name of all technicians involved in the case.**

10. **On April 12, 2004, her supervisor (M.K.) requested that all CT techs begin cross-training.**

11. **On April 12, 2004, her supervisor (M.K.) accused her of shredding work request sheets.**

12. **On April 30, 2004, her supervisor (M.K.) informed her that he would be changing her tour of duty.**

13. **On May 11, 2004, during a staff meeting, her Supervisor (M.K.) "slammed his binder on the table and spoke through clenched teeth" when questioned him about a change in operations.**

14. **On May 17, 2004, her supervisor (M.K.) required that she provide him with a daily list of all patients completed and upon review of the list he changed the format (color-codes) twice before returning to the original format.**

**15. On May 21, 2004, she received a written counseling letter.**

**16. On June 18, 2004, she was issued an Admonishment.**

**17. On June 3, 2004, her supervisor (M.K.) changed the manner in which patients were scheduled.**

**18. Ongoing April 29, 2004 through June 2004, numerous times a day he would call her or send the Chief Technologist to ask questions regarding the patient list.**

3. A review of the complainant's complaint indicates that she is alleging a continuing violation of discriminatory conduct towards her from January 22, 2004 through June 2004. The Equal Employment Opportunity Commission (EEOC) recognizes application of the continuing violation theory to patterns of allegations to determine whether untimely events may be acceptable with timely events for further processing. The continuing violation theory is not an exception or an excusable delay to the 45 day time limit, rather, the 45 day time limit will be considered met when the complainant can show the untimely allegations were part of a series of related discriminatory acts. The theory applies when at least one of the acts is timely raised, that is at least one incident must fall within the 45 day period to contact an EEO Counselor. In this case, none of the evidence presented by the complainant is timely; therefore the continuing violation would not be applicable in this case.

4. With regard to the incidents as stated in paragraphs **2A (1-18)** above, EEO regulations as found in 1614. 107 (a) (2) provide for the dismissal of a complaint or a portion of a complaint where a complaint has failed to comply with applicable time limits as found in 1614.105. These regulations provide that an aggrieved person must initiate contact with an EEO Counselor within 45 days of the date of the matter alleged to be discriminatory. These regulations further provide that this time limit may be extended if the complainant (1) was not notified of the time limit and was otherwise unaware of it, or 2) did not know and reasonable should not have known that the discriminatory incident occurred, or 3) despite due diligence, was prevented by circumstances beyond his control from contacting the counselor sufficiently by the time limit, or 4) for other reasons considered sufficient by the agency.

On December 17, 2004, the complainant's attorney provided an explanation for her delay in contacting an EEO Counselor within 45 days of the incidents listed stating:1)"Ben Werthan[1] holds himself out to be an EEO Counselor at the Providence VA and matters were discussed with him, without resolution or referral to ORM;" and 2) fear of reprisal.

We find the reason given by the complainant not sufficient to waiver the time limit

[1] Mr. Ben Werthan is the facilities EEO Manager.

for contacting an EEO counselor. While the complainant asserts that she contacted the facility's EEO Manager and he did nothing and did not refer her to ORM, we believe the complainant had "actual" knowledge of the EEO process as she had filed a previous complaint of discrimination against the agency. A review of the complainant's previous EEO activity indicates that the complainant filed a formal complaint of discrimination on April 4, 2000. It is reasonable to expect that the complainant was well aware of the EEO process including the timeline requirements for contacting an EEO counselor and the manner in which to contact an EEO counselor and as such should have initiated timely contact with an EEO counselor. Additionally the facility has provided evidence that the complainant could have gained "constructive" knowledge of the EEO as the facility has provided that throughout the medical center there are bulletin boards posted which provide information regarding the EEO complaint process and timelines for contacting an EEO counselor. Lastly, while the complainant asserts that she feared reprisal by her supervisor the EEOC has held that fear of reprisal is insufficient justification for waiving the time period for contacting an EEO Counselor in cases involving hostile work environment, *Sztukowski V. Secretary of Treasury, 01960956 (1997).* Therefore based on the above, it is my decision to **dismiss** the claims as stated in **2A (1-18)** above, under the authority as stated in 1614.107 (a) (2), failure to comply with applicable time limits.

5. This constitutes the Final Agency Decision on the complainant's complaint of discrimination. If the complainant is dissatisfied with this decision, she may appeal in accordance with the appeal rights listed below:

**RIGHT TO APPEAL**

This Final Agency Decision may be appealed within 30 calendar days of receipt of this decision. The appeal should be addressed to: Equal Employment Opportunity Commission (EEOC), Office of Federal Operations, P.O. Box 19848, Washington, D.C. 20036. If the complainant decides to appeal this decision to EEOC, she should use EEOC Form 573, a copy of which is enclosed.

A copy of her appeal to the EEOC must also be sent to the VA Office of General Counsel at the following address: Department of Veterans Affairs, Office of General Counsel (024), 810 Vermont Avenue, NW, Washington, D.C. 20420.

Statements or briefs in support of the complainant's appeal must be submitted to the EEOC within 30 calendar days of the filing of the appeal. A copy of any such statement or brief, including any statements made on EEOC's "Appellant Docketing Statement," must also be sent to the VA Office of General Counsel at the above address. If the complainant has an appeal with the EEOC, her appeal, and any subsequently filed statement or brief, must contain a statement certifying the date and method by which copies of these documents were served on the VA Office of General Counsel.

If the complainant files an appeal with the Commission beyond the above-noted time limit, you should provide the Commission with an explanation as to why the appeal should be accepted despite its untimeliness. If you cannot explain why timeliness should be excused, the Commission may dismiss the appeal as untimely.

The complainant should also submit a copy of the appeal to the Regional EEO Officer at the same time that she files the appeal with the EEOC at the following address: Lyons Office of Resolution Management (08E), 151 Knollcroft Road, Building 16, Lyons, NJ 07939.

