**IN THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF RHODE ISLAND**

Eileen Ahern, Maureen Mastalerz,
Debra Auger, and Lynda Parker,
Plaintiffs,
v. C.A.NO. 05-117ML

Jim Nicholson, Secretary,
Department of Veterans Affairs,
Defendant.

**PLAINTIFFS STATEMENT OF FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE**

Now comes the Plaintiffs and offers the following facts to which there is no genuine dispute:

**The VA's discriminatory hiring and systemic discrimination.**

1. Sometime in late 2003, Lynda Parker heard Khatib say: "This is crazy, a department full of women. I want to start hiring male techs." (Parker dep. at 92)

2. Khatib continuously threatened Parker, Ahern, Auger and Mastalerz jobs by bringing around male employees that he said could do their jobs (Parker depo at 78)

3. On September 12, 2003 Khatib wanted to hire Chris Stokes, a male, into a supervisory position vacated by another employee, but that position was not posted. (Auger dep. at 110)

4. Debra Auger pointed out to Khatib that if he had to post that position before filling it, and if he did post it that position, it would have been a promotion for most techs and that the regular techs would have been eligible for that position before an outsider could be hired. (Auger Dep. at 110

5. Khatib did not properly requisition the position he hired Chris Stokes to under Federal Policy. He did not have enough time, and could not have shown the need in September

2003 that is contemplated by the Federal Contracting Regulations. (Auger Dep. at 110, Plaintiffs exhibit 5)

6. Craig Polucha testified under oath that there was no way to determine what positions were being posted in 2003. (Polucha depo 25-26. Joslins Affidavit states that there was active recruiting in 2003. That in December 2003 there was a job posting (Joslin Affidavit).

7. Chris Stokes was hired September 15, 2003 as an x-ray/angio/CT technologist (Def exhibit 26).

8. When Chris Stokes was hired in September 2003 there were no slots open in CT or angio, however Khatib included those positions in Stokes' contract even though Stokes was not qualified for CT. (Auger dep. at 110) Chris Stokes was not trained in CT when he was hired at the VA but he was hired partially as a CT tech (Mastalerz dep. at 116).

9. Motive can be proven by statistics. Where there is an apparent discrepancy in hiring ratios compared to the normal ratio of an occupation it shows lack of accident in hiring decisions. See*: International Broth. Teamsters v. United States*, 431 US 324 (1977)

10. In September 2003, the DIS at the VA had 14 female techs and 2 male techs, or 88% female techs and 12% male techs. (Statistics compiled by using Joslins Affidavit Def. SJ memo as reference.)

11. The national average for radiology techs as of April 2004 was 70% female and 30% male. (Joslin affidavit)

12. Khatib and Marc Shaffer did all the hiring of contract techs, as evidenced by the fact it is only their names that appear on communications to the contracting officer at the VA. (Plaintiffs exhibit 28)

13. In 2003 and 2004, prior to the April 22, 2004 memo to the VA where the techs complain that male contract techs are treated better than the rest of the staff, Khatib hired 5 males and 2 females, or 71% male and 28% female techs. (Joslin Affidavit)

14. Overall, the Khatib administration hired 11 male contact techs and 7 female contract techs, or 61% male and 39% female. (Joslin Affidavit Def. SJ memo.) By September of 2004 Khatib had replaced all regular staff with contract techs (Mastalerz dep. at 49).

15. The greatest gain for female hiring is after the April 22, 2004 meeting between staff and the memo that resulted from that meeting. (Joslin Affidavit)

Khatib didn't start hiring female techs until the discrimination complaints against him. (Auger dep. at 85)

16. Only 2 females were ever hired in a capacity other than x-ray tech. Only two males were only hired as x-ray techs. (Plaintiffs exhibit 29)

17. Three males were hired as x-ray tech / angio / CT tech. The three male contract techs hired x-ray tech / angio / CT tech were Chris Stokes, Wes Allen, and Luchiano Capraras. (Plaintiffs exhibit 29)

