C
Insurance Co. of State of Pennsylvania v. Vimas Painting Co., Inc.
N.D.Ohio,2007.
Only the Westlaw citation is currently available.
United States District Court,N.D. Ohio,Eastern Division.
The INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, Plaintiff,
v.
VIMAS PAINTING COMPANY, INC., Defendant.
**No. 4:06CV1048.**

May 10, 2007.

John G. Farnan, Weston Hurd, Cleveland, OH, for Plaintiff.
Orville L. Reed, III, Christopher C. Esker, Buckingham, Doolittle & Burroughs, Akron, OH, for Defendant.

***MEMORANDUM OPINION AND ORDER***

GEORGE J. LIMBERT, U.S. Magistrate Judge.

***1** The instant matter is before the Court [FN1] on a motion for summary judgment filed by Plaintiff, The Insurance Company of the State of Pennsylvania (Plaintiff). ECF Dkt. # 17. Defendant, Vimas Painting Company, Inc. (Defendant), has filed a response in opposition to Plaintiff's motion for summary judgment and has also moved for summary judgment in the case. ECF Dkt. # 21. In turn, Plaintiff has filed a motion to strike Defendant's motion for summary judgment and has filed a reply to Defendant's brief in opposition to its motion for summary judgment. ECF Dkt. # s 22, 25. Defendant has filed a reply in support of its own motion for summary judgment (ECF Dkt. # 28), a response in opposition to Plaintiff's motion to strike its motion for summary judgment (ECF Dkt. # 26) and a motion for leave to file its motion for summary judgment instanter (ECF Dkt. # 27).

FN1. The parties consented to the jurisdiction of the undersigned on July 12, 2006. ECF Dkt. # 12.

For the following reasons, the Court DENIES Plaintiff's motion for summary judgment (ECF Dkt. # 17), GRANTS Plaintiff's motion to strike Defendant's motion for summary judgment (ECF Dkt. # 22), and DENIES Defendant's motion for leave to file its motion for summary judgment instanter (ECF Dkt. # 27). Further, as explained below, the Court hereby DECLARES that Plaintiff has a duty to defend Defendant in the Mahoning County Court of Common Pleas case of *Lois King, et al. v. Vimas Painting Company, Inc., et al.,* No. 06CV428 (hereinafter *King* or *King* case).

## *I. FACTUAL BACKGROUND*

The instant case stems from an insurance coverage dispute between Plaintiff and Defendant whereby Plaintiff moves this Court to declare that it has no obligation to provide insurance coverage to defend or indemnify Defendant, its insured, against the wrongful death lawsuit filed in the state court case of *King v. Vimas.* The coverage issue arises out of the death of Thomas King, who had been working overseas in Africa in February 2004 when he contracted acute malaria which resulted in polymicrobial endocarditis with cardiogenic shock. ECF Dkt. # 17, Exhibit A at 3-4.

The uncontested facts show that in 2003, Defendant submitted and won a bid to refinish and repaint radio towers on the island of Sao Tome, West Africa, through the United States government's International Broadcasting Bureau (IBB). ECF Dkt. # 17 at 4-5; ECF Dkt. # 21 at 2-3. Defendant hired Morris Painting as a silent partner because it had the technical expertise to remove and dispose of lead contained on structures. *Id.* Defendant acted as the general contractor and also

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

entered into a written contract for $145,000.00 with Sky Towers to act as a subcontractor to refurbish repairs to the radio towers.*Id.* The decedent, Thomas King, worked for Sky Towers prior to the Sao Tome project. *Id.*

Defendant met the Morris Painting and Sky Towers employees before the Sao Tome project and applied and paid for their visas, and paid for their immunization shots and malaria pills. ECF Dkt. # 17, Exhibit B at 26-29. Defendant also paid all travel expenses and lodging for these employees and paid Ohio Worker's Compensation premiums for them. *Id.* at 36-39.

***2** In February 2004, Defendant sent its long-time employee Nick Frangopoulos to Sao Tome to oversee the project. ECF Dkt. # 17 at 5; ECF Dkt. # 21 at 3. Sky Towers sent Robert Yankle, a principal of Sky Towers, to Sao Tome. *Id.* Mr. King, along with other workers, also went to Sao Tome to work on the project. *Id.*

When they arrived in Sao Tome, Mr. Yankle informed Mr. Frangopoulos that Sky Towers lacked sufficient funds in which to pay its employees, including Mr. King, on the Sao Tome project. ECF Dkt. # 17 at 6; ECF Dkt. # 21 at 3. Mr. Frangopoulos indicated at his deposition that he was therefore:

literally forced into having his[Yankle's] employees, prior to working the job, go under Vimas' payroll. And that's when they filled out W-2 forms, W-4 forms for being employed by Vimas Painting.

They were 5,000 miles across the world. And I was literally told then that he didn't have the funds to provide in making payroll for his employees. So I was literally forced to put them on my payroll.

But all his payroll, his employees' payroll that I fronted, that I paid weekly, was deducted from his subcontract, along with all of the overhead that would normally be charged for payroll, such as Social Security, workers' comp, general liability.

ECF Dkt. # 17, Exhibit B at 20-21.

Mr. King worked on the Sao Tome project for seven or eight days before becoming ill. ECF Dkt. # 17, Exhibit B at 46. He eventually received medical care in Sao Tome and was thereafter cleared to return home to the United States, where he underwent open heart surgery in March 2004, received treatment for renal failure, had a pacemaker installed, and lost several fingers due to amputation. ECF Dkt. # 17, Exhibit A at 3-4. In April 2004, Mr. King was released from The Ohio State University Medical Center, but in November 2004, he suffered a recurrence of endocarditis. *Id.* at 4. He was stabilized until December 4, 2004 when he experienced renal failure and underwent an unsuccessful cardiopulmonary bypass surgery. *Id.* He died on December 4, 2004. *Id.*

## *II. PROCEDURAL BACKGROUND*

On February 2, 2006, Lois King, individually and as administrator of the estate of Thomas King, her son, filed a complaint for survivorship and wrongful death in the Mahoning County Court of Common Pleas against Defendant in this case, and Sky Towers and John Does. ECF Dkt. # 17, Exhibit A. Mrs. King and the Estate averred that King was employed "by Vimas and/or Sky and/or Doe to work on the Sao Tome project" and:

24. Defendants knew that Sao Tome was a province in a remote West African island nation.

25. Defendants knew that travelers to Sao Tome were at high risk of contracting yellow fever, malaria, hepatitis A & B, meningitis, rabies, typhoid fever and other infectious diseases.

