C
Wyatt v. Michelin North America, Inc.
N.D.Ind.,2003.
Only the Westlaw citation is currently available.
United States District Court,N.D. Indiana, Fort Wayne Division.
Janice M. WYATT, Plaintiff,
v.
MICHELIN NORTH AMERICA, INC., dba Uniroyal-Goodrich, Tire, aka Uniroyal Goodrich Tire, Defendants.
**No. 1:02-CV-234.**

July 16, 2003.

*MEMORANDUM OF DECISION AND ORDER*

COSBEY, Magistrate J.

## I. INTRODUCTION

***1** The *pro se* plaintiff, Janice Wyatt ("Wyatt" ), a black African American female, brings this action against Michelin North America, Inc. (" Michelin"), alleging race and sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and disability discrimination in violation of the Americans with Disability Act, 42 U.S.C. § 12101, *et seq.*[FN1]

FN1. Wyatt suffers from Sarcoidosis and Iridocyclitis, conditions that affect the eye and restrict her from operating heavy machinery.

Currently before the Court are the parties' cross-motions for summary judgment and Michelin's Motion to Strike. On February 27, 2003, Michelin filed its Motion for Summary Judgment and on March 4, 2003, the Court issued a notice consistent with *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir.1982), instructing Wyatt of her obligation to respond with counter-affidavits or other evidence by March 31, 2003. Wyatt filed a combined response and cross-motion for summary judgment on March 31, 2003, where, in addition to her original claims, Wyatt raised, for the first time, issues of religious discrimination and retaliation.

On April 3, 2003, the court ordered further briefing on these additional issues, and, in response, Michelin filed a Motion to Strike Wyatt's cross-motion as untimely, and submitted a Supplemental Motion for Summary Judgment on the religious discrimination and retaliation claims. [FN2]All of the motions have been fully briefed and are ripe for review.

FN2. Michelin moves to strike Wyatt's cross-motion for summary judgment as untimely filed. Indeed, Wyatt submitted her cross-motion four weeks after the dispositive motion deadline closed, and failed to file for an extension of time, *see* Fed. R. Cov. P. 6(b), or otherwise explain this tardy filing. Indeed, this Court has routinely denied untimely filed cross-motions for summary judgment, *see, e.g., Agric. Mgmt. Dev., Inc. v. National City Bank,* 1:02-CV-11 (N.D. Ind. June 23, 2003) (Cosbey, Magis.J.) (Unpublished order) (denying cross-motion for summary judgment as untimely when filed six weeks after dispositive motion deadline), and will GRANT Michelin's Motion to Strike. Nevertheless, the Court will address Wyatt's claims of religious discrimination and retaliation *infra.*

The evidentiary record consists of Wyatt's deposition ("Wyatt Dep. at ____"); the affidavit of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Dr. Michael R. Johnson ("Dr.Johnson") ("Johnson Aff. ¶ ____"); Dr. Johnson's deposition ("Johnson Dep. at ____"); the affidavit of Michelin's Labor Relations Manager Mark Timm ("Timm Aff. ¶ ____"); and other documents.

For the following reasons, Michelin's Motion and Supplemental Motion for Summary Judgment will be GRANTED and its Motion to Strike will be GRANTED.

II. FACTUAL BACKGROUND [FN3]

FN3. The following factual recitation is viewed in a light most favorable to the Plaintiff and draws all inferences in her favor.

Between July 27, 1992, and August 10, 2001, Wyatt worked for Michelin as a material conservation checker, tire builder, and, at the time of her termination, ostensibly for violating Michelin's Code of Conduct (the "Code"), she was a fork lift driver.[FN4](Wyatt Dep. At 17-18).

FN4. As a member of the United Steelworkers, Local 715 (the "Union"), the terms and conditions of Wyatt's employment were covered by the Collective Bargaining Agreement ("CBA") negotiated between the Union and Michelin. However, although Wyatt apparently did not realize that the CBA governed her employment (Wyatt Dep. at 18), she was aware that the Union represented her and, about every three years, gave her a copy of the contract. (*Id.* at 19.)

The Code, which was posted at Michelin's facility, provides in pertinent part that "major misconduct which may warrant termination of employment includes ... Dishonesty-Including falsifying or altering Company records or reports, including employment applications, or intentionally providing false or misleading information."(Wyatt Dep. at 20-21; Code of Conduct at 2.)

