IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| EILEEN AHERN, MAUREEN MASTALERZ, DEBRA AUGER and LYNDA PARKER, Plaintiff, | ) |
| vs. | ) C.A. No.: 05-117ML |
| JIM NICHOLSON, SECRETARY, DEPARTMENT OF VETERANS AFFAIRS, Defendant. | ) |

**DEPOSITION OF LYNDA PARKER**, a Plaintiff in the above-entitled cause, taken on behalf of the Defendant, at the United States Attorney's Office, Fleet Center, 50 Kennedy Plaza, 8th Floor, Providence, Rhode Island, at 9:30 a.m. on July 6, 2007, before Jamee L. Bartis, RPR, Notary Public in and for the State of Rhode Island.

CONDENSED COPY

Vivian Dafoulas & Associates
50 Fieldstone Drive
East Greenwich, RI 02818-2064
(401) 885-0992

88

meeting." He's like, "You bring everything with you. I want to know exactly what is going on with all of them." So he was trying to degrade me with the students.

He would question the students as to what I was doing with them. He asked one of my students, a male student, what he could do to better the department, instead of asking one of his own techs. Why would you ask a student? You know, and it was a male student. Of everybody that was there, he sat down with that one student. I had three other students, they were all females.

Q. And when Mr. Khatib spoke with that male student, that didn't affect your job, did it?

A. It didn't affect my job, no.

Q. While you were at the VA Hospital, Mr. Khatib never did anything that negatively impacted your employment; is that fair to say?

A. No, not necessarily. Because I wanted to move up, I wanted to learn CAT scan. I wanted to do that, and he held me back from doing so.

Q. Anything else that Mr. Khatib did, besides the CAT scan training?

A. No.

Q. With respect to the CAT scan training, it's true, isn't it, that Mr. Khatib directed that another woman receive that training; correct?

89

A. He did. A less senior person than me, though.

Q. Just -- sorry to double back, but I have a quick question on your position. Special/clinical instructor is the position you held in 2004; correct?

A. Right. Correct.

Q. And that was a GS-7 position; right?

A. Correct.

Q. Were there any male technologists that held a GS-7 position while you were at the VA Hospital?

A. I'm not sure what the other people had, as far as their positions. I'm not sure what Michael Clayborne had, and I certainly don't know what Raymond Kim or Richard Loring were hired at. I don't know.

Q. You don't claim that any male staff technologist was treated better than you with respect to his employment, do you?

A. No.

MR. MYRUS: Let's mark this as the next exhibit, please.

(Defendant's Exhibit 7 was marked for identification.)

Q. Do you contend that any male employee was treated better than you or do you just contend that you were treated badly?

90

A. No. The contract techs were treated better. Chris Stokes, Luciano, Ganal Dacoste, Gabe Ferreira.

Q. Do you also contend that the female contract techs were treated better than you?

A. Yes. But they came along later on, only after we had made our formal complaints about Marty, and it was like he tried to change the way he treated people, and that's when the female contract techs came in.

Q. And Marty treated the female contract techs the same way he treated the male contract techs; is that fair to say?

A. Yes.

MR. MYRUS: I'm giving you Exhibit 7. Tom, did I already give you a copy of that?

MR. FOLCARELLI: Yes, I think --

MR. MYRUS: It's the second amended complaint.

MR. FOLCARELLI: Right.

Q. Could you take a moment, please, Ms. Parker, and review that document that I just gave you, Exhibit 7.

A. Okay.

Q. By the way, did Mr. Khatib treat Ms. Auger worse than he treated you?

A. I don't know exactly how he treated her, because a lot of times they would have meetings behind closed doors, and she'd come out in tears. So I don't know what happened behind closed doors. I'd never seen it firsthand.

91

Q. Is that also true that Mr. Khatib didn't treat Ms. Ahern any worse than you, as far as you know?

A. The same holds true for Eileen Ahern, also.

Q. Yes.

A. As far as being treated -- we all did different jobs, and he would nit-pick at the girls in CAT scan more so than me, and bring them in the office and reprimand them on anything he could find. So I think he treated them worse than me.

Q. You said he nit-picked at them. Is that what he --

A. That's -- I don't -- I believe that's what he was doing, looking for any little thing to complain. One time, I believe they wanted to change things, the way things were done in CAT scan, he brought one technologist in and yelled at her, and somebody else was in the room as a witness and said, "That's not the way you change policies. If you're going to change it, bring them all in a room and tell them all at once. You don't bring one person in the room, scream at them, make them cry and say, 'That's the way it's going to be from now on.'"

CERTIFICATE

I, Jamee L. Bartis, RPR, Notary Public, do hereby certify that I am expressly approved as a person qualified and authorized to take depositions pursuant to Rules of Civil Procedure of the Superior Court; especially, but without restriction thereto, under Rule 30(e) of said Rules; that the transcript contains a true record taken at the above-entitled proceeding.

Reading and signing of the transcript was not requested by the deponent or any parties involved upon completion of the deposition.

IN WITNESS WHEREOF, I hereunto set my hand this 25th day of July 2007.

______________________________________________

Jamee L. Bartis, RPR, Notary Public
My Commission expires April 5, 2008

IN RE: AHERN, ET AL. VS. NICHOLSON, VA
DEPOSITION OF: LYNDA PARKER
DATE: JULY 6, 2007