**RIGHT TO FILE A CIVIL ACTION**

The complainant also has the right to file a civil action in an appropriate United States District Court. A civil action may be filed:

> Within 90 days of receipt of this final decision if no appeal to EEOC has been filed; or,
>
> If an appeal is filed with the EEOC, within 90 days after receipt of EEOC's final decision on her appeal; or,
>
> After 180 days from the date of filing an appeal with the EEOC if there has been no final decision by the EEOC

If the complainant files a civil action, the head of the Department of Veterans Affairs must be named as the defendant. The head of the Department of Veterans Affairs is **Mr. Anthony J. Principi.** Mr. Principi's official title is **Secretary of Veterans Affairs.** Failure to provide the name and official title of the head of the Department may result in the dismissal of her case.

If the complainant files a civil action under Title VII (discrimination due to race, color, religion, sex, national origin, or reprisal); or under the Rehabilitation Act of 1973, as amended, (discrimination due to disability), and if she does not have, or cannot afford the services of, an attorney, the Court may upon her request, appoint an attorney to represent her and permit the filing of the action without payment of fees, costs, or other security. The grant or denial of the request is within the sole discretion of the Court. Filing a request for an attorney does not extend the time in which to file a civil action. Both the request and the civil action MUST BE FILED WITHIN NINETY (90) CALENDAR DAYS of the date of receipt of this final agency decision or, if this decision is appealed to the EEOC, within NINETY (90) CALENDAR DAYS of the date of receipt of the EEOC's final decision on the appeal.

Your appeal may be mailed to:

**Equal Employment Opportunity Commission**
**Office of Federal Operations**
**P.O. Box 19848**
**Washington, DC 20036**

Or hand delivered to:

**Equal Employment Opportunity Commission**
**Office of Federal Operations**
**Appellate Review Programs**
**1801 L Street, NW**
**Washington, DC 20507**

Or sent by fax to:

**(202) 663-7022**

6. If you or the complainant have any questions concerning the processing of her complaint, please contact Ms. Linda Wilson, EEO Intake Specialist, at (781) 687-3811 or by fax (781) 687-3830.

Robyn Labombarda
Acting Regional EEO Officer

Attachment: EEOC Form 573

cc: Eileen Ahern, Complainant
273 Huxley Avenue
Providence, RI 02908-2450

**Department of Veterans Affairs**
**Office of Resolution Management**
**151 Knollcroft Road Building 16**
**Lyons NJ 07939**

**VIA: Federal Express**

DEC 22 2004

In Reply Refer To: ORM/08E

Thomas Folcarelli, Esq.
12 Newport Street
Newport, RI 02840

**Subj: ORM Notice of Final Agency Decision of the EEO Complaint, ORM Case No. 200G-0650-2003773 filed September 17, 2004 by Maureen Mastalerz**

1. The purpose of this letter is to advise you of the dismissal your complaint of discrimination which you filed against officials of the Department of Veterans Affairs, Medical Center, Providence, RI. On August 4, 2004 you initiated contact with an EEO Counselor. Counseling concluded on September 2, 2004 when you were mailed, via Federal Express, your Notice of Right to File a Discrimination Complaint letter which you received on September 7, 2004. On September 17, 2004 you filed a Complaint of Discrimination, VA Form 4939.

2. The Counselor report indicates the following claims and supporting evidence were addressed at the informal stage of the EEO complaint:

**Claim A – The complainant was discriminated against on the basis of sex (Female) and reprisal (protesting gender discrimination) with respect to terms and conditions of employment when:**

1. **The complainant and other employees had sent a letter to several management staff on April 22, 2004 that detailed incidents and events that the aggrieved employee said contributed to a hostile work environment. As of September 17, 2004 there had been no response.**

**Claim B - The complainant was discriminated against on the basis of sex (Female) and reprisal (protesting gender discrimination) with regard to a hostile work environment when:**

1. **On September 16, 2003 the complainant complained to Dr. SI about MK's behavior towards females such as threats that he could do their job. There has been no response from Dr. SI.**

2. **On January 22, 2004 during a staff meeting with Dr. SI to discuss issues with MK, MK entered the meeting and it ended. There has been no response from Dr. SI.**

3. **On March 29, 2004, the complainant attempted to talk with MK about staff meetings that were set up so that staff could not attend and MK**

**laughed it off.**

4. **On March 17, 2004 the complainant was informed by supervisor JB that MK wanted only one technician's name in the case editing for CT exams which is against regulations.**

5. **On April 19, 2004 the complainant was informed by letter that the change in her tour of duty would now be effective May 2, 2004. On May 3, 2004 that change was rescinded with no explanation.**

3. In the formal complaint form 4939 and attachments, the complaint filed a hostile Work Environment complaint on the basis of Sex (female) and Age (DOB April 3, 1954)[1], listing the events in Claim A-1 and in Claim B-3, B-4 and B-5 and also the additional incidents as follows:

**Claim C - The complainant was discriminated against on the basis of sex (Female) and Age (DOB April 3, 1954) with regard to a hostile work environment when:**

1. **On April 29, 2004 MK changed procedures regarding scheduling patients, causing no breaks, no lunchtime and overtime.**

2. **On May 17, 2004, MK interfered with in-house color coding which helped staff keep records organized.**

3. **On May 20, 2004 MK required additional paperwork regarding daily flowcharts and changes in patient scheduling and daily harassment about whether patients were "done".**

**Claim D - The complainant was discriminated against on the basis of sex (Female) and Age (DOB April 3, 1954) with regard to disciplinary related issues when:**

1. **On May 21, 2004, the complainant received a letter of admonishment.**

2. **On May 26, 2004, the complainant received a letter of counseling from supervisor JB for referring patients with scheduling complaints to MK.**

4. EEO regulations require aggrieved persons who believe they have been discriminated against to consult with an EEO counselor within 45 calendar days of the date of the alleged discriminatory act 29 CFR.§1614.105 (a) (2). These regulations further provide that the time limit may be extended if the complainant (1) was not notified of the time limit and was otherwise unaware of it, or (2) did not know and reasonably should not have known that the discriminatory incident or personnel action

[1] Complainant did not provide her date of birth but it is April 3, 1954, per Human Resources records.

occurred, or (3) despite due diligence, was prevented by circumstances beyond control from contacting the counselor sufficiently by the time limit, or (4) for other reasons considered sufficient by the agency or the Commission. 29 CFR§1614.105 (a) (2). The regulations further provide that the agency shall dismiss a complaint that fails to comply with this time limit. 29 CFR§1614.107 (a)(2).