18. Khatib hired Gabe Ferreira as a contract tech rather than hire Laurie Crafts as a VA employee (Parker dep. at 139).

**Equal Pay and Promotion Discrimination**

19. Chris Stokes and Luchiano Capraras, both males, received substantial raises while working as contract techs at the VA. (Joslin Affidavit)

20. Chris Stokes and Luchiano Capraras, both males, were give managerial or supervisory powers over regular employees in contravention of Federal Regulations.(Plaintiffs exhibit 5)

13. Khatib promoted at least two male contract techs (Parker dep. at 108-120, Plaintiff exhibit 6)

14. Chris Stokes was placed in a supervisory position over Parker, Masterlez and Auger. (Parker Dep. at 34)

15. Dr. Shafer lobbied for Capraras wage increase at least in part because he was performing supervisory duties. (Plaintiff exhibit 6)

16. Other departments at the VA knew that Chris Stokes was in charge (Parker dep. at 124)..

17. Khatib's preoccupation with hiring contract techs prevented the VA from improving the pay of regular employees. Auger dep. At 110-112) Khatib's preoccupation with hiring contract techs affected the Plaintiffs salary structure (Auger dep. at 110-112).

**Hostile Work Environment**

18. Beaudoin thought Khatib treated men differently then women in the DIS (Beaudoin dep. at 99-100).

19. Khatib treated the male techs differently than the female techs. (Parker dep. at 110-113). He micromanaged the female techs, particularly the Plaintiffs and promoted the male contract techs (Parker depo at 108-120, memo to Joslin, memo of Schaefer to Joslin)

20. Chris Stokes was treated extremely favorably in DIS (Auger dep. 115-116).

21. Beaudoin did not think Chris Stokes was a hard worker (Beaudoin dep. at 100).

22. Chris Stokes reported directly to Khatib, bypassing his direct supervisor Beaudoin (Beaudoin dep. at 103)

23. Khatib told Auger that she should stop going over his head to complain to Sta Ines (Def Summary Judgment motion p71). But Beaudoin testified that Chris Stokes reported directly over her head to Khatib (Beaudoin dep. at 103).

24. Khatib was completely hostile and disrespectful to Auger (Auger depo at 124).

25. In her interrogatory answers, Debra Auger documented hundreds of incidents of harassment by Khatib (Def exhibit 67).

26. Khatib detailed a female x-ray tech in the file room and made her reorganize the file room (Parker dep. at 134).

27. An October 2003 Plaintiffs meeting with Sta Ines was about how male contract techs were being treated better than female techs (Auger dep. at 87).

28. A January 22, 2004 meeting with Sta Ines was about the disparate gender bias toward males that was prevalent in the DIS under Khatib. (Def Ex. 21)

29. The April 22, 2004 memo included a complaint that Khatib treated male contract techs better than the female techs. (Def. Ex. 21)

30. Marc Schafer helped Khatib retaliate against the Plaintiffs (Ahern dep. 110-112). Schafer was as cruel to the Plaintiffs as Khatib (Ahern dep. at 113).

31. Mastalerz went out on stress leave because of the stress caused by Khatib in DIS (Mastalerz dep. at 37-38).

32. Ahern went out on stress leave because of the environment that was created by Khatib in DIS (Ahern dep. at 198).

33. Auger went on stress leave because of the hostile working environment in DIS. (Auger Dep. at Plaintiffs exhibits 32,33, 34)

34. Auger is on Social Security Disability because of the hostile working environment in DIS (Plaintiffs exhibit 32, 33, 34)

35. Khatib trained Chris Stokes in CT before Lynda Parker (Parker dep. at 149). Wes Allan told Lynda Parker that Khatib was not going to train her for CT (Parker dep. at 146). Lynda Parker was displace by Stokes (Plaintiffs exhibit 5)

**Protected Title VII Activity and Retaliation.**

36. In October 2003 Plaintiffs demanded a meeting with Sta Ines about how male contract techs were being treated better than female techs (Auger dep. at 87).