26. Defendants knew that Sao Tome had only one hospital in the country and that said hospital provided only a low level of care.

27. Defendants knew that an employee who contracted a serious illness or who was severely injured on the job would need to be evacuated from Sao Tome in order to receive adequate medical care.

***3** 28. In short, Defendants knew that the conditions, including, but not limited to, health risks and lack of medical facilities in Sao Tome, made Sao Tome a dangerous place to work.

29. Despite this knowledge, Defendants failed to employ a physician to travel with employees to Sao Tome and had no emergency response or medical evacuation plan in place.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

30. Defendants knew that, if King was subjected by his employment to such dangerous conditions, there was a substantial certainty that he would be harmed. Said knowledge went beyond mere knowledge and appreciation of the risk.

31. Defendants knew that, if King became ill or injured while in the course of his employment and was subjected to the inadequate medical care available on Sao Tome, there was a substantial certainty that he would be harmed.

32. Defendants, under such circumstances, and with such knowledge, did act to require King to continue to perform his work in and subject to these dangerous conditions.

ECF Dkt. # 17, Exhibit A at 2, 4-5. The complaint in the *King* case further alleged that:39. Vimas and/or Sky and/or Doe was the general contractor on the Sao Tome project.

40. King was an employee of a sub contractor on that project.

41. As the general contractor, Defendants had direct control over the manner and means by which employees of a sub contractor performed their duties during the Sao Tome project.

42. As the general contractor, Defendants had control over safety and health measures during the Sao Tome project.

43. As the general contractor, Vimas and/or Sky and/or Doe directly participated in the health and safety measures for, as well as the work performed by, employees of the sub contractor during the Sao Tome project.

44. As the general contractor, Vimas and/or Sky and/or Doe had a duty to warn employees of the latent health risks and hazards associated with working on the Sao Tome project.

45. As the general contractor, Vimas and/or Sky and/or Doe had a duty to protect employees from the health risks and hazards associated with working on the Sao Tome project.

46. As the general contractor, Vimas and/or Sky and/or Doe negligently failed to warn employees of the sub contractor, including King, of the latent health risks and hazards associated with working on the Sao Tome project.

47. As the general contractor, Vimas and/or Sky and/or Doe negligently failed to protect employees of the subcontractor, including King, from the health risks and hazards associated with working on the Sao Tome project.

48. As the general contractor, Vimas and/or Sky and/or Doe negligently failed to employ a physician to travel with employees to Sao Tome and negligently failed to implement emergency response procedures and/or medical evacuation procedures for use in the event of a serious medical illness or emergency.

49. As such, Vimas and/or Sky and/or Doe, as the general contractor, breached their duty of reasonable care to King.

***4** *Id.* at 7-8.

On April 27, 2006, Plaintiff filed a complaint in this Court for a declaratory judgment requesting that the Court declare that it owes no duty to defend nor indemnify Defendant as to the claims brought against Defendant in the *King* case. ECF Dkt. # 1. Plaintiff asserts that coverage from the foreign commercial general liability policy of insurance that Defendant had with it for the Sao Tome project is not triggered by the allegations in the *King* complaint because those allegations state solely intentional decisions and acts by Defendant which are not policy "occurrences" as defined in the insurance contract. *Id.* at 7. Plaintiff also contends that even if the Court construes the claims in the *King* case to constitute policy "occurrences", the Court should still declare that Plaintiff owes no duty to defend or indemnify Defendant against the *King* complaint because policy exclusions apply. *Id.* at 7-8.

Defendant timely answered the complaint and on January 31, 2007, Plaintiff filed the instant motion for summary judgment, arguing that no genuine issue of material fact exists and it is entitled to judgment as a matter of law that it owes no defense or indemnity to Defendant against the *King* allegations. ECF Dkt. # 17. On April 6, 2007, Defendant filed a combined motion for summary judgment with a response in opposition to Plaintiff's motion for summary judgment. ECF Dkt. # 21. On May 1, 2007, Plaintiff filed a motion to strike Defendant's motion for summary judgment as untimely and on May 2, 2007, Plaintiff filed a reply to Defendant's brief in opposition to Plaintiff's

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

motion for summary judgment. ECF Dkt. # s 22, 25. On May 9, 2007, Defendant filed a response in opposition to Plaintiff's motion to strike its motion for summary judgment and filed a motion for leave to file its motion for summary judgment instanter. ECF Dkt. # s 26, 27. On the same date, Defendant also filed a reply in support of its motion for summary judgment. ECF Dkt. # 28.

### *III. THE INSURANCE POLICY*

As noted above, Plaintiff issued a foreign general liability coverage policy of insurance to Defendant for the Sao Tome project which ran from January 1, 2004 to January 1, 2005, thus encompassing the timeframe of the allegations in the *King* case. ECF Dkt. # 17 at 11. The policy includes the following pertinent provisions and language:

**SECTION I-COVERAGES**

COVERAGE A **BODILY INJURY** AND **PROPERTY DAMAGE** LIABILITY 1.

Insuring Agreement

a. **We** will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this coverage applies. We will have the right and duty to defend the insured against any suit seeking those damages. However, we will have no duty to defend the insured against any suit seeking damages for bodily injury or property damage to which this insurance does not apply.

* * *

b. This insurance applies to **bodily injury** and **property damage** only if:

***5** (1) The **bodily injury** or **property damage** is caused by an **occurrence** that takes place in the **coverage territory ...**

ECF Dkt. # 17, Exhibit C at 1 (bolded text in original). The policy also contained the following relevant exclusions, outlined in pertinent part:2. Exclusions

This insurance does not apply to:

a. Expected or intended injury

Bodily injury or property damage expected or intended from the standpoint of the insured. This exclusion does not apply to bodily injury resulting from the use of reasonable force to protect persons or property.