Wyatt's religious discrimination claim apparently stems from March 23, 2000, when she requested time off on Sundays in order to attend church services.[FN5] (Wyatt's Resp., Attach. 7.) The CBA provides for reasonable religious accommodations for those employees who possess a valid and sincere religious objection to working on their Sabbath. (Timm Aff., Ex. A.) A joint committee consisting of Union and plant officials review these religious exemption requests (*id.*), and in this case offered Wyatt eighteen hours of accommodation each Sunday between 6:00 a.m. and 12:00 midnight. (Timm Aff. ¶ 3.) However, there was evidently some lack of communication because the joint committee never heard anything more from Wyatt until about seven months later when she submitted a charge of discrimination to the EEOC and later sent them a copy of a letter she sent to the EEOC alleging religious discrimination based on not receiving a reply to her exemption request. (Wyatt's Resp., Attach. 8.)

FN5. Wyatt is Baptist.

***2** A little later, from November 27, 2000 to July 30, 2001, Wyatt filed multiple requests for Sickness & Accident ("S & A") benefits claiming an inability to work because of an eye condition. Additionally, while the record is not entirely clear, it appears Wyatt missed all or most of these eight months of work due to her alleged illness. (*See* Wyatt Resp., Attach. 5.) Apparently, Michelin accepted and granted most of these requests, but sometime in July 2001, began actively investigating whether she was actually entitled to S & A benefits.

S & A benefits, obviously, serve to compensate employees suffering from illnesses that prevent them from working. In order to receive such benefits, the employee must submit an "Attending Physician's Statement" ("APS") with both the employee's and her physician's signatures, and the dates the employee was unable to work due to illness.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Wyatt first saw Dr. Johnson, her ophthalmologist, on November 27, 2000 for a comprehensive eye exam, and while we do not have the medical records before us, apparently she had a follow-up exam on December 5, 2000 because on that day, Dr. Johnson signed an APS, indicating that Wyatt would be continuously disabled for the next six to eight weeks. (Wyatt Dep. at 36-37, Ex. G.)

On January 17, 2001, Wyatt submitted another APS from Dr. Johnson, this time indicating that she needed an additional six to eight weeks off. (*Id.* at 38-39, Ex. H; Johnson Aff., Ex. B.) Although this document purports to contain Dr. Johnson's signature, he now asserts that the date was altered and his signature forged. (Johnson Aff. ¶ 4.) Dr. Johnson further states that he never authorized Wyatt to be off work for a period of six to eight weeks beginning on January 17, 2001. (*Id.*) However, Dr. Johnson admits that he does not know who altered the form and apparently does not choose to infer it was Wyatt. (Johnson Dep. at 132.)

Michelin received another APS from Dr. Johnson indicating an April 9, 2001 exam, with clearance for Wyatt to return to work on April 10, 2001. (Wyatt Dep. at 45, Ex. I; Johnson Aff., Ex. C.) However, this document is also suspect because Dr. Johnson signed it on March 21, 2001, the day after her actual exam, even though it shows an examination date of April 9, 2001. (Johnson Aff. ¶ 5.) Moreover, contrary to Wyatt's assertion (Wyatt Dep. at 45, 46), Dr. Johnson claims he never authorized Wyatt to be continually off work through April 10, 2001. (Johnson Aff. ¶ 5.) Again, Dr. Johnson claims that the original form, signed on March 21, 2001, was altered without his knowledge or consent.(*Id.*)

Wyatt subsequently submitted another request to extend her S & A benefits through April 18, 2001 (Wyatt Dep. at 46-47, Ex. J; Johnson Aff., Ex. D), however, Dr. Johnson once again maintains that he did not authorize Wyatt to be off work during this period. (Johnson Aff. ¶ 6.)

On June 5, 2001, Wyatt submitted yet another claim (Wyatt Dep. at 48, Ex. K; Johnson Aff., Ex. E) indicating that Dr. Johnson examined her on April 17, April 25, and May 11, 2001, and authorized her to be paid S & A benefits through June 15, 2001. (Wyatt Dep. at 49-50.) Once again, Dr. Johnson indicates that the date on the form was altered. (Johnson Aff. ¶ 7.)

***3** Subsequently, on July 11, 2001, Wyatt requested paid bereavement leave to attend her second cousin's funeral, but Michelin informed her that it does not grant paid leave for funerals of second cousins. (Wyatt Dep. at 21-22, 24.) Wyatt then requested and received her supervisor's authorization to take the day as a paid vacation. (*Id* . at 24, 26).

Wyatt then called in sick on both July 16 and July 17, 2001. (*Id.* at 32.)However, when Michelin later received a reference request signed by Wyatt on July 17, 2001, Michelin discovered that she had actually completed a job application with another prospective employer on the same day she claimed to be sick. (*Id.* at 33, Ex. F.)