5. According to the complaint file, your initial contact with an EEO counselor was August 4, 2004 when the complainant contacted the Office of Resolution Management on the toll free line, to initiate an informal complaint. This was more than 45-calendar days after the events discussed in counseling and/or in the formal complaint. In an undated letter to you that was sent via Federal Express on December 9, 2004 and received by you at your office on December 10, 2004 you were asked to explain why the complainant waited more than 45 days after the most recent event to contact an EEO Counselor. Your response by e-mail was dated December 17, 2004 and received on December 21, 2004. Your response indicated two reasons for the delay: 1) that the EEO Manager at the Providence VA Medical Center calls himself an EEO Counselor thus deterring an aggrieved party unless they know they must bypass him, and 2) fear of reprisal: it was not until consultation with counsel outside the VA that the complainant realized that she had a right to file these claims with ORM.

6. The VA Medical Center in Providence, RI has provided us with information about constructive notice; specific locations of EEO posters providing information about the EEO time limits and the information about when those posters were put up. Additionally it is noted that fear of reprisal generally does not toll the limitations period as the regulations provide for filing of a complaint to protect a person from such retaliatory actions. It is also noted that the complainant initiated a prior EEO complaint on February 29, 2000 which was closed by settlement agreement at the EEOC hearing stage. The complainant was obviously knowledgeable about the EEO complaint process at that time. The evidence shows that you were made aware of the relevant EEO timeframes. Pursuant to EEO regulations 29 C.F.R. § 1614.107 (a) (2), **Claims A, B, C, and D are <u>DISMISSED</u>** in accordance with the above-cited legal authorities.

7. On December 21, 2004 this office received documents from you dated December 17, 2004 indicating that your client had additional incidences of reprisal and harassment which included the following:

**Claim E The complainant was discriminated against on the basis of sex (Female), Age (DOB April 3, 1954) and reprisal for prior EEO Activity, with regard to a hostile work environment when:**

1. **On November 15, 2004 the complainant received a reprimand for being Absent Without Leave on November 3, 2004.**

2. **On December 14, 2004, the complainant submitted her resignation effective January 3, 2005 and is claiming constructive discharge.**

8. New EEO regulations found in 29 CFR 1614.106 (d) permit a complainant to amend a complaint at any time prior to the conclusion of the investigation and to add new claims that are like or related to those raised in the pending complaint. These same regulations also provide that new evidence be reviewed to determine whether it provides additional evidence to support the existing claim, but does not raise a new claim in or of itself; whether it raises a new claim that is like or related to the claim raised in the pending complaint; or whether it raises a new claim that is not like or related to the claim raised in the pending complaint.

9. According to current EEO law an allegation or claim is considered "like or related" to the original complaint if it adds to or clarifies the original complaint and could have reasonably been expected to grow out of the original complaint. Because the original complaint is entirely untimely and dismissed for being untimely, these events cannot be amended to it. Therefore, these events will be processed as a separate complaint and referred back to counseling.

10. In summation, the issues and events claims in the amendment request dated December 17, 2004, listed in paragraph 7 **will be processed as a separate complaint and you will be referred to an EEO counselor.** Furthermore, December 17, 2004, the date you filed the amendment request will be considered the date of initial contact for these events. Your EEO Counselor will be Frank Cullen in the Lyons, NJ Office. He will contact you to follow up on these claims as a new complaint. His telephone number is 908-604-5342.

11. This constitutes the final agency decision on your discrimination complaint. If you are dissatisfied with this decision, you may appeal it in accordance with the following appeal rights. You have the right to appeal, within 30 days of receipt, a dismissal, final action or decision.

## EEOC APPEAL RIGHTS

This Final Agency Decision may be appealed within **30 calendar days** of receipt of this decision. The appeal should be addressed to: **Equal Employment Opportunity Commission (EEOC), Office of Federal Operations, P.O. Box 19848, Washington, D.C. 20036.** If you decide to appeal this decision to EEOC, you should use EEOC Form 573, a copy of which is enclosed.

A copy of your appeal to the EEOC **must** also be sent to the VA Office of General Counsel at the following address: **Department of Veterans Affairs, Office of General Counsel (024), 810 Vermont Avenue, NW, Washington, D.C. 20420.**

Statements or briefs in support of your appeal must be submitted to the EEOC within 30 calendar days of the filing of the appeal. **A copy of any such statement or brief, including any statements made on EEOC's "Appellant Docketing Statement,"**

**must also be sent to the VA Office of General Counsel at the above address.** If you have an appeal with the EEOC, your appeal, and any subsequently filed statement or brief, must contain a statement certifying the date and method by which copies of these documents were served on the VA Office of General Counsel.

If you file an appeal with the Commission beyond the above-noted time limit, you should provide the Commission with an explanation as to why the appeal should be accepted despite its untimeliness. If you cannot explain why timeliness should be excused, the Commission may dismiss the appeal as untimely.

You should also submit a copy of the appeal to the Regional EEO Officer at the same time that you file the appeal with the EEOC at the following address: **Lyons Office of Resolution Management (08E), 151 Knollcroft Road, Building 16, Lyons, NJ 07939.**

## RIGHT TO FILE A CIVIL ACTION

*You also have the right to file a civil action in an appropriate United States District Court. A civil action may be filed:*

Within 90 days of receipt of this final decision **if no appeal to EEOC has been filed;** or,

If an appeal is filed with the EEOC, within 90 days after receipt of EEOC's final decision on your appeal; or,

After 180 days from the date of filing an appeal with the EEOC if there has been no final decision by the EEOC

If you file a civil action, the head of the Department of Veterans Affairs must be named as the defendant. The head of the Department of Veterans Affairs is **Mr. Anthony J. Principi.** Mr. Principi's official title is **Secretary of Veterans Affairs.** Failure to provide the name and official title of the head of the Department may result in the dismissal of your case.