37. Complaints to superiors about disparate gender treatment are specifically protected behavior under Title VII. The October 2003 meeting with Sta Ines was protected activity under Title VII (Plaintiffs exhibit 31)

38. On January 22, 2004, the Plaintiffs were among others who met in Dr. Sta Ines' office. One of the subjects of that meeting was the disparate gender bias toward males that was prevalent in the DIS under Khatib. (Def. ex. 21)

39. Khatib physically broke up that January 22, 2004 meeting. (Parker dep. at 108)

40. Complaints to superiors about disparate gender treatment are specifically protected behavior under Title VII. The January 2004 meeting with Sta Ines was protected activity under Title VII (Plaintiffs exhibit 31)

41. Dr. Sta Ines knew that Khatib harassed the Plaintiffs. (Parker Depo at 52, Plaintiffs exhibit 1)

42. On February 2, 2004, Dr. Sta Ines wrote a memo to Khatib, stating, among other things, that the staff had complained about the way he favored males above females, and that the staff felt threatened by Khatib and were afraid of retaliation by him. (Plaintiffs exhibit 1)

43. The February 2, 2004 memo had a directive from Sta Ines for Khatib to review the document and answer the charges. (Plaintiffs exhibit 1)

44. Khatib was extremely angry about the February 2, 2004 memo that Dr. Sta Ines gave Khatib (Auger dep at 165-166).

45. Khatib yelled at her about the memo (Auger dep. at 166). He said he was going to bring it to human resources (Auger dep. at 166).

46. A week later Sta Ines rescinded the memo (Plaintiffs exhibit 2)

47. Khatib retaliated against Parker, Orsini, Auger, Beaudoin, Ahern and Masterlez after the January 22, 2004 meeting in Sta Ines' office and finally ran each one out of the VA (Parker dep. at 61-62)

**Proposed Change in Tour and Backlog were Retaliatory.**

48. Prior to March 2004, Khatib had stated to Joan Beaudoin that he thought all employees in DIS should be on the ten-hour work schedule. (Plaintiffs exhibit 16)

49. Khatib did not mention the change in tour from ten hours to eight hours until he had been managing the VA for two years. The first mention of the backlog is March 2004. (Def exhibit 13)

50. Khatib did not mention changing shifts from ten hours to eight hours shifts until March 2004 after the February 2, 2004 Sta Ines memo. (Def. Ex. 13)

51. Khatib had to know that the only people that would be affected by the change in tours from ten-hour days to eight-hour days were Ahern, Auger, and Mastalerz.

52. Khatib managed DIS for almost two years before he "discovered" the backlog. (Khatib affidavit Def. SJ Memo, Def. Exhibit 32)

53. Khatib "discovered" the backlog after he was pressed by VA management to give a rationale for his desire to change the tour of duties for the Plaintiffs after the February 2, 2004 Sta Ines memo. (Plaintiffs exhibit 1)

54. Khatib created the backlog because he wanted to progress in the VA system and he wanted to change the hours of the CT techs (Beaudoin dep. at 65).

55. The backlog consisted of duplicate exams, deceased patients and no shows (Beaudoin dep. at 43, Plaintiffs exhibit 30)

56. Khatib forbade Ahern and Mastalerz from deleting duplicate CT exams in order to increase the backlog (Mastalerz dep. at 110).

57. Eventually Khatib paid Chris Stokes overtime to delete the duplicates from the backlog. (Def. exhibit 14).

58. Khatib's hiring of Chris Stokes instead of a regular employee for overtime to delete duplicates from the backlog was illegal decision making, in contravention of Federal Regulations. (Plaintiffs exhibit 5(c))

59. By June of 2004 there was not a significant backlog. The Plaintiffs presented the evidence to Sta Ines. Khatib who was at the meeting denied the backlog was decreased (Ahern dep. at 158).