* * *

d. Worker's Compensation and Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. Employer's Liability

**Bodily injury** to:

(1) An **employee** of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that **employee** as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**SECTION II-WHO IS AN INSURED**

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2. Each of the following is also an insured:
...**your employees,..** but only for acts within the scope of their employment by **you** or while performing duties related to the conduct of **your** business.

**SECTION V DEFINITIONS**

5. **Employee** includes a **leased worker. Employee** does not include a **temporary worker.**
10. **Leased worker** means a person leased to **you** by a labor-leasing firm under an agreement between **you** and the labor-leasing firm, to perform duties related to the conduct of **your** business. **Leased worker** does not include a **temporary worker.**
14. **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
20. **Temporary worker** means a person who is furnished to **you** to substitute for a permanent **employee** on leave or to meet seasonal or short-term workload conditions.

*Id.* at 2-3, 10, 15-19 (bolded text in original). The policy also contains an endorsement which adds an exclusion that precludes coverage for "any and all professional services"." *Id.* at Bates Stamp WH 0032. The provision states that "This insurance does not apply to 'bodily injury', 'property damage ' or 'personal and advertising injury' due to the rendering of or failure to render any professional service."*Id.*

***IV. STANDARD OF REVIEW***

The function of summary judgment is to dispose of claims without trial when one party is unable to demonstrate the existence of a factual dispute which, if present, would require resolution by a jury or other trier of fact. *Schultz v. Newsweek, Inc.,* 668 F.2d 911, 918 (6th Cir.1982).Rule 56(c) of the Federal Rules of Civil Procedure governs summary judgment motions and provides, in pertinent part:

***6** The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

FED.R.CIV.P. 56(C). In ruling on a motion for summary judgment, a court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party.*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *National Satellite Sports, Inc. v. Eliadis Inc.,* 253 F.3d 900, 907 (6th Cir.2001). A court cannot weigh the evidence or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material, factual dispute. *Id.* at 322.A mere scintilla of evidence is not enough. *Anderson,* 477 U.S. at 252;*McLean v. Ontario, Ltd .,* 224 F.3d 797, 800 (6th Cir.2000). The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson,* 477 U.S. at 248-49;*National Satellite Sports,* 253 F.3d at 907.

***V. DISCUSSION***

***A. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF DKT. # 21)***

As indicated above, Defendant filed its own motion for summary judgment on April 6, 2007, combining this motion with its response to Plaintiff's motion for summary judgment. ECF Dkt.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# 21. Plaintiff has filed a motion to strike Defendant's motion for summary judgment, asserting that it is untimely filed. ECF Dkt. # 22. Defendant has responded to the motion to strike and has also filed a motion for leave to file its motion for summary judgment instanter. ECF Dkt. # 26, 27.

The Court GRANTS Plaintiff's motion to strike Defendant's motion for summary judgment (ECF Dkt. # 22), STRIKES Defendant's motion for summary judgment (ECF Dkt. # 21) and its reply to its motion for summary judgment (ECF Dkt. # 28), and DENIES Defendant's motion for leave to file its motion for summary judgment instanter (ECF Dkt. # 27).

Plaintiff is absolutely correct that this Court set a dispositive motion deadline of February 28, 2007 in its Case Management Conference Order. ECF Dkt. # 13. Plaintiff filed its motion for summary judgment on January 31, 2007, well within the dispositive motion deadline. ECF Dkt. # 17. On February 19, 2007, Defendant filed a motion requesting an extension of time within which to file a response to Plaintiff's motion for summary judgment. ECF Dkt. # 18. Defendant indicated in the motion that Plaintiff had no objection to this extension. *Id.* Noticeably absent from this motion is a request for leave within which to file a motion for summary judgment instanter. Defendant did not inform Plaintiff nor this Court in this motion or at any other time of its intention to file a motion for summary judgment, much less a motion for summary judgment filed beyond the dispositive motion deadline. Defendant filed yet another motion for an extension of time within which to file a response to Plaintiff's motion for summary judgment, but again failed to inform either Plaintiff or the Court of its intention to file a motion for summary judgment or to file such a motion instanter. ECF Dkt. # 19.

*7 It was not until April 6, 2007, when Defendant finally filed its motion for summary judgment, which was combined with its response to Plaintiff's motion for summary judgment. ECF Dkt. # s 20, 21. Defendant did not move for leave to file this motion for summary judgment instanter and made no mention of the delay in filing the motion well beyond the dispositive motion deadline. Defendant indicates in its response to Plaintiff's motion to strike its motion for summary judgment that it filed the motion in order to place before the Court a vehicle through which the Court could grant it summary judgment on Plaintiff's complaint for declaratory judgment in order to aid judicial efficiency. ECF Dkt. # 26 at 2.

While the Court appreciates Plaintiff's efforts to aid in judicial efficiency, its motion for summary judgment was filed well beyond the dispositive motion deadline and it did not seek an extension of time of the dispositive motion deadline or otherwise inform the Court of its intention of filing such a motion. Accordingly, the Court GRANTS Plaintiff's motion to strike Defendant's motion for summary judgment (ECF Dkt. # 22), DENIES Defendant's motion for leave to file its motion for summary judgment (ECF Dkt. # 27), and STRIKES Defendant's motion for summary judgment (ECF Dkt. # 21) and related filings thereto (ECF Dkt. # 28).

***B. DECLARATORY JUDGMENT***

Neither party disputes whether a declaratory judgment action is appropriate to consider in this case. The Federal Declaratory Judgment Act provides that federal courts "may declare the rights and other legal relations of any interested party seeking" a declaration in a controversy over which the court otherwise has jurisdiction. 28 U.S.C. § 2201(a). In determining whether to exercise its discretion to grant declaratory judgment, a court should consider whether it will "serve a useful purpose in clarifying and settling the legal relationships in issue" and whether it "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."*Grand Trunk Western R.R. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6TH Cir.1984).*Grand Trunk* set forth the factors that a Court should consider in determining whether declaratory relief is appropriate. *Id.* Applying these factors to the instant case, the Court finds that it is appropriate to exercise its discretion to declare

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

whether Plaintiff has a duty to defend or indemnify Defendant in the underlying state action.