Also, on July 24, 2001, Michelin received another form from Wyatt, claiming S & A benefits from June 24 to July 24, 2001, and she was evidently awarded these benefits. (*Id.* at 26, 28, Ex. C.) However, because Wyatt also took a paid vacation day on July 11, 2001, the day of her second cousin's funeral, she received both vacation pay and S & A benefits for the same day. (*Id.* at 28.)Wyatt acknowledges that this was probably a violation of the Code. (*Id.*)

This double payment for July 11, 2001, finally triggered an investigation at Michelin into Wyatt's S & A benefit claims. However, just as that investigation was getting started, Wyatt submitted yet another APS form for S & A benefits, alleging total disability between November 27, 2000 and August 6, 2001. (Wyatt Dep. at 51, Ex. L; Johnson Aff., Ex. F.) However, Dr. Johnson's purported signature on this form is clearly different than those on previous APS forms. Perhaps this difference can be explained by the fact that Dr. Johnson disagrees with what is attributable to him in that APS form. (Johnson Aff. ¶ 8) ("Wyatt was not continuously disabled during this period of time.") Indeed, he explains that during her office visits, Wyatt led him

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

to believe that she was working and that something in the plant was irritating her eyes, and he never authorized her to be off work for the time indicated on all the APS forms, let alone nine months. (*Id.*)

On August 10, 2001, Michelin informed Wyatt that she was terminated for what it considered dishonest behavior under the Code by (1) requesting and receiving both S & A benefits and vacation pay on July 11, 2002, (2) requesting and receiving unauthorized S & A benefits for nine months, and (3) calling in sick on July 17, 2001, when in actuality she was applying for another job. (Wyatt Dep. at 54; Wyatt's Reply Attach. 1.)

In this regard, Michelin maintains Wyatt's termination is consistent with its treatment of other employees, because in 1998 they fired a white female, Miranda Teusch ("Teusch"), for basically receiving S & A benefits at the same time she was working and being paid. After an investigation, Michelin terminated Teusch's employment for violating the Code, including intentionally providing false or misleading information. *See Teusch v. Michelin Tire Co.,* Cause No. 1:00-CV-98 (N.D.Ind. Oct. 30, 2001) (Lee, J.) (granting summary judgment in favor of Michelin). In fact, since September, 1994, Michelin has apparently terminated nine other employees for dishonesty, eight of whom were white, and six of whom were male. (Timm Aff. ¶ 2.)

III. SUMMARY JUDGMENT STANDARD

***4** Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."Fed.R.Civ.P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago,* 916 F.2d 1254, 1256 (7th Cir.1990).Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552-53 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff."*Id.* at 2512;*In Re Matter of Wildman,* 859 F.2d 553, 557 (7th Cir.1988); *Klein v. Ryan,* 847 F.2d 368, 374 (7th Cir.1988); *Valentine v. Joliet Township High School District No. 204,* 802 F.2d 981, 986 (7th Cir.1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party."*Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 322 (7th Cir.1992) (quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact."*Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt,* 862 F.2d 646, 649 (7th Cir.1988); *Guenin v. Sendra Corp.,* 700 F.Supp. 973, 974 (N.D.Ind.1988); *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.), *cert. denied,*464 U.S. 960 (1983). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson,* 477 U.S. at 249-251, 106 S.Ct. at 2511. However, "[i]t is a gratuitous cruelty to parties and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank,* 704 F.2d 361, 367 (7th Cir.1983).

***5** Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Id.* 477 U.S. at 248, 106 S.Ct. at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed.R.Civ.P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."*Matsushita,* 475 U .S. at 586, 106 S.Ct. at 1356;*First National Bank of Cicero v. Lewco Securities Corp.,* 860 F.2d 1407, 1411 (7th Cir.1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to " whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."*Anderson,* 477 U.S. at 251-252, 106 S.Ct. at 2512.

In any event, in employment discrimination matters, the standard on summary judgment is applied with "added rigor." *Sarsha v. Sears, Roebuck & Co.,* 3 F.3d 1035, 1038 (7th Cir.1993). As the Seventh Circuit reiterated in *Robinson v. PPG Industries, Inc.,* 23 F.3d 1159, 1169 (7th Cir.1994), citing the standard set out in *Sarsha:*

Summary judgment is appropriate only when the materials before the court demonstrate that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. This standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues. Accordingly, we will affirm the decision of the district court only if, had the record before that court been the record of a complete trial, the defendant would have been entitled to a directed verdict.[FN6][citations omitted].

FN6. The anachronistic term "Directed Verdict" is no longer used; rather, it has been more accurately retitled "Judgment as a Matter of Law."*See*Fed.R.Civ.P. 50(a). A defendant is entitled to such a judgment if " there is no legally sufficient evidentiary basis for a reasonable jury to find for" the plaintiff. *Id.*

However, the 7th Circuit has since clarified its use of the phrase added rigor, stating that the " original use of this phrase indicates that it was merely included to stress the fact that employment discrimination cases typically involve questions of intent and credibility, issues not appropriate for this court to decide on a review of a grant of summary judgment."*Alexander v. Wisconsin Dept. of Health and Family Servs.* 263 F.3d 673, 681 (7th Cir.2001).