If you file a civil action under Title VII (discrimination due to race, color, religion, sex, national origin, or reprisal); or under the Rehabilitation Act of 1973, as amended, (discrimination due to disability), and if you do not have, or cannot afford the services of, an attorney, the Court may upon your request, appoint an attorney to represent you and permit the filing of the action without payment of fees, costs, or other security. **The grant or denial of the request is within the sole discretion of the Court.** Filing a request for an attorney does not extend the time in which to file a civil action. Both the request and the civil action **MUST BE FILED WITHIN NINETY (90) CALENDAR DAYS** of the date of receipt of this final agency decision or, if this decision is appealed to the EEOC, within **NINETY (90) CALENDAR DAYS** of the date of receipt of the EEOC's final decision on the appeal.

Your appeal may be mailed to:

**Equal Employment Opportunity Commission**
**Office of Federal Operations**
**P.O. Box 19848**
**Washington, DC 20036**

Or hand delivered to:

**Equal Employment Opportunity Commission**
**Office of Federal Operations**
**Appellate Review Programs**
**1801 L Street, NW**
**Washington, DC 20507**

Or sent by fax to:

**(202) 663-7022**

12. If you have any questions concerning the processing of your complaint, please contact Linda Wilson, Intake Specialist at (781-687-3811.

Robyn Labombarda

ROBYN LABOMBARDA
Acting Regional EEO Officer

Enclosure

cc: Jeannette Chirico-Post, MD, Network Director, VISN I, Bedford, MA

**Department of Veterans Affairs**
**Office of Resolution Management**
**151 Knollcroft Road Building 16**
**Lyons NJ 07939**

Via: Federal Express

DEC 30 2004

**ORM/08E**
In Reply Refer To:

Thomas Folcarelli, Esq.
12 Newport Ave
Newport, RI 02840

**Subj: Notice of Partial Acceptance and Partial Dismissal of EEO Complaint - Case No. 200G-0650-2004103765 Filed September 17, 2004 by Debra Auger.**

1. The purpose of this letter is to advise you of the partial acceptance and partial dismissal of this complaint of discrimination which the complainant filed against officials of the Department of Veterans Affairs, Medical Center in Providence, RI. On August 3, 2004, the complainant initiated contact with an EEO Counselor. Counseling concluded on September 10, 2004, when the complainant was mailed, via Federal Express, a Notice of Right to File a Discrimination Complaint letter which she received on September 14, 2004. On September 17, 2004, she filed a Complaint of Discrimination, VA Form 4939.

2. A review of the Counseling report and related documents, and the formal complaint with attachments indicates she has raised the same incidents at the formal complaint that were addressed in counseling. The following claim is the formal complaint:

Claim A - The complainant was discriminated against on the basis of sex (Female) and reprisal (protesting gender discrimination)[1] with regard to a hostile work environment when

1. On May 3, 2003 MK expressed a keen interest in the male technicians from the Roger Williams Medical Center, which is across the street from the VAMC Providence. The complainant said that MK seemed interested in having these male technicians working for him rather than the female technicians.

2. On September 12, 2003 MK attempted to hire a male technician at a grade that would be a promotion without going through a process of updating a Position Description and then having that position posted so others could apply for the position.

3. On September 16, 2003 the complainant complained to Dr. SI about MK's behavior towards females such as threats that he could do their job.

[1] Reprisal based on February 3, 2004, claim A-13 reaction by MK to January 22, 2004 meeting with Dr. SI, complainant and other female staff regarding his discriminatory behavior.

4. On September 17, 2003 the complainant spoke with JB about MK's behavior towards females such as threats that he could do their job.

5. On October 21, 2003, MK designated a male contract worker, instead of a permanent female employee to be the Super User for computer related issues.

6. On October 23, 2003 MK put a contract worker on an Angio case without discussing this with the complainant.

7. On January 8, 2004 the complainant asked MK for a letter documenting her duties as Department Coordinator. MK has not provided this.

8. On January 9, 2004 MK walked away from the complainant while she was talking to him.

9. On January 22, 2004 during a staff meeting with Dr. SI to discuss issues with MK, MK entered the meeting and the meeting ended.

10. On January 23, 2004 male technicians from the Roger Williams Medical Center were hanging around ostensibly waiting for MK. According to the complainant one of these techs was not supposed to be in the building.

11. On January 27, 2004 MK met with the complainant to discuss a change in her tour of duty.

12. On January 28, 2004 MK took the portable phone that the complainant was using as Department Coordinator.

13. On February 3, 2004 the complainant was informed by JB that MK was furious about a letter he received from Dr. SI concerning a meeting she had with the technicians.

14. On February 5, 2004 MK was rude to the complainant.

15. On February 6, 2004 MK was rude to the complainant concerning her submissions for the morning report.

16. On February 10, 2004 MK intimidated the staff by bringing male technicians to the department and inferring they could do a better job than the female technicians.

17. On February 19, 2004 MK escorted male technicians from the Roger Williams Medical Center through the department. The complainant took pictures of these employees as one of them was not supposed to be in the facility.

18. On February 19, 2004 the complainant met with Dr. SI to discuss her fears that MK is trying to drive her out of her job.

19. On February 20, 2004 the complainant was verbally counseled for taking pictures on February 19, 2004.

20. On February 24, 2004 the complainant was given a written counseling for taking pictures on February 19, 2004.

21. On February 24, 2004 the complainant informed Dr. SI that she is under a lot of stress from the way that MK treats her.

22. On February 25, 2004 the complainant's physician advised her to take a leave of absence for health reasons.

23. On March 4, 2004 when the complainant arrived for work she found the lock to the Angio lab had been changed.

24. On March 8, 2004 MK did not discuss with the complainant an incomplete list of angiograms.

25. On March 9, 2004 the complainant was denied access to a computer menu recommended to assist her in her work.

26. On March 11, 2004 the complainant received a very demeaning e-mail message from MK concerning her role as Department Coordinator.