60. Polucha, Chief of Human Resources, acknowledged that there was not a significant issue with regard to OT in CT (Polucha dep. 68-69)

**September 30, 2004 Report on the DIS by the VISN**

61. In the timeline, the report never mentioned the protected activity of October 2003 and January 2004, or the February 2, 2004 memo to Khatib from Sta Ines before it mentions the March 2004 intention to change the CT tours of duty. (Def. exhibit 32)

62. The report noted that Khatib was the cause of divisiveness in the DIS but lacked the insight to remedy it (Id.)

63. The report recommended that Khatib receive management training and a mentor. (Id.)

64. The report recommended that the staff receive outside counseling.(Id.)

65. The recommendations of the September 30, 2004 DIS report for the VA to help Khatib be a better manager were never implemented by the Providence VA (Polucha dep. 49-51)

**Other Facts of Evidence of Retaliatory Animus.**

67. Khatib harassed Parker on a day-to-day basis (Parker dep. at 61)

68. Khatib and Stokes purposely altered patient flow to make Lynda Parkers job difficult (Parker dep. at 117)

69. Khatib undermined Parker by humiliating her in front of her students and trying to send her students to do things that were not appropriate at their level of education (Parker dep. at 129).

70. Khatib created unreasonable workload for Ahern and Mastalerz in CT (Beaudoin dep. at 40).

71. Khatib targeted the sick leave of Ahern and Mastalerz despite lax enforcement otherwise in DIS (Beaudoin dep. at 98-99).

72. Mastalerz was called into the office every week and harassed about her job performance. (Mastalerz dep. at 39) Mastalerz was called into the office with Khatib and Schaefer weekly for eight weeks and berated about her job performance. (Mastalerz dep. at 172).

73. Khatib made Mastalerz worked 10 hour shifts without relief for lunch or breaks (Mastalerz dep. at 39)

74. When Ahern came back from stress leave, Khatib would not put her back in CT and would not let her take call (Ahern dep. at 178-180)

75. When Ahern came back from stress leave, Khatib staffed CT with contract techs while Ahern was sent to x-ray (Ahern dep. at 178-180).

76. When Mastalerz came back from stress leave, Khatib would not put her back in CT and would not let her take call (Mastalerz dep. at 41).

77. When Mastalerz came back from stress leave, Khatib staffed CT with contract techs while Mastalerz was sent to x-ray (Mastalerz dep. at 41).

78. Mastalerz wrote a report of contact against Marc Schaefer because he was making fun of the size of a patient's penis in front of her (Mastalerz dep. at 171).

79. Khatib coerced Joan Beaudoin into disciplining Ahern and Mastalerz over trivial things (Beaudoin dep. at 26-27).

80. Ahern, Auger and Mastalerz were reprimanded for leaving telephone messages to the call Radiologist was deliberate retaliation against them by Schaefer and Khatib (Ahern dep. 115-116).

81. Ahern was disciplined for patient advocacy (Ahern dep. at 120).

82. Ahern believed that Khatib was going to strike her but she moved before he did (Ahern dep. at 189)

83. Prior to February 2004 Auger had never received discipline at the VA (Auger depo at 66). Auger was disciplined in February 2004 for taking pictures of Bruce Foster (Auger depo at 65). Khatib made Beaudoin discipline her (Auger dep. at 65)

84. Khatib's insistence Beaudoin disciplined Auger for an incident that she was not present for and never did (Auger dep. at 67)

85. Khatib removed Auger from her position as lead Angio tech and assigned her to CT five days a week (Auger dep. at 93)

86. While Debra Auger was on leave, Khatib repeatedly threatened to take administrative action against her (Def exhibits 74,89)

87. While Ahern was on stress leave Khatib threatened to take administrative action against her (Def exhibit 82).

Respectfully Submitted,
Plaintiffs
By Their Attorney,

/S/ Thomas E. Folcarelli
Thomas E. Folcarelli #6393
Attorney for the Plaintiff

55 Bradford Street, Suite 203
Providence, RI 02903
401.521.1828
Fax: 401.274.2480

**CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify that on this 7th Day of January, 2008, I caused a true copy of the within Assented-To Motion for Extension of Time to Answer the Defendant's Motion for Summary Judgment to be electronically filed with the Clerk of the United States District Court for the District of Rhode Island using the CM/ECF System. The following participant has been noticed electronically:

Robert Clarke Corrente
United States Attorney; and:
Richard M. Myrus, Esq.
Assistant U.S. Attorney
Attorney for the Defendant
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
richard.myrus@usdoj.gov

/S/ Thomas E. Folcarelli