### *C. DUTY TO DEFEND*

With subject matter jurisdiction based upon diversity of citizenship, neither party disputes that Ohio law applies in this action. The duty of the insurer to defend is separate and distinct from the duty to indemnify. *M/G Transport Services, Inc. v. Water Quality Ins. Syndicate,* 234 F.3d 974, 979 (6th Cir.2000), citing *Lessak v. Metropolitan Cas. Ins. Co. of New York,* 168 Ohio St. 153, 151 N.E.2d 730, 733 (1958).“[T]he duty to defend arises when a complaint contains claims that are even “arguably covered” by the insurance policy, whereas a duty to indemnify is based only on actual liability.*American Motorist Ins. Co. v. Custom Rubber Extrusions, Inc.,* No. 1:05CV2331, 2006 WL 2460861 at *5, citing *City of Sharonville v. Am. Employers Ins. Co.,* 109 Ohio St.3d 186, 846 N.E.2d 833, 837 (2006) (“[A]n insurer has an absolute duty to defend an action when the complaint contains an allegation in any one of its claims that could arguably be covered by the insurance policy, even in part and even if the allegations are groundless, false or fraudulent.”); and *Chemstress Consulting Co. v. Cincinnati Ins. Co.,* 128 Ohio App.3d 396, 715 N.E.2d 208, 212 (1998) (“The duty to indemnify is based on whether there is, in fact, liability under the policy.”). In actuality, an insurer may have a duty to defend in the beginning of litigation when claims are only “ arguably covered”, but could have no duty to indemnify if facts that exclude coverage are revealed during the litigation. *American Motorist Ins. Co.,* 2006 WL 2460861 at *5. This could occur because the duty to defend arises when claims in a complaint are even “arguably covered” by the insurance policy while the duty to indemnify is based upon whether actual liability exists under the policy. *M/G Transport,* 234 F.3d at 979, quoting *Chemstress Consultant Co.,* 715 N.E.2d at 212.

***8** Ohio law states that whether an insurer has a duty to defend an action against an insured is initially determined by the scope of the pleadings. *M/G Transport Services, Inc.,* 234 F.3d at 977, citing *City of Willoughby Hills v. Cincinnati Ins. Co.,* 9 Ohio St.3d 177, 459 N.E.2d 555, 558 (1984). The insurer must defend a claim of an insured whenever the complaint states a covered claim, or *potentially or arguably* does so. *Id.* If none of the claims in a complaint against the insured are potentially or arguably within the scope of the insurance policy, then the insurer has no duty to defend the insured.*Wedge Prods. v. Hartford Equity Sales Co.,* 31 Ohio St.3d 65, 509 N.E.2d 74 (1987). Ohio law further provides that when the insurer has a duty to defend one claim against an insured, “it must defend the entire lawsuit, even though other claims may not come within the coverage of the policy.”*Holloway Sportswear, Inc. v. Transportation Ins. Co.,* 177 F.Supp.2d 764, 769 (S.D.Ohio 2001), citing *Preferred Mutual Insurance Company v. Thompson,* 23 Ohio St.3d 78, 491 N.E.2d 688 (1986).

Moreover, “[a]n insurance policy is a contract, and its construction is interpreted as a matter of law. ”*Penn Traffic Co. v. AIU Ins. Co.,* 99 Ohio St.3d 227, 229, 790 N.E.2d 1199, 1202, 2003-Ohio-3373 (2003), citing *Alexander v. Buckeye Pipe Line Co.,* 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146 (1978). In determining the meaning of the insurance contract, the Court looks to the language of the policy and gives its terms their plain and ordinary meaning in order to reasonably understand the contract if the terms are otherwise undefined in the contract. *Penn Trafic Co.,* 790 N.E.2d 1199, citing *Gomolka v. State Auto. Mut. Ins. Co .,* 70 Ohio St.2d 166, 167-168, 24 O.O.3d 274, 436 N.E.2d 1347 (1982).

## *VI. ANALYSIS*

### *A. NO “OCCURRENCE” UNDER INSURANCE POLICY*

In its motion for summary judgment, Plaintiff first asserts that it is entitled to a declaratory judgment finding that it has no duty to defend or indemnify Defendant against the *King* lawsuit

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

because the causes of action in the lawsuit do not allege an "accident" or policy "occurrence" which triggers coverage under the policy between Plaintiff and Defendant. ECF Dkt. # 17 at 13-15. Plaintiff contends that the *King* complaint alleges only intentional decisions or acts committed by Defendant, none of which fall under an "accident" or "occurrence" as detailed in the policy. *Id.* at 14.

Defendant counters that no evidence exists in the record that it effected an intentional tort against Mr. King other than the allegations in the first claim of the *King* complaint. ECF Dkt. # 21 at 9. Defendant further asserts that in making its assertion of no duty to defend or indemnify, Plaintiff completely ignores the second cause of action in the *King* complaint which alleges that Defendant was negligent, a cause of action that would fall under the "occurrence" portion of the policy. *Id.*

***9** The relevant language of the policy at dispute here is located in Section I, which states:

This insurance applies to **bodily injury** and **property damage** only if:

(1) The **bodily injury** or **property damage** is caused by an **occurrence** that takes place in the **coverage territory ...**

ECF Dkt. # 17, Exhibit C at 1. Section V of the policy defines "occurrence" as:14. **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

*Id.* at 17.

The Court notes that the term "accident" is not defined in the policy. When a term is not defined in a contract, the plain and ordinary meaning of the word is used. *State Farm Fire & Cas. Co. v. Wilson,* 153 Fed. Appx. 952, 956 (6th Cir.2005), unpublished, citing *Nationwide Mut. Fire Ins. v. Guman Bros. Farm,* 73 Ohio St .3d 107, 652 N.E.2d 684, 686 (1995) and *King v. Nationwide Ins. Co.,* 35 Ohio St.3d 208, 519 N.E.2d 1380, 1383 (1988). Black's Law Dictionary defines " accident" as **"1.** An unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could not be reasonably anticipated."Black's Law Dictionary (8th Ed.2004). Webster's Dictionary similarly defines " accident" as **"1 a:** an unforeseen and unplanned event or circumstance **b:** lack of intention or necessity."Merriam-Webster's Collegiate Dictionary (11th Ed.).