## IV. DISCUSSION

The court will first address Wyatt's Title VII claims of race, gender, and religious discrimination; followed by her ADA claim; and ultimately her retaliation claim. However, throughout each claim, Michelin asserts that Wyatt's violation of the Code constitutes non-pretextual reasons for termination. Wyatt has failed to show that this reason is pretextual.

### A. THE TITLE VII CLAIMS

#### 1. Wyatt's Race and Sex Discrimination Claims Fail as a Matter of Law [FN7]

FN7. Because Wyatt's race and sex discrimination claims are so closely aligned, we will collapse the discussion of the two into one.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(a.) Standard of Review

Title VII makes it unlawful for an employer to discriminate in the employment of any individual " because of such individual's race, color, religion, sex, or national origin."42 U.S.C. § 2000e-2(a)(1). To prevail on either her race or sex discrimination claim, Wyatt must show either direct evidence of a discriminatory motive or rely on the indirect burden-shifting method outlined in *McDonnell Douglas v. Green,* 411 U.S. 792 (1973). Since Wyatt has put forth no direct evidence of discrimination, the focus here is on the *McDonnell-Douglas* burden-shifting analysis. This means Wyatt must first establish a prima facie case by showing that: (1) she is a member of a protected class; (2) she was meeting her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) the employer treated similarly situated persons outside the protected class more favorably. *Johnson v. Cambridge Indus., Inc.,* 325 F.3d 892, 897 (7th Cir.2003); *Haywood v. Lucent Tech., Inc.,* 323 F.3d 524, 530 (7th Cir.2002) ; *Simmons v.. Chicago Bd. of Educ.,* 289 F.3d 488, 492 (7th Cir.2002). If she meets this burden, Michelin must provide a legitimate, nondiscriminatory reason for her termination. At that point, the burden returns to Wyatt to present evidence that the reasons offered by Michelin are actually a pretext for discrimination. *McDonnell Douglas,* 411 U.S. at 804.

(b.) Wyatt fails to make a prima facie showing of discrimination.

***6** As for the prima facie case, there is no dispute that Wyatt meets the first and third elements, she is a black African American female and Michelin terminated her. However, as we shall see more fully *infra,* she cannot show that she was meeting Michelin's legitimate job expectations or that Michelin treated similarly situated persons outside the protected class more favorably.

Turning first to whether Wyatt was meeting Michelin's legitimate job expectations, we note that the Code establishes certain minimum job expectations including the certainly basic one that its employees be honest and not submit false or misleading information. (Code of Conduct at 2.) Yet in this case, the undisputed evidence reveals that Wyatt requested and received both S & A benefits and vacation pay for the same day and she even concedes that this "probably" violated the Code. (Wyatt Dep. at 28.) The record further shows that Wyatt received S & A benefits during periods that Dr. Johnson did not authorize. (Johnson Aff. ¶ 8.) Certainly, Michelin is entitled to employees who perform their job honestly, and to the extent this is a legitimate job expectation, Wyatt has failed to satisfy this element of her prima facie case. *See McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 281-84 (1976) (employer could legitimately dismiss employee for participating in theft of cargo; Title VII violation would occur, however, if employer dismissed white employees for same conduct for which black employees were not dismissed).

Moreover, Wyatt has failed to identify any similarly situated non-black or male employees who were treated more favorably. *Id.* Although Wyatt alleges that Michelin treated Teusch, a white female, more favorably by giving her a second chance, Wyatt was failed to submit any evidence to prove this allegation.[FN8]In contrast, it appears from the evidence in the record that since September 1994, Michelin actually terminated nine other employees for dishonesty, eight of whom were white, and six of whom were male. (Timm Aff. ¶ 2 .)

FN8. Wyatt has not offered a sworn affidavit or a declaration made under the pains and penalties of perjury as allowed by 28 U.S.C. § 1746. Of course, even if we considered this unsubstantiated claim, it is insufficient to support her claim of sex discrimination because she has not shown that Michelin treated similarly situated *males* more favorably.

Accordingly, Wyatt has failed to make out her prima facie case of either race or sex discrimination as a matter of law.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(c.) Michelin has offered legitimate nondiscriminatory reasons.