27. On March 11, 2004 MK decided to change the complainant's tour of duty.

28. On March 17, 2004 the complainant was informed by EA that MK wanted only one technician's name in the case editing for CT exams; possibly against regulations and decreasing productivity reports for staff.

29. On March 22, 2004 the complainant was not called in to a meeting with MK to discuss an issue regarding renal stents.

30. On March 30, 2004 MK treated the complainant as though she did not know how to perform her job when he questioned her about the care given to two Angio patients.

31. On April 2, 2004 MK ignored the complainant when discussing an

emergency outlet situation.

32. On April 12, 2004 MK accused the complainant of not doing her job and of shredding requisition forms.

33. On April 12, 2004 MK intimidated the complainant during a staff meeting by gesturing as though to start a fist fight.

34. On April 13, 2004 the complainant learned from EA that MK was planning on making drastic changes to her job by having her work in CT every day.

35. On April 15, 2004 the complainant was informed by JB that MK was taking away her duties as Education Facilitator.

36. On April 16, 2004 the complainant was informed in an e-mail message that the change in her tour of duty would be effective April 26, 2004.

37. On April 19, 2004 the complainant was informed by letter that the change in her tour of duty would now be effective May 2, 2004.

38. On April 22, 2004 letter of complaint delivered to Dr. SI, the Medical Director, the Associate Director of Operations/Nurse Executive, the Chief of Staff, the Chief of Human Resources and the Union thru SF, to which there has been no response.

39. During the week of April 26, 2004 the complainant is not allowed to fill in for the Lead Technician who is on annual leave. Instead a male contract employee is allowed to fill in.

40. On April 26, 2004 the complainant was not informed that the warehouse would no longer be stocking an IV contrast.

41. On April 29, 2004 MK inquired about an Emergency Room patient inferring that the CT staff is incompetent.

42. On April 30, 2004 MK again inquired about the status of patients including one who was being scanned at the time.

43. On April 30, 2004 MK threatened the complainant if she did not come in per her changed tour of duty, on Monday, May 3, 2004.

44. On May 3, 2004 the complainant met with MK and Dr. S. to discuss issues, the complainant felt that MK was trying to pressure her into getting her co-workers to not pursue their complaint.

45. On May 5, 2004 the complainant's physician's suggestion that she take a

leave of absence was denied by complainant.

46. On May 6, 2004 the complainant overheard MK tell someone that he was going to change the Angio Lab into a Cath Lab.

47. On May 7, 2004 MK moved her patients to another waiting area without telling her.

48. On May 17, 2004 the complainant was informed that MK was hassling the technicians about the color-coded highlighting the CT techs are using on their working copy of the CT schedules.

49. On May 20, 2004 the complainant received a Report of Contact from JB concerning an incident that happened in CT that she was not even involved in.

50. On May 20, 2004 the complainant was informed that a "flow sheet" for CT needed to be filled out every day.

51. On June 3, 2004 during a meeting with Human Resources the complainant learned that MK was planning to make major changes in the complainant's job description.

52. On June 4, 2004 MK tried to blame the complainant when a patient showed up for an Angio that was cancelled by surgery.

53. On June 4, 2004 the complainant was told to prepare a training plan for an employee who was going on three month military leave.

54. On June 14, June 15, and June 18, 2004 MK gave the complainant a difficult time because a co-worker LP has not been properly trained.

55. On June 17, 2004 MK did not consult the complainant about an incomplete procedure.

56. On June 21, 2004 MK did not discuss with the complainant his plans to have all the technicians trained on the Angio equipment.

57. On June 24, 2004 while discussing progress notes with the complainant, MK treated her in a very unprofessional manner.

58. On June 25, 2004 MK treated the complainant as though she were incompetent when he repeated orders that the complainant had already given to the CT technicians.

59. On July 6, 2004 the complainant took a leave of absence for work related

problems.

60. On July 9, 2004 the complainant received a letter from MK requesting additional medical information to support her request for sick leave but was not allowed enough time to submit this information.

61. On July 14, 2004 MK did not send correspondence to the complainant's attorney as she had requested.

62. On July 21, 2004 the complainant's leave of absence was extended to August 10, 2004.

63. On July 28, 2004 the complainant learned that a contract technician has been placed in a position of leadership.

64. On August 9, 2004 based in information from co-workers, the complainant felt that MK was trying to eliminate her position while she is out on a leave of absence.

65. On August 10, 2004 the complainant's leave of absence was extended to August 25, 2004.

66. On August 11, 2004 the complainant received a letter from MK requesting that she provide additional documentation to support her Family Medical Leave Act request without allowing her enough time to submit this documentation.

67. On August 19, 2004 the complainant learned that a contract technician has been moving equipment around in the Angio Lab.

3. On November 22, 2004, the complaint mailed an amendment request, received in this office on November 26, 2004 which included these additional events:

Claim B - The complainant was discriminated against on the basis of sex (Female) and reprisal (protesting gender discrimination) with regard to a hostile work environment when:

68. On September 18, 2004, the complaint received a package regarding her Workers' compensation claim and determined that MK made untrue statements.

69. On September 19, 2004 Dr. SI called complainant at home to ask that she contact HR and to ask if the complainant would be returning to work the next day. Dr. SI confirmed that she had received the doctor's statements that the complainant would be out until a follow-up appointment on September 22, 2004.

70. On September 20, 2004, the complainant contacted the HR staff person who then provided details of the medical clearance needed from her doctor when she was ready to return to work.

71. On November 5, 2004, the complainant received certified mail from MK indicating FMLA leave expires on November 12, 2004 and that she is expected to return to work with a medical clearance or appropriate administrative action may be taken. This was verbally rescinded by Dr. SI on November 12, 2004.

72. On November 5, 2004, the complainant called the OWCP claims examiner who advised that she should not be on FMLA because she has a Worker's Comp claim filed. He would contact VA to straighten it out.