The Court agrees with Plaintiff that the first claim of the *King* complaint does not allege an " occurrence" which triggers policy coverage because it avers an intentional tort, which does not meet the ordinary definition of "accident" that encompasses an unintended and unforeseen occurrence. However, the Court finds that the second cause of action in the *King* complaint alleging the negligence of Defendant does meet the definition of an " occurrence" which triggers coverage. Plaintiff does not address the negligence cause of action separately, but combines it with its argument as to the first cause of action by asserting that the *King* complaint merely alleges intentional decisions and acts on the part of Defendant. The Court finds otherwise as the second cause of action in *King* is labeled "Negligence" and avers that Defendant " negligently failed" to warn employees of risks and hazards of working on the Sao Tome project, " negligently failed" to protect employees from said risks and hazards, and "negligently failed" to implement emergency response procedures and evacuation procedures in case of a serious medical illness or emergency. ECF Dkt. # 17, Exhibit A at 7-8. The allegations in this count of the complaint at a minimum *potentially or arguably* state a claim covered by the policy and thus Plaintiff has a duty to defend the entire lawsuit. *See Holloway Sportswear, Inc.,* 177 F.Supp.2d at 769, citing *Thompson,* 491 N.E.2d 688. Accordingly, the Court DENIES Plaintiff's motion for summary judgment as to this assertion and DECLARES as a matter of law that Plaintiff has a duty to defend Defendant against all claims in the *King* case at this point because the second cause of action in the *King* lawsuit potentially or arguably states a claim covered by the "occurrence" or "accident" portion of the policy.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

***B. EXCLUSIONS UNDER THE INSURANCE POLICY***

*10 Plaintiff also asserts that even if the Court finds that the *King* complaint states a policy " occurrence", the Court should nevertheless find that it has no duty to defend Defendant in the *King* case because exclusions in the insurance policy apply to warrant no duty to defend. ECF Dkt. # 17 at 15-22.

***1. "EMPLOYER'S LIABILITY" EXCLUSION***

Plaintiff first contends that the Court should declare that it has no duty to defend Defendant in the *King* case because the "Employer's Liability" exclusion in the policy applies to bar coverage. That exclusion provides in pertinent part that:

2. Exclusions

This insurance does not apply to:

* * *

e. Employer's Liability

**Bodily injury** to:

(1) An **employee** of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that **employee** as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

ECF Dkt. # 1, Exhibit A at 2 (bolded text in original). Plaintiff contends that this exclusion applies to bar coverage under the policy because Mr. King was an employee of Defendant while working in Sao Tome and Ohio caselaw upholds the applicability and enforceability of an "employer's liability" exclusion in the intentional tort context. ECF Dkt. # 17 at 16, citing *Penn Traffic v. AIU Ins. Co.,* 99 Ohio St.3d 227, 790 N.E.2d 1199, 2003-Ohio-3373 (2003).

Citing the deposition of Mr. Frangopoulos, Defendant argues that the "Employer's Liability" exclusion does not apply in this case to bar coverage because Mr. King was not an "employee" of Defendant, but rather, he was a "temporary worker" as defined under the insurance policy. ECF Dkt. # 21 at 11. Defendant reasons that because Mr. King was not an "employee" of Defendant as required under the "Employer's Liability" exclusion of the policy, that provision is inapplicable and coverage is not therefore barred. *Id.*

The Court DENIES Plaintiff's motion for summary judgment on this issue and DECLARES that the "Employer's Liability" exclusion does not apply to bar insurance coverage in the instant case. The "Employer's Liability" exclusion specifically excludes bodily injury to an "employee" of the insured. ECF Dkt. # 1, Exhibit A at 2. However, " employee" is not technically defined in the policy. Rather, the definition merely labels the kind of workers that are included and excluded as employees:

Employee includes a **leased worker.**Employee does not include a **temporary worker.**

*Id.* at 16 (bolded text in original). The policy defines "leased worker" asA person leased to **you** by a labor-leasing firm under an agreement between **you** and the labor-leasing firm, to perform duties related to the conduct of **your** business. **Leased worker** does not include a **temporary worker.**

*11 *Id.* at 17."Temporary worker" is defined as **Temporary worker** means a person who is furnished to **you** to substitute for a permanent **employee** on leave or to meet seasonal or short-term workload conditions.

*Id.* at 19.Accordingly, the ordinary definition of "employee" must be used. Black's Law Dictionary defines "employee" asA person who works in the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

service of another person (the employer) under an express or implied contract of hire, under which the employer has the right to control the details of work performance.

Black's Law Dictionary (8th Ed.2004). Webster's Dictionary defines "employee" asOne employed by another usually for wages or salary and in a position below the executive level.

Merriam-Webster's Collegiate Dictionary (11th Ed.).

In order to show that Mr. King was in fact an employee of Defendant, Plaintiff points out that while in Sao Tome, Defendant hired Mr. King on to its payroll, paid for his travel, lodging and meals, kept track of his hours worked, withheld taxes and union dues from his paycheck, required him to complete and submit W-2 and W-4 forms, paid worker's compensation benefits for him, and paid for his medical care when he became ill. ECF Dkt. # 17 at 18, citing Exhibit B, Deposition of Nick Frangopoulos. Plaintiff urges this Court to apply the holding in *Penn Traffic Co.* and find that its policy, which contains the same "Employer's Liability" exclusion as that in *Penn Traffic,* does not provide coverage for an employer's liability for substantial-certainty intentional torts. *Id.* at 18.Plaintiff contends that the underlying claims in the *King* case assert an employer's intentional tort and thus the Court should grant summary judgment in its favor and find no coverage for the same reasons as those outlined in *Penn Traffic. Id.*

The Court disagrees with Plaintiff and finds that the "Employer's Liability" exclusion does not apply in this case to bar coverage. First, the parties in *Penn Traffic* agreed that the underlying judgment in the plaintiff's case was based upon a "substantial certainty" intentional tort. *Penn Traffic,* 790 N . E.2d at 1201. Here, however, there is no such agreement and more than an intentional tort is alleged as the second count of the *King* complaint alleges the negligence of Defendant. ECF Dkt. # 1, Exhibit A.