Moreover, if we assume that Wyatt could make a prima facie showing, Michelin has asserted legitimate, non-discriminatory reasons for terminating Wyatt. *See McDonnell Douglas,* 411 U.S. at 802. After all, Wyatt ostensibly violated the Code when she (1) requested and received both S & A benefits and vacation pay on July 11, 2002, (2) requested and received unauthorized S & A benefits for nine months, and (3) called in sick on July 17, 2001, but, in actuality, had applied for another job on that day. (Wyatt Dep. at 54; Wyatt's Reply Attach. 1) *See, e.g., Straughn v. Delta Air Lines, Inc.,* 250 F.3d 23 (1st Cir.2001) (accepting reasons as legitimate when employee (1) received worker's compensation without authorization, and (2) received both worker's compensation and his full salary over the same period).

(d.) Wyatt has failed to show pretext.

*7 Since Michelin has offered legitimate, non-discriminatory reasons for the termination, the burden of proof shifts back to Wyatt to show pretext. To establish pretext, Wyatt must show that her race or sex was the determining factor for her termination, or, stated somewhat differently, "but for " her race or sex she would not have been terminated. *Jones v. Union Pacific R. Co.,* 302 F.3d 735, 742 (7th Cir.2002).

Pretext is a lie or a phony reason for an employment decision. *See O'Neal v. City of New Albany,* 293 F.3d 998, 1005 (7th Cir.2002)."To show that an employer's proffered reason is pretextual, a plaintiff must do more than demonstrate that the employer made a mistake or that the employer's reason was not good enough to support its decision."*Koski v. Standex Int'l Corp.,* 307 F.3d 672, 677 (7th Cir.2002) (citing *Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 147 (2000)). Instead, Wyatt must establish pretext with evidence that Michelin was "more likely than not motivated by a discriminatory reason or that [its] explanations are not worthy of credence, i.e., they are factually baseless, did not actually motivate the defendant, or were insufficient to motivate the adverse employment action."*O'Neal,* 293 F.3d at 1005. Indeed, Wyatt cannot prevail if Michelin " honestly believed in the nondiscriminatory reasons [it] offered, even if the reasons are foolish or trivial or even baseless."*Bell v. E.P.A.,* 232 F.3d 546, 550 (7th Cir.2000).

Wyatt apparently argues that Michelin's reasons are factually baseless because she maintains she did not alter the APS forms, but instead claims they were altered by someone in Dr. Johnson's office or by Michelin. Moreover, Wyatt insists that her double-payment on July 11, 2001 was actually caused by Michelin "screw[ing] up" her vacation request. (Wyatt Resp. at 1, 2.) [FN9] Essentially, Wyatt argues that, under the applicable summary judgment standards, we must accept her version of the facts as true, and, as such, because Michelin's reasons are allegedly inaccurate, she reasons they must also be illegitimate. However, this argument misinterprets the applicable standard because the issue here is not whether Michelin's account of events is correct, rather it is whether Michelin honestly believed that Wyatt violated the Code." Arguing about the accuracy of the employer's assessment is a distraction ... because the question is not whether the employer's reasons for a decision are 'right but whether the employer's description of its reasons is honest." ' *Kariotis v. Navistar Int'l Transp. Corp.,* 131 F.3d 672, 677 (7th Cir.1997) (quoting *Gustovich v. AT & T Comm., Inc.,* 972 F.2d 845, 848 (7th Cir.1992). Moreover, while facts, not Wyatt's perceptions and feelings, are required to support a race or sex discrimination claim, Wyatt has provided nothing but her unsubstantiated speculation. *See Koski,* 307 F.3d at 677 (citing *Uhl v. Zalk Josephs Fabricators, Inc.,* 121 F.3d 1133, 1137 (7th Cir.1997)). Thus, because no reasonable jury could find that Wyatt has carried her burden of proving a material issue of fact regarding the sincerity of Michelin's belief, Michelin's motion for summary judgment on Wyatt's race and sex discrimination claims will be granted.

FN9. Of course, Wyatt has once again

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

failed to produce any evidence to support these allegations, *see*Fed.R.Civ.P. 56(e); 28 U.S.C. § 1746, despite the Court's notice informing her of her obligation to respond to Michelin's motion for summary judgment with counter affidavits or other evidence. (Docket No. 24.)

2. Wyatt's Religious Discrimination Claim Fails as a Matter of Law

***8** Before moving on to Wyatt's allegation that Michelin discriminated against her by failing to accommodate her religious beliefs, we pause to frame the inquiry. Title VII requires employers to make reasonable accommodations for all aspects of their employee's religious observance, practice, and belief, unless doing so would result in "undue hardship" to the employer. 42 U.S.C. §§ 2000(e)-2(a)(1), 2000e(j). To prevail on this claim, Wyatt must establish a *prima facie* case by showing that: (1) she holds a sincere religious belief that conflicts with a work requirement; (2) she informed Michelin of the conflict; and (3) Michelin took an adverse action against her for failing to comply with the conflicting employment requirement, in this case, Michelin's failure to make a religious accommodation. *Bushouse v. Local Union 2209, United Auto., Aerospace & Agric. Implement Workers,* 164 F.Supp 2d 1066, 1073 (N.D.Ind.2001) (citing *Protos v. Volkswagen of Am., Inc.,* 797 F.2d 129, 133-34 (3d Cir.1986)). If Wyatt establishes a prima facie case, the burden shifts to Michelin to show that it made good faith efforts to accommodate, or that the requested accommodation would work an undue hardship. *E.E.O.C. v. United Parcel Service,* 94 F.3d 314, 318 (7th Cir.1996).