4. New EEO regulations found in 29 CFR 1614.106 (d) permit a complainant to amend a complaint at any time prior to the conclusion of the investigation and to add new claims that are like or related to those raised in the pending complaint. These same regulations also provide that new evidence be reviewed to determine whether it provides additional evidence to support the existing claim, but does not raise a new claim in or of itself; whether it raises a new claim that is like or related to the claim raised in the pending complaint; or whether it raises a new claim that is not like or related to the claim raised in the pending complaint.

5. According to current EEO law an allegation or claim is considered "like or related" to the original complaint if it adds to or clarifies the original complaint and could have reasonably been expected to grow out of the original complaint. The original complaint deals with a claim of harassment/hostile work environment and working conditions. This issue also is regarding your claim of harassment/hostile work environment regarding a working condition, and it is an event that occurred subsequent to the filing of your original complaint. The event of your amendment request is inextricably linked to the initial claim, and the event grew out of the initial claim. Therefore, it meets the criteria of like or related. It is also providing additional evidence to support the existing claim of harassment/hostile work environment; this event will be added to your already existing claim of harassment/hostile work environment.

6. The Commission has consistently held that an agency opposition to an OWCP claim does not affect a term, condition, or privilege of employment so as to render a person aggrieved. See Hall v. Department of the Treasury, EEOC Appeal No. 01945595 (February 23, 1995). EEOC has also held that an employee cannot use the EEO complainant process to lodge a collateral attack on another proceeding. See Wills v. Department of Defense, EEOC Request No. 05970596 (July 30, 1998). The proper forum for contesting the outcome of an OWCP claim is with the Department of Labor. Foster v. United States Postal Service, EEOC Request No. 05950693 (May 16, 1996). When an EEO complaint concerns the outcome of complainant's OWCP claim, it is a matter within the jurisdiction of the OWCP. Therefore, we find

complainant's claim amounts to a collateral attack on another proceeding and fails to state a claim. In reviewing the remaining events in total perspective, to determine those events that directly impact the complainant, there is one area listed above that relates to physician visits or leave of absences. While these may be related to the allegation of harassment/hostile work environment, it is not the doctor visits or the taking of a leave of absence that creates a hostile work environment. Therefore, claims A-22, A-45, A-59, A-62 and A-65 in and of themselves do not show the complainant to be aggrieved and therefore fail to state a claim.

7. Another area concerns situations where the complainant is aware of a situation or has heard information from a secondary source about something but there has been no harm or action as a result of that information or incident. Thus, claims A-1, A-2, A-10, A-13, A-17, A-28, A-48, A-63, A-64 and A-67 also fail to state a claim.

8. There are several instances where the complainant either alone or with others, attempted to discuss this with different people in their chain of command and to elicit assistance in stopping the harassment. Although the complainant was not directly harmed by each of these contacts and therefore these contacts do not in and of themselves constitute a claim, it is important to retain this information as background evidence of instances where management was informed and to determine the Responsible Management Officials in this complaint. This pertains to Claims A-3, A-4, A-9, A-18, A-21, and A-38 and each of these has been determined to have failed to state a claim.

9. There are instances where more than one event is relative to only one claim. For example, Claims A-11, A-27, A-36, A-37 and A-43 all relate to a single event of a change in Tour of Duty effective May 3, 2004. Claim A-36 and A-37 have been combined and Claim A-11, A-27 and A-43 are considered part of the same claim. Also, Claim A-19 and A-20 both are related to a written counseling received on February 24, 2004. Claim A-19 is considered a part of claim A-20. Therefore, Claim A-11, A-19, A-27 and A-43 have failed to state a claim.

10. Accordingly, your client fails to demonstrate that she is "aggrieved" within the purview of Title VII regulations, and the claims in **A-1, A-2, A-3, A-4, A-9, A-10, A-11, A-13, A-17, A-18, A-19, A-21, A-22, A-27, A-28, A-38, A-43, A-45, A-48, A-59, A-62, A-63, A-64, A-65, A-67, B-68 and B-72 of her complaint are DISMISSED for failure to state a claim.** Authority : 29 C.F.R. 1614. 107 (a) (1).

11. With regard to your allegation of hostile work environment, the Equal Employment Opportunity Commission (EEOC) has stated that harassment of an employee that would not occur but for a prohibited discriminatory motive is unlawful if it is sufficiently patterned or pervasive. However, in order for harassment to be considered conduct in violation of Title VII, it must be pervasive or severe enough to significantly and adversely affect the employee's emotional or psychological well being. The conduct in question is evaluated from the standpoint of a reasonable person, taking into account the particular context in which it occurred. The

Commission notes, that unless the conduct is very severe, a single incident or group of isolated incidents will not be regarded as discriminatory harassment. The majority of remaining events in your complaints (A-5, 6, 7,8, A-12, A-14, 15, 16, A-20, A-23,24, 25, 26, A-29, 30, 31, 32, 33, 34, 35, combined A-36/37, A-39, 40, 41, 42, A-44, A-46, 47, A-49, 50, 51, 52, 53, 54, 55, 56, 57, 58, A-60, A-61, A-66, B-68, 69 and 70 consist of incidents regarding assignments and working conditions, and after July 9, 2004 5 incidents regarding leave). We have determined that the complainant has failed to state a claim of harassment because the incidents, even when viewed collectively, were not severe or pervasive enough to create a hostile or abusive work environment as defined by the EEOC and is more properly analyzed as disparate (i.e., discriminatory) treatments. In as much as your claim cannot be regarded as discriminatory harassment/hostile work environment it is my decision to **DISMISS the allegation of harassment/hostile work environment** component of your claim for failure to state a claim under the dismissal authority as stated in 29 CFR 1614.107 (a)(1).

12. EEO regulations require that a complainant be "aggrieved" and provide for the dismissal of complaints that fail to state a claim. 29 C.F.R. §§ 1614.103, 1614.106, 1614.107(a)(1). A complainant who fails to allege facts, which demonstrate that he or she has been aggrieved by the matter complained of, has failed to state a claim. Although the Commission's regulations do not define the term "aggrieved," the Commission and the courts have held that an aggrieved employee is one who has suffered a personal loss or harm with respect to a term, condition or privilege of employment resulting from the action being challenged. *Trafficante v. Metropolitan Life Insurance Co.,* 409 U.S. 205 (1972); *Gatpandan v. Department of the Navy,* EEOC Docket No. 05900087 (1990).