More importantly, however, the parties in *Penn Traffic* did not dispute that the injured worker was an employee. Here, the parties dispute whether Mr. King was an employee of Defendant. Plaintiff contends that Mr. King was Defendant's employee because it put Mr. King on the payroll and paid his expenses. However, Mr. Frangopoulos testified that he was essentially "forced" into placing Sky Towers employees, including Mr. King, on Defendant's payroll because Mr. Yankle informed Mr. Frangopoulos while they were in Sao Tome that Sky Towers lacked the funds in which to pay its employees. ECF Dkt. # 17, Exhibit B at 21. Mr. Frangopoulos further testified that while payments and deductions were made by Defendant to Sky Towers' employees, Defendant subtracted all of these monies from the contract price of the subcontract that Defendant had with Sky Towers.*Id.* Mr. Frangopoulos also indicated that he had no control over the hours worked by the Sky Towers employees and Mr. Yankle informed him of the pay rates and hours worked by each of the employees. *Id.* at 22.He further testified that he did not deal directly with the Sky Towers employees when corrections were necessary on the project. Mr. Frangopoulos indicated that he would go to Mr. Yankle and inform him of the corrections needed and Mr. Yankle would take care of getting the corrections made. *Id.* at 23-24.

***12** Based upon this testimony, the ordinary definitions of the word "employee" and no evidence to the contrary, the Court finds that reasonable minds could not conclude anything other than that Mr. King was not an employee of Defendant. Further, Plaintiff makes no argument that Mr. King was a leased worker and no such argument could be sustained since no evidence exists to show that Mr. King was a leased worker as that term is defined in the policy. And while Defendant argues that Mr. King was a temporary worker as defined in the policy, the Court need not address this issue because no genuine issue of material fact exists that Mr. King was not an "employee" of Defendant as that term is defined under its ordinary meaning.

For these reasons, the Court DENIES Plaintiff's motion for summary judgment on this issue and DECLARES that the "Employer's Liability" exclusion does not apply to bar coverage under the insurance policy.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*2. "EXPECTED OR INTENDED INJURIES" EXCLUSION*

Here, Plaintiff asserts that the "Expected or Intended Injuries" exclusion in the policy applies to preclude coverage in this case. ECF Dkt. # 17 at 18. Plaintiff argues that the allegations in the *King* complaint allege an intentional tort against Defendant and this bars coverage. *Id.* Plaintiff cites *Penn Traffic,* 790 N.E.2d 1199 and *McGuffin v. Zaremba Contracting,* 166 Ohio App.3d 142, 849 N.E.2d 315, 2006-Ohio-1734 (2006) for support, informing the Court that identical exclusions in these cases were found to preclude coverage for employer intentional tort claims even when the exclusion did not expressly reference "indirect intent " or "substantial-certainty" employer intentional torts. *Id.*

The relevant part of the insurance policy states:
2. Exclusions
This insurance does not apply to:
a. Expected or intended injury
**Bodily injury** or **property damage** expected or intended from the standpoint of the insured. This exclusion does not apply to **bodily injury** resulting from the use of reasonable force to protect persons or property.

ECF Dkt. # 17, Exhibit C at 2 (bolded text in original).

The undersigned DENIES Plaintiff's motion for summary judgment on this issue. The *Penn Traffic* case cited by Plaintiff is distinguishable from the instant case because in that case, the parties agreed that the judgment in the underlying case was based upon substantial certainty employer intentional torts. *Penn Traffic,* 790 N.E.2d at 1201. And in *McGuffin,* 849 N.E.2d at 316, it does not appear that either party challenged whether the underlying complaint alleged a substantial certainty employer intentional tort.

In the instant case, it appears that the first count in the *King* complaint alleges a substantial certainty employer intentional tort. However, the second count of the complaint alleges negligence as it discusses the failures of Defendant to warn employees and to protect them from the hazards of work in Sao Tome. This claim at a minimum *potentially or arguably* states a claim covered by the policy and appears to render the "Expected or Intended Injuries" exclusion of the policy inapplicable to at least one of the claims.

***13** Accordingly, the Court DENIES Plaintiff's motion for summary judgment requesting that the Court declare that the "Expected or Intended Injuries" exclusion in the insurance policy precludes coverage so that it has no duty to defend Defendant.

3. ***COURT SHOULD GRANT SUMMARY JUDGMENT ON UNDERLYING NEGLIGENCE CLAIMS IN KING COMPLAINT***

Plaintiff further moves the Court to grant summary judgment in its favor because Ohio's worker's compensation laws bar a negligence claim against Defendant as Defendant is immune from negligence suits as King's employer under the Ohio Constitution. *Id.* Plaintiff contends that since Defendant cannot become legally obligated to pay King for his injuries due to worker's compensation immunity, it as the insurance carrier cannot be legally obligated to defend or indemnify Defendant because the policy only provides coverage for covered damages that Defendant is "legally obligated to pay." *Id* ., citing Ohio Constitution, Article II, § 35 and ECF Dkt. # 17, Exhibit C at 1 (" **We** will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies.")(bolded text in original).