Michelin concedes the first and second prongs of the prima facie case: in March 2000, both Wyatt and her pastor wrote Michelin requesting time off for her to attend Sabbath services. (Wyatt's Resp., Attach. 7.) However, the record indicates that Michelin made appropriate accommodations by offering Wyatt eighteen hours each Sunday to attend her services and Wyatt has submitted no evidence to the contrary.[FN10]Without showing an adverse employment action, Wyatt clearly fails to prove the third prong of her prima facie case. Accordingly, Wyatt's religious discrimination claim fails and Michelin's motion for summary judgment on this point will be granted.

FN10. In her Response, Wyatt asserts that Michelin never responded to her request for Sabbath accommodation. (Wyatt Resp. at 3.) However, like her other factual assertions, she has not supported this claim with any evidence, including either an affidavit or declaration, *see*28 U.S.C. § 1746; Fed.R.Civ.P. 56(e), so we may simply ignore it.

B. THE ADA DISCRIMINATION CLAIM

The ADA prohibits employers to discriminate " against a qualified individual with a disability because of the disability ... in regard to ... [the] discharge of employees ... and other terms, conditions, and privileges of employment."42 U.S.C. § 12112(a). Wyatt claims Michelin discriminated against her, in violation of the ADA, by terminating her because of her medical condition. To establish a prima facie case of discriminatory discharge under the ADA, Wyatt must show that: (1) she is "disabled" within the meaning of the ADA, (2) she is "qualified to perform the essential functions of her job either with or without reasonable accommodation;" and (3) Michelin terminated her.*Dyke v. O'Neal Steel, Inc.,* 327 F.3d 628, 631 (7th Cir.2003); *Dvorak v. Mostardi Platt Assoc., Inc.,* 289 F.3d 479, 483 (7th Cir.2002); *Pugh v. City of Attica, Indiana,* 259 F.3d 619, 626 (7th Cir.2001). If Wyatt meets her prima facie case, then Michelin must provide a legitimate, nondiscriminatory reason for her termination. At that point, Wyatt must show that the nondiscriminatory reasons are pretextual. *Dvorak,* 289 F.3d at 483.

1. Wyatt Fails to Make Out Her Prima Facie Case

***9** In determining whether Wyatt can make a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

prima facie showing, there is no dispute that she was terminated, so we will focus on the first two inquiries; i.e. whether she is disabled and whether she is a qualified individual.

(a.) The Definition of "Disabled"

Under the ADA, an individual is "disabled" if (A) she has a physical or mental impairment that substantially limits one or more of the major life activities of the individual; (B) she has a record of such an impairment; or (C) her employer regarded her as having such an impairment. 42 U.S.C. § 12102(2)(A)-(C).

(i.) Wyatt's physical impairment does not substantially limit a major life activity.

In *Bragdon v. Abbott,* 524 U.S. 624 (1998), the Supreme Court identified a three-step test to determine if a physical or mental condition meets the definition of disability under § 12102(2)(A). First, we must determine if Wyatt's condition is a physical or mental impairment. *Id.* Second, we must identify an affected life activity upon which Wyatt relies, and determine whether it constitutes a major life activity under the ADA. *Id.* Third, we must ask whether the impairment substantially limited the major life activity.*Id.*

Applying *Bragdon* here, we at least infer, and it is largely unchallenged, that Wyatt suffers from a physical impairment. (Wyatt Dep. at 35.)

Less clear, however, is whether Wyatt has adequately presented evidence that her condition " substantially limits" her ability to perform the major life activities of working or seeing under *Bragdon's* second and third steps.[FN11] The Supreme Court has recently clarified that "substantially" suggests " 'considerable' or 'to a large degree." ' *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 122 S.Ct. 681, 691 (2002). Thus, for example, "impairments that interfere in only a minor way with the performance of manual tasks" cannot qualify as disabilities. *Id.* Moreover, when the major life activity at issue is working, the Plaintiff must demonstrate that she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes[.]" [FN12]29 C.F.R. § 1630.2(j)(3)(I); *E.E.O.C. v. Rockwell Intern. Corp.,* 243 F.3d 1012, 1017 (7th Cir.2001).