13. In the events of claims A-5, A-6, A-7, A-24, A-32, A-34, A-35, A-41, A-42, A-46, A-50, A-51, A-53, A-54, A-55 and A-56 relate to assignment of duties. I find that Complainant failed to show that she was adversely affected regarding a "term, condition, or privilege of employment." Complainant has not been adversely affected or disciplined in any of these events. See, A Regina C. Brown, Appellant v. Kenneth D. Brody, Chairman, Export-Import Bank of the United States, Appellee, 339 U.S. App. C.D. 233; 199 F. 3d 446 (December 21, 1999) (Where an employee suffers no diminution in pay or benefits, does not suffer an actionable injury unless there are some other materially adverse consequences affecting the terms, conditions, or privileges of her/his employment or future employment opportunities such as a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm. Personal preference on job assignments is not sufficient to state an injury). We believe that claims relating to assignment of duties, A-5, A-6, A-7, A-24, A-32, A-34, A-35, A-41, A-42, A-46, A-50, A-51, A-53, A-54, A-55 and A-56 fail to state a claim. You have not indicated that the complainant has suffered a personal loss or harm with regard to a term or condition of employment.

14. Additionally, the events in Claims A-8, A-12, A-14, A-15, A-23, A-25, A-26, A-29, A-30, A-31, A-40, A-44, A-47, A-52, A-57, A-58, A-61, B-68 and B-69 relate to working conditions that likewise do not demonstrate that the employee suffered a

diminution in pay or benefits, has not suffered an actionable injury and does not appear to have suffered objectively tangible harm. Therefore, these claims also fail to state a claim.

15. The **claims A-5, A-6, A-7, A-8, A-12, A-14, A-15, A-23, A-24, A-25, A-26, A-29, A-30, A-31, A-32, A-34, A-35, A-40, A-41, A-42, A-44, A-46, A-47, A-50, A-51, A-52, A-53, A-54, A-55, A-56, A-57, A-58, A-61, B-68, B-69 and B-71 are therefore DISMISSED** on the grounds that the complainant is not aggrieved with respect thereto, and has therefore failed to state a claim. Authority: 29 C.F.R. § 1614.107(a)(1)

16. EEO regulations require aggrieved persons who believe they have been discriminated against to consult with an EEO counselor within 45 calendar days of the date of the alleged discriminatory act 29 C.F.R. § 1614.105 (a) (2). These regulations further provide that this time limit may be extended if the complainant (1) was not notified of the time limit and was otherwise unaware of it, or (2) did not know and reasonably should not have known that the discriminatory incident or personnel action occurred, or (3) despite due diligence, was prevented by circumstances beyond control from contacting the counselor sufficiently by the time limit, or (4) for other reasons considered sufficient by the agency or the Commission. 29 C.F.R. § 1614.105 (a) (2). The regulations further provide that the agency shall dismiss a complaint that fails to comply with this time limit. 29 C.F.R. § 1614.107 (a)(2).

17. According to the complaint file, your initial contact with an EEO counselor was August 3, 2004. This was more than 45-calendar days after the events of Claims A-5, A-6, A- 7, A-8, A-12, A-14, A-15, A-16, A-20, A-23, A-24, A-25, A-26, A-29, A-30, A-31, A-32, A-33, A-34, A-35, combined A-36/37, A-39, A-40, A-41, A-42, A-44, A-46, A-47, A-49, A-50, A-51, A-52, A-53, A-54 and A-55 occurred. In your formal complaint, an attachment referencing item #13 of the complaint form, you indicated that you had addressed these issues to management several times and were waiting for a response. The EEOC has consistently held that an internal appeal of an agency's action and/or the filing of any grievance do not toll the running of the time limit to contact an EEO Counselor. The complainant's resort to waiting for management to respond to the most recent letter dated April 22, 2004 does not exempt her from the requirement of initiating timely contact with an EEO Counselor. It is also noted that the complainant has filed an earlier EEO Complaint on April 4, 2000 which resulted in a settlement agreement during the EEOC Hearing stage. Additionally, EEO posters have been posted in facility bulletin boards showing constructive notice in the corridor leading to the facility Canteen and the main lobby next to the elevators since December 2000. The evidence shows that the complainant was aware of the relevant EEO timeframes. Pursuant to EEO regulations 29 C.F.R. § 1614.107 (a) (2), it is our decision to **DISMISS events in claims A-5, A-6, A- 7, A-8, A-12, A-14, A-15, A-16, A-20, A-23, A-24, A-25, A-26, A-29, A-30, A-31, A-32, A-33, A-34, A-35, combined A-36/37, A-39, A-40, A-41, A-42, A-44, A-46, A-47, A-49, A-50, A-51, A-52, A-53, A-54 and A-55** for failure to

comply with the applicable time limits; in accordance with the above-cited legal authorities.

18. Additionally, EEOC regulations provide for dismissal of a complaint of discrimination, or portion of a complaint of discrimination, which alleges that a proposed action or a preliminary step to take personnel action is discriminatory. 29 C.F.R. § 1614.107 (e). Since harm to the complainant is the key to the complaint system, complaints based on proposals, which might never happen, allege no harm to the complainant. Claims A-34, A-35, A-46 and A-51 are allegations of proposed activities which do not indicate any additional action. Therefore **Claims A-34, A-35, A-46 and A-51are additionally DISMISSED** under the above authority. 29 C.F.R. § 1614. 107 (a) (5).

19. There is no immediate right to appeal the dismissed portions of the complaint, and the dismissed claims will not be investigated. You and the complainant will have the right to appeal the partial dismissal once final action is taken by the agency on the remainder of the complaint. You may, however, submit a written statement directly to our office concerning our articulation of the claims raised in the complainant's complaint outlining your disagreement with our partial dismissal of the complainant's complaint and it will be included in the official complaint file.