The Court DENIES Plaintiff's motion for summary judgment on this issue and DECLARES that this exclusion in the insurance policy does not preclude coverage in this case. Plaintiff bases its premise for summary judgment on this issue on the fact that Defendant was King's employer while he worked on the Sao Tome project. The Court has ruled otherwise *infra.*Thus, Plaintiff's basis for the instant assertion is without merit.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Plaintiff also argues that irrespective of the Court's ruling as to whether King was an employee of Defendant, the "professional services" endorsement exclusion in its policy applies to bar coverage for Defendant. ECF Dkt. # 17 at 22. Plaintiff summarizes the "gist" of King's negligence claims against Defendant as Defendant's failure to provide certain professional services, that is, "an alleged failure to employ a physician to travel with employees, an alleged failure to implement emergency response procedures and/or a medical evacuation procedure and/or an alleged failure to warn of the latent health risks and hazards of working in Sao Tome, West Africa."*Id.* Plaintiff reasons that the "professional services" exclusion would bar coverage because King is essentially arguing that Defendant failed to provide mainly medical-related services to him. *Id.*

The Court DENIES Plaintiff's motion for summary judgment on this issue as well. The " professional services" exclusion in the policy merely adds the exclusion that "[t]his insurance does not apply to 'bodily injury', 'property damage ' or 'personal and advertising injury' due to the rendering of or failure to render any professional service."ECF Dkt. # 17, Exhibit C, Bates Stamp 0032. "Professional service" is not defined, except to state that the exclusion applies to "Any and All Professional Services." *Id.*

***14** Ohio courts have addressed the issue of a general "professional services" exclusion such as the one in the instant case, explaining that:

Ohio Courts have accepted more than one definition of professional services relating to insurance contracts. "Professional services" has been defined as services requiring advanced knowledge in a field acquired by a prolonged course of study or specialized intellectual instruction. [*Jacob v. Grant Life Choices]* (June 29, 1995), Franklin Cty.App. No. 94APE10-1436, unreported. Additionally, "professional services" has been defined as services performed by one in the ordinary course of his profession, on behalf of another, pursuant to an agreement, and for which compensation is reasonably expected. [*Kahn v. Cincinnati Ins. Co.]* (February 3, 1984), Lucas Cty.App. No. L-83-309, unreported.

*GRE Ins. Group v. Normandy Pointe Associates,* No. 18998, 2002 WL 360646 at *2, 2002-Ohio1197 (2002). In GRE, the insurer had a similar "professional services" exclusion to that found in this case. GRE argued that it had no duty to defend or indemnify its insured against a complaint alleging that the insured had warranted that its housing development was not in a 100 year flood plain when in fact it was. The insured was the developer of the real estate in which this development was to be located and it had hired an engineering firm and a landscaping firm to help develop the community. The homeowners sued the insured, the engineering firm and the landscaping firm and alleged that all of them had warranted that the development was not in the 100 year flood plain, when the insured knew or should have known that the lots were in the plain. The homeowners also alleged that the engineering and landscaping firms were agents of the insured/developer.

Among other arguments, the insurer asserted that it had no duty to defend or indemnify the insured because the "professional services" exclusion in the policy precluded coverage. The Ohio appellate court found that the homeowners' complaint did not allege the rendering of professional services by the insured. *Id.* The court further found that the insured's profession did not involve the rendering or the failure to render the engineering services upon which the homeowners based their complaint. *Id.* Thus, the court reasoned, the "professional services" exclusion of the policy did not bar coverage.*Id.* The court also rejected the insurer's argument that the "professional services" exclusion nevertheless applied because the " professional services" rendered by the engineering firm and the landscaping firm could be imputed to the insured as they were agents of the insured. *Id.* The court concluded that whether the firms were agents of the insured did not matter because the " professional services" exclusion did not include an agent or independent contractor as an insured. *Id.*

Similarly in this case, King's complaint allegations of negligence relate not to Defendant's profession of paint contractor, but to Defendant's alleged failure to provide primarily medical services, including a physician to travel with the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

workers, an emergency evacuation plan and procedures, and failure to warn of health risks and hazards. Defendant has no professional acumen in providing medical services and thus the " professional services" exclusion does not serve to bar coverage. *GRE Ins. Grp.*, 2002 WL 360646. Accordingly, the Court DENIES Plaintiff's motion for summary judgment on this issue and DECLARES that the "professional services" exclusion of the insurance policy does not bar coverage.

***4. PUNITIVE DAMAGES***

***15** Plaintiff also moves the Court to declare that its policy provides no coverage to for any punitive damages if such damages are adjudicated against Defendant on King's underlying claims. ECF Dkt. # 17 at 22. Plaintiff cites Ohio Revised Code § 3937.182, *State Farm Mutual Insurance Company v. Blevins,* 49 Ohio St.3d 165, 168, 551 N.E.2d 955 (1990) and *Casey v. Calhoun,* 40 Ohio App.3d 83, 84, 531 N.E.2d 1348 (1987) in support. *Id.* Defendant provides no response addressing this issue.

The Court DENIES Plaintiff's motion for summary judgment on this issue. ECF Dkt. # 17 at 22-23. It is true that Ohio law disfavors insurance against punitive damages for an insured's intentional torts. 551 N.E.2d at 959. In addition, punitive damages are not available for negligence under Ohio law.*Lewis v. Horace Mann Ins. Co.,* 410 F.Supp.2d 640, 664 (N.D.Ohio 2005), citing *Petrey v. Liuzzi,* 76 Ohio App. 19, 61 N.E.2d 158, 162 (1945). However, the Court finds that Plaintiff in this case has a duty to defend Defendant against King's underlying punitive damages claims because the Court has already found that Plaintiff has a duty to defend Defendant on both claims in the *King* complaint. As found above, Ohio law provides that when the insurer has a duty to defend one claim against an insured, "it must defend the entire lawsuit, even though other claims may not come within the coverage of the policy."*Holloway Sportswear, Inc.,* 177 F.Supp.2d at 769, citing *Thompson,* 491 N.E.2d 688. Thus, because the Court has found that Plaintiff has a duty to defend Defendant on King's negligence claim, it also has the duty to defend Defendant not only on the intentional tort claim in the *King* case, but also on the punitive damages claims related thereto, even though neither of these claims may fall within policy coverage.

Accordingly, the Court DECLARES that Plaintiff has a duty to defend Defendant against the punitive damages portion of the *King* case.

***C. NO DUTY TO DEFEND AGAINST CLAIMS " TO WHICH THIS INSURANCE DOES NOT APPLY" (ECF Dkt. # 17 at 23)***

Plaintiff also moves the Court for summary judgment in its favor and a declaration that it has no ongoing duty to defend Defendant against the underlying claims in the *King* complaint because the policy's defense obligation extends only to those claims "to which the insurance applies." ECF Dkt. # 17 at 23. Plaintiff points out that it has been defending Defendant under a reservation of rights but the defense obligation in the insurance policy is limited in its grant of coverage. *Id.*

The relevant part of the policy provides:

**SECTION I-COVERAGES**

COVERAGE A **BODILY INJURY** AND **PROPERTY DAMAGE** LIABILITY

1. Insuring Agreement

a. **We** will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury** or **property damage** to which this coverage applies. **We** will have the right and duty to defend the insured against any **suit**

seeking those damages. However, we will have no duty to defend the insured against any **suit** seeking damages for **bodily injury** or **property damage** to which this insurance does not apply.