FN11. Wyatt does not identify which major life activity is affected by her impairment, but, liberally construing her response, *Haines v. Kerner,* 404 U.S. 519, 520 (1972), it appears she is claiming the major life activities of working or seeing are affected.

FN12. A "class of jobs" encompasses the job from which the Plaintiff was disqualified, as well as all other jobs utilizing similar training, knowledge, and skills within "the geographical area to which the [claimant] has reasonable access. "29 C.F.R. § 1630.2(j)(3)(ii)(A)-(B). A " broad range of jobs in various classes," in contrast, includes the job from which a claimant was disqualified, as well as all other jobs not utilizing similar training, knowledge, and skills within "the geographical area to which the [Plaintiff] has reasonable access."29 C.F.R. § 1630.2(j)(3)(ii)(A), (C).

Although Wyatt maintains that she was totally disabled and unable to work for nine months, she once again has failed to produce any evidence to support this allegation. Instead, Dr. Johnson clearly indicates that "this is absolutely incorrect as Janice Wyatt was not continuously disabled during this period."(Johnson Aff. ¶ 8.) In light of Dr. Johnson's statement and without sufficient evidence as to the severity of her eye condition, no reasonable jury could find that Wyatt's impairment substantially limited her ability to work or see.

(ii.) There is no record of a disabling impairment.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

In order to qualify as an individual with a disability under § 12102(2)(B), Wyatt must be able to show that (1) she has a record or history of an impairment, and (2) the impairment substantially limited a major life activity. *See Peters v. City of Mauston,* 311 F.3d 835, 843 (7th Cir.2002); *Lawson v. CSX Transp., Inc.,* 245 F.3d 916, 926 (7th Cir.2001). Although Wyatt has shown that she has an eye condition history, as discussed *supra,* Wyatt has failed to produce any evidence indicating that the impairment substantially limited any major life activity. Accordingly, she has failed to demonstrate a record of a disabling condition under § 12102(2)(B).

(ii.) Michelin regarded Wyatt as having a disabling impairment.

***10** The third prong of the definition of disability is "being regarded as having" an impairment which substantially limits a major life activity. 42 U.S.C. § 12102(2)(C). The "regarded as " prong is fulfilled if either "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities."*Sutton v.. United Air Lines, Inc.,* 527 U.S. 471, 489, 119 S.Ct. 2139 (1999); *Dyke,* 327 F.3d at 632. The Seventh Circuit recently applied the *Williams* standard to a "regarded as" claim, holding "if the condition that is the subject of the employer's belief is not substantially limiting, and the employer does not believe that it is, then there is no violation of the ADA under the 'regarded as' prong of the statute."*Mack v. Great Dane Trailers,* 308 F.3d 776, 781-82 (7th Cir.2002); *Dyke,* 327 F.3d at 632.

As already discussed *supra,* Wyatt's eye condition is not actually substantially limiting. Thus, the question here becomes whether Michelin Mistakenly believed that her condition substantially limited her ability to see or work. The record shows that, while Dr. Johnson did not actually authorize it, Michelin granted Wyatt S & A benefits for the nine month period before her termination. Because the APS forms had been altered, Michelin apparently believed that Wyatt was totally disabled and unable to work during this period. The fact that Michelin granted these benefits suggests that they mistakenly believed Wyatt's eye condition substantially limited her ability to see or work. Thus, a reasonable jury could infer that Michelin regarded Wyatt's eye condition as a substantially limiting impairment. Accordingly, Wyatt has raised an issue of fact as to whether Michelin "regarded [her] as" disabled under the ADA.

(b.) Wyatt Cannot Perform the Essential Functions of her Employment.

Nevertheless, Wyatt cannot make out the rest of her prima facie case because she cannot perform the essential functions of her position. Indded, the second prong of the prima facie case requires her to show that she is someone with a "disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Emerson v. Northern States Power Co.,* 256 F.3d 506, 513 (7th Cir.2001); 42 U.S.C. § 21111(9).

To do this, Wyatt must demonstrate that she (1) has the prerequisites for the position (*i.e.* proper training, skills, and experience); and (2) can perform the essential functions of the job with or without reasonable accommodations.*Emerson,* 256 F.3d at 513;*Nowak v. St. Rita High School,* 142 F.3d 999, 1002-03 (7th Cir.1998) (citing 29 C.F.R. Pt. 1630, App. § 1630.2(m)); *Sieberns v. Wal-Mart Stores, Inc.,* 125 F.3d 1019, 1022 (7th Cir.1997). Moreover, it is well settled that the "qualified individual" determination must be made at the time of the challenged employment decision. *Nowak,* 142 F.3d at 1003;29 C.F.R. Pt. 1630, App. § 1630.2(m), at 351 (1998). Here, Wyatt evidently met the prerequisites for her job since, prior to the S & A leaves, she worked a number of years in that position. Thus, we turn to whether Wyatt could perform the essential functions of her job.