20. We have determined that the events in Claims A-60 and A-66 meet procedural requirements, and are therefore **ACCEPTED** for further processing. The precise claims accepted for investigation are defined as follows:

**Claim A - The complainant was discriminated against on the basis of sex (Female) and reprisal (protesting gender discrimination)[2] with regard to a leave issues when:**

1. **On July 9, 2004 the complainant received a letter from MK requesting additional medical information to support her request for sick leave but was not allowed enough time to submit this information.**

2. **On August 11, 2004 the complainant received a letter from MK requesting that she provide additional documentation to support her Family Medical Leave Act request without allowing her enough time to submit this documentation.**

21. If you and the complainant believe that the accepted claims are improperly formulated, incomplete, or incorrect, you and the complainant have the opportunity to notify this office within 7-calendar days of receipt of this letter, in writing or by fax, to state your disagreement. If you and the complainant submit a written statement, it

[2] Reprisal based on February 3, 2004, reaction by MK to January 22, 2004 meeting with Dr. SI, complainant and other female staff regarding his discriminatory behavior.

will be included as an official record in her complaint file. If you or the complainant does not contact this office within 7-calendar days, it will be assumed that the claims are correctly stated.

22. The accepted claim will be assigned to an impartial investigator under the supervision of the Office of Resolution Management (ORM), who will investigate her complaint. The investigator will contact you and the complainant directly in order to obtain information or evidence you may wish to offer. The agency is required to investigate her complaint in a timely manner. The investigation must be completed within 180 days of the filing of her complaint. You and the complainant will be provided with a copy of the investigative file upon completion and you and the complainant will be advised, in writing at that time, of her right to request a Final Agency Decision (FAD) from the Office of Employment Discrimination Complaint Adjudication (OEDCA), or a hearing by an Administrative Judge appointed by the Equal Employment Opportunity Commission (EEOC).

23. If the investigation has not been completed within the 180-day time limit, applicable regulations permit the agency and the complainant to agree in writing to extend the investigative period for not more than 90 days. ORM will make every good faith effort to complete the investigation within the prescribed period. However, where workload demands make it impossible to complete a timely investigation, we will work with you to seek mutual agreement to extend the period so that the investigation might be completed before you seek an EEOC hearing or a final agency decision from OEDCA.

24. If you and the complainant do not receive a copy of the investigative file within 180-calendar days of the date he filed her formal complaint of discrimination, you and the complainant have the right to request EEOC to appoint an administrative judge to conduct a hearing on her complaint without waiting further. You may not, however, request a hearing before the 181st day, unless you and the complainant receive the investigative file sooner. Any request for EEOC to appoint an administrative judge to hear her complaint should be addressed to the New York District Office of EEOC. A request for a hearing should be addressed to:

**New York District Director**
**Equal Employment Opportunity Commission**
**33 Whitehall Street, 5th Floor**
**New York, NY 10004**

A copy of her request for a hearing to EEOC must be faxed to 908-604-5261 or mailed to the following address:

**Robyn Labombarda, Acting Regional EEO Officer**
**Office of Resolution Management (08E)**
**Department of Veterans Affairs**
**151 Knollcroft Road building 16**
**Lyons NJ 07939**

25. You and the complainant are required to certify to the EEOC Administrative Judge that you sent a copy of the request for a hearing to the Office of Resolution Management at the above address. A copy of a "Hearing Request Form" is enclosed to assist you and the complainant in requesting a hearing.

26. If you and the complainant request a FAD, it will be rendered by VA's Office of Employment Discrimination Complaint Adjudication (OEDCA), in Washington, DC. The FAD will address all claims and a finding will be made on the merits of her complaint. At that time you and the complainant may appeal the FAD if you and the complainant are dissatisfied with the decision to the EEOC. OEDCA will provide you and the complainant with specific information regarding her appeal rights following its final agency decision, to include her right to file a civil action in an appropriate United States district court. A request for a final agency decision without a hearing should be addressed to:

**Office of Resolution Management (08E)**
**Department of Veterans Affairs**
**151 Knollcroft Road Building 16**
**Lyons NJ 07939**
**ATTN: Carolyn Wakefield, EEO Intake Specialist**

Her request for a FAD will be immediately transmitted to OEDCA, along with a copy of the investigative file, and our request that OEDCA render a final decision on her complaint.

27. If you and the complainant have not received a copy of the investigative file within 180-calendar days of the date he filed her formal complaint and you and the complainant do not wish to have a hearing, you and the complainant also have the right to file a civil action in an appropriate United States district court. If you and the complainant file a civil action, the court may, at its discretion and upon her request, appoint an attorney to represent him in the matter, if he does not have or cannot afford the services of an attorney. The court may also authorize commencement of the civil action without payment of fees, costs, or other security. Finally, if you and the complainant decide to file a civil action, you must name **The Honorable Anthony J. Principi** as the defendant. Mr. Principi's official title is **Secretary of Veterans Affairs.**

28. You and the complainant must keep this office advised of **any** change of address. Failure to do so could lead to dismissal of her complaint. You and the complainant must also immediately advise this office, in writing, of the name,

address, and telephone number of any representative he may designate to represent him in this matter. If he advises us of representation, copies of all subsequent actions on him complaint will be mailed or delivered to her representative with copies to her, unless he advises us in writing that he is no longer represented by that individual.

29. A goal of the EEO process is to achieve a mutual resolution of complaints of discrimination. Resolution may occur at any stage and we encourage the parties involved to explore resolution or to utilize the Alternative Dispute Resolution (ADR) process. Should you and the complainant desire to utilize the ADR process, my staff will be available to assist you.

30. If you and the complainant have any questions concerning the processing of this complaint, please contact Carolyn Wakefield, EEO Intake Specialist, at 717-228-6195.

Robyn Labombarda

ROBYN LABOMBARDA
Acting Regional EEO Officer

Enclosure: Hearing Request Form

cc: Debra Auger, Complainant
195 Cherry Hill Road
Woonsocket, RI 02895

Vincent Ng, Director, VA Medical Center, Providence, RI