***16** ECF Dkt. # 17, Exhibit C at 1 (bolded text in original). Plaintiff reasons that it has no ongoing duty to defend because the facts as plead in the *King* complaint are indisputably outside the scope of its coverage under the insurance policy. ECF Dkt. # 17 at 24. Plaintiff cites *Cincinnati Insurance Company v. Anders,* 99 Ohio St.3d 156, 789 N.E.2d 1094 (2003), and *Preferred Risk Insurance Company v. Gill,* 30 Ohio St.3d 108, 507 N.E.2d 1118 (1987) in support of a finding that it has no continuing duty to defend because the true facts of the underlying *King* complaint fall outside of the scope of coverage and thus no duty to defend continues to exist because coverage extends only to "those claims to which coverage applies".*Id.*

The Court DENIES Plaintiff's motion for summary judgment on this issue. Plaintiff correctly points out that the true facts of the underlying complaint must be reviewed in this case in order to determine whether it has a duty to defend Defendant. In *Willoughby Hills v. Cincinnati Ins. Co.* 9 Ohio St.3d 177, 179, 9 OBR 463, 459 N.E.2d 555 (1984), the Ohio Supreme Court held that "the duty to defend need not arise solely from the allegations in the complaint but may arise at a point subsequent to the filing of the complaint."The court found that when "the allegations state a claim that falls either potentially or arguably within the liability insurance coverage, the insurer must defend the insured in the action."*Id.* at 180.In *Gill,* the Ohio Supreme Court held that when the insurer's policy extends only to defend bodily injury or property damages claims "to which this coverage applies"

the true facts are determinative of the duty to defend. Where the true facts are such that the insured's conduct was outside the coverage of the policy, the claim is not one "to which this coverage applies," and the insurer has no obligation to defend the insured.

507 N.E.2d at 1124. The court further concluded that:We hold, therefore, where the insurer does not agree to defend groundless, false or fraudulent claims, an insurer's duty to defend does not depend solely on the allegations of the underlying tort complaint. Absent such an agreement, the insurer has not duty to defend or indemnify its insured where the insurer demonstrates in good faith in the declaratory judgment action that the act of the insured was intentional and therefore outside the policy coverage.

*Id.* In Anders, the court reviewed Willoughby Hills and Gill, noting that the cases were distinguishable because the insurance policy in *Gill* did not contain language promising to defend against groundless, false or fraudulent claims and the fact in *Gill* that the conduct of the insured was so indisputably outside of the insurance coverage that the insurance company had no duty to defend. 789 N.E.2d at 1097.

In the instant case, as in *Gill,* Plaintiff did not contract with Defendant to defend against groundless, false or fraudulent claims. Plaintiff's policy only promised to defend bodily injury or property damages claims "to which this coverage applies." ECF Dkt. # 17, Exhibit C at Bates Stamp WH0005. However, unlike *Gill,* Plaintiff in this case has not demonstrated that Defendant's acts were intentional or so otherwise indisputably outside of the insurance coverage that it has no duty to defend. In *Gill,* the insured had entered a guilty plea to murdering a child and the parents of the child had sued the insured for wrongful death and negligent infliction of emotional distress. The insured's insurance policy provided coverage for personal liability except for bodily injury or property damage intended or expected by the insured. 789 N.E.2d at 1123. The insurer argued that the insured's guilty plea to the murder and subsequent conviction established beyond doubt that his actions were intentional and thus coverage was excluded because the conduct was intended or expected by the insured. *Id.* The Ohio Supreme Court agreed with the insurer, holding that:

***17** In a case such as this one, where the conduct which prompted the underlying wrongful death suit is so indisputably outside coverage, we discern no basis for requiring the insurance company to defend or indemnify its insured simply

because the underlying complaint alleges conduct within coverage. Such an approach would ignore patent realities for no overriding reason. To compel the insurer to defend regardless of the true facts, where, as here, the insurer has not promised to defend groundless, false or fraudulent claims, imposes an onerous burden for which the insurer did not bargain. Courts should not be expected to feign ignorance of a criminal conviction which clearly takes the conduct outside coverage. In cases such as this, this court will no longer unquestioningly elevate the allegations in the underlying tort complaint above all consideration of the true facts as established by the insurer unless the insurer has agreed to defend regardless of the true facts.

*Gill,* 507 N.E.2d at 1123.

Plaintiff in the instant case does not show that the insured's conduct which prompted the *King* lawsuit is "so indisputably outside coverage" that it warrants a finding that it has no duty to defend or indemnify. Accordingly, the Court DENIES Plaintiff's motion for summary judgment on this issue and DECLARES that the insurance provision indicating "no duty to defend against claims to which this insurance does not apply" does not bar coverage.

**VII.** ***SUMMARY AND CONCLUSION***

For the foregoing reasons, the Court DENIES Plaintiff's motion for summary judgment (ECF Dkt. # 17), GRANTS Plaintiff's motion to strike Defendant's motion for summary judgment (ECF Dkt. # 22), DENIES Defendant's motion for leave to file its motion for summary judgment instanter (ECF Dkt. # 27), and STRIKES Defendant's motion for summary judgment (ECF Dkt. # 21) and related filings thereto (ECF Dkt. # 28). Further, the Court hereby DECLARES that Plaintiff has a duty to defend Defendant in the Mahoning County Court of Common Pleas case of *Lois King, Individually and as Administrator of the Estate of Thomas Richard King, et al. v. Vimas Painting Company, Inc ., et al.*, No. 06CV428 on all claims in that case.

N.D.Ohio,2007.
Insurance Co. of State of Pennsylvania v. Vimas Painting Co., Inc.
Slip Copy, 2007 WL 1412988 (N.D.Ohio)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.