***11** Apparently, when Wyatt was present, she

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

had no problems performing the essential functions of her job. However, Wyatt claims she was unable to work for a nine month period. The Seventh Circuit recently explained that " '[t]he rather common-sense idea is that if one is not able to be at work, one cannot be a qualified individual.'... Inability to work for a multi-month period removes a person from the class protected by the ADA." *Byrne v. Avon Products, Inc.,* 328 F.3d 379, 381 (7th Cir.2003) (citing *Waggoner v. Olin Corp.,* 169 F.3d 481, 482 (7th Cir.1999)); *see also E.E.O.C. v. Yellow Freight System, Inc.,* 253 F.3d 943, 949 (7th Cir.2001). Accordingly, given Wyatt's rather significant, multi-month absence from work, she is not a "qualified individual" under the ADA as a matter of law and, thus, fails to make out her prima facie case.

2. Wyatt was not Terminated Because of her Disability

Even assuming that Wyatt could make a prima facie showing, Michelin has pointed to legitimate nondiscriminatory reasons for her discharge and she has failed to show pretext. As discussed in the Title VII analysis *supra,* Michelin has offered legitimate nondiscriminatory reasons for terminating Wyatt-specifically, Wyatt violated the Code when she (1) requested and received both S & A benefits and vacation pay on July 11, 2002, (2) requested and received unauthorized S & A benefits for nine months, and (3) called in sick on July 17, 2001, when, in actuality, she had applied for another job on that day. (Wyatt Dep. at 54; Wyatt's Reply Attach. 1); *See Straughn,* 250 F.3d 23. However, since Wyatt has not provided any evidence that would allow a reasonable jury to find these reasons pretextual, Michelin is entitled to their summary judgment on Wyatt's disability discrimination claim.

C. THE RETALIATION CLAIM

Title VII prohibits an employer from retaliating against an employee who has "opposed any practice made an unlawful employment practice by this subchapter, or ... has made a charge" under the statute. 42 U.S.C. § 2000e-3(a). In order to demonstrate that Michelin has violated this provision of Title VII, Wyatt must present either direct or indirect evidence of the employer's retaliatory intent. *Haywood,* 323 F.3d at 531;*Stone v. City of Indianapolis Pub. Util. Div.,* 281 F.3d 640, 644 (7th Cir.2002). Because Wyatt has not offered any direct evidence of retaliation, she must satisfy the indirect method of proof. This means that Wyatt must first establish a prima facie case showing that: (1) she engaged in statutorily protected activity; (2) she performed her job according to her employer's legitimate expectations; (3) despite her satisfactory job performance, she suffered an adverse employment action; and (4) the employer treated her less favorably than similarly situated persons who did not engage in statutorily protected activity. *Haywood,* 323 F.3d at 531. If she meets this burden, Michelin must provide a legitimate, non-invidious reason for her termination. At that point, the burden returns to Wyatt to present evidence that the reasons offered by Michelin are actually a pretext for discrimination. *Haywood,* 323 F.3d at 531;*Stone,* 281 F.3d at 644.

***12** As for the prima facie case, it is undisputed that Wyatt meets the first and third elements: she filed a charge of race, sex, and religious discrimination with the E.E.O.C. on September 14, 2000 and was terminated on August 10, 2001. However, as we have already discussed *supra,* she cannot show that she was meeting Michelin's legitimate job expectations or that Michelin treated similarly situated persons who did not engage in statutorily protected activity more favorably. Accordingly, Wyatt has failed to make out her prima facie case of retaliation as a matter of law. [FN13]

FN13. It is far from clear if Wyatt is alleging ADA retaliation, and certainly the record does not factually support such a claim. *See*42 U.S.C. § 12203(a).

Moreover, if we assume that Wyatt could make a prima facie showing, Michelin has, as discussed *supra,* asserted legitimate, non-invidious reasons for

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

terminating Wyatt, and she has made no effort to show these to be pretextual, and that a retaliatory animus was actually the motivation. Thus, Michelin is entitled to summary judgment on Wyatt's retaliation claim.

## V. CONCLUSION

For the foregoing reasons, Michelin's motion and its supplemental motion for summary judgment is GRANTED, its Motion to Strike is GRANTED, and Wyatt's cross-motion for summary judgment is STRICKEN as untimely. The Clerk is directed to enter judgment in favor of the Defendant and against the Plaintiff.

N.D.Ind.,2003.
Wyatt v. Michelin North America, Inc.
Not Reported in F.Supp.2d, 2003 WL 21918710 (N.D.Ind.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.