# AGREEMENT

# BETWEEN

# VETERANS ADMINISTRATION MEDICAL CENTER

# PROVIDENCE, RHODE ISLAND

AND

# LOCAL UNION 1322

# LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO

# NONPROFESSIONAL UNIT

K-39

# TABLE OF CONTENTS


| | | PAGE |
|---|---|---|
| Article I | Parties to Agreement .......... | 1 |
| Article II | Authority .......... | 1 |
| Article III | Objectives .......... | 1 |
| Article IV | Bargaining Unit .......... | 2 |
| Article V | Management Rights .......... | 2 |
| Article VI | Rights of Employees .......... | 3 |
| Article VII | Union Rights .......... | 4 |
| Article VIII | Grievance Procedure .......... | 5 |
| Article IX | Arbitration .......... | 7 |
| Article X | Dues Deduction .......... | 8 |
| Article XI | Reassignment of Tours of Duty .......... | 9 |
| Article XII | Miscellaneous .......... | 11 |
| Article XIII | Annual Leave .......... | 12 |
| Article XIV | Promotions .......... | 14 |
| Article XV | Position Classification .......... | 15 |
| Article XVI | Training .......... | 15 |
| Article XVII | Disciplinary Actions .......... | 16 |
| Article XVIII | Seniority and Seniority Lists .......... | 16 |
| Article XIX | Approval and Duration .......... | 17 |

## ARTICLE I
## AGREEMENT

Section 1

The parties to this Agreement are identified as follows: (1) the Department of Veterans Affairs Medical Center, Providence, Rhode Island, hereinafter referred to as "the Medical Center," and (2) Local Union 1056, Laborers' International Union of North America, AFL-CIO, hereinafter referred to as "the Union."

Section 2

The Medical Center and the Union agree to abide by the provisions set forth in this Agreement for negotiations and for the settlement of issues and disputes that may arise between them. Neither party shall change the terms of this Agreement, except by mutual consent.

## ARTICLE II
## AUTHORITY

Section 1

This Agreement is entered into under the authority granted in Title 7 of Public Law 95-454; Chapter 711, VA Personnel Policy Manual MP-5, Part I; and Certification of Representation from the U.S. Department of Labor dated May 18, 1970.

Section 2

Personnel policies, practices and working conditions which are within local discretionary authority will not be changed or implemented without prior negotiations with the Union when they are in conflict with this Agreement.

Section 3

The parties recognize that negotiations may not take place with respect to any matter not within the administrative authority of the Medical Center Director.

## ARTICLE III
## OBJECTIVES

Section 1

The objectives of this Agreement are to maintain harmonious employee-employer

relations in order to enhance quality patient care while promoting the well-being of the employee. In furtherance of these objectives, the parties agree to meet at reasonable times to confer and seek mutual understanding on any problems arising under this Agreement, or in relation to the employee-employer relations of the Medical Center.

## ARTICLE IV
## BARGAINING UNIT

### Section 1

The unit for which the Union is recognized as the exclusive bargaining agent and accepts responsibility of representing, includes all hospital and canteen employees. Excepted are managerial executives, professional and supervisory employees as defined in Title 7 of Public Law 95-4.4; employees engaged in personnel work in other than a clerical capacity; the secretaries to the Medical Center Director, Associate Medical Center Director, Chief of Staff and Chief, Human Resources Management Service; and employees on temporary time limited appointments with less than 90 continuous days and Federal Police Officers. Included in the unit are Licensed Practical Nurses and Respiratory Therapists appointed under Title 38; however, this group of employees is excluded from Agreement provisions covering advancements, qualifications, appointments, and pay.

### Section 2

The Medical Center agrees to inform new bargaining unit employees as part of the orientation process that the union is the exclusive bargaining representative under law. It is further agreed to distribute a copy of this agreement to new employees assigned to the bargaining unit. The Union will be afforded an opportunity to have an officer speak and make a presentation to new employees at the New Employee Orientation.

## ARTICLE V
## MANAGEMENT RIGHTS

### Section 1

In the administration of all matters covered by the Agreement, officials and employees are governed by existing or future laws and the regulations of appropriate authorities, including policies set forth in the Code of Federal Regulations; by published VA or department policies and regulations in existence at the time the Agreement was approved; and by subsequently published VA policies and regulations required by law or by the regulations of appropriate authorities.

Section 2

Nothing in this Agreement shall affect the authority of any management official to: (1) determine the mission, budget, organization, number of employees, and internal security practices of the agency; (2) hire, assign, direct, layoff, and retain employees in the agency, or to suspend, remove, reduce in grade or pay, or take other disciplinary action against such employees; (3) assign work, to make determinations with respect to contracting out, and to determine the personnel by which agency operations shall be conducted; (4) in filling positions, to make selections for appointments from – (a) among properly ranked and certified candidates or (b) any other appropriate source; (5) take whatever actions may be necessary to carry out the agency mission during emergencies; (6) determine the number, types, and grades of employees or positions assigned to any organizational subdivision, work project, or tour-of-duty, or on the technology, methods and means of performing work; (7) establish procedures which management officials of the medical center will observe in exercising any authority in this section.

ARTICLE VI
RIGHTS OF EMPLOYEES

Section 1

The Medical Center and the Union agree that employees in the unit have the right freely and without fear of penalty or reprisal, to form, join and assist the Union, or to refrain from such activity and each employee shall be protected in the exercise of this right. The right to assist a labor organization extends to participation in the management of the organization and acting for the organization in the capacity of an employee organization representative, including presentation of its views to the officials of the Executive Branch, the Congress, or other appropriate authority. Nothing in the Agreement shall require an employee to remain a member of a labor organization or to pay money to the organization, except pursuant to a voluntary, written authorization, by a member for the payment of dues through payroll deductions.

Section 2

Each employee covered by the provisions of this Agreement may bring matters of personal concern to the attention of appropriate officials of the Medical Center through his Union representative or may use procedures outlined in applicable laws, regulations, rules or established agency policy that are not in conflict with this agreement.

Section 3

An employee of the bargaining unit is entitled to union representation at any formal discussion between one or more representatives of the agency and one or more

employees in the unit or their representatives concerning any grievance or any personnel practice or general condition of employment. This does not include meetings with an employee to discuss work assignments or to evaluate his or her performance. Nothing in this Article shall affect representational rights conferred upon an employee under 5 U.S.C. 7114(a)(2)(B), also known as Weingarten rights.

## ARTICLE VII
## UNION RIGHTS

Section 1

The Union has the right to negotiate collective bargaining agreements covering all employees in the unit and is responsible, if required, to represent the interest of all employees in the unit without discrimination and without regard to labor organization membership.

Section 2

The Union shall be given the opportunity to be represented at formal discussions between management and unit employees concerning grievances, personnel policies and practices, or other general condition of employment.

Section 3

The medical center agrees to recognize duly elected union officers and appointed stewards. The union agrees to provide the medical center in writing a list of elected officers and designated committee persons on a current basis. The union also agrees to provide management with a copy of the union constitution and bylaws. The number of stewards shall be the number reasonably required to be available to members of the unit, in no case will more than ten be recognized. If for some reason a steward is not available, an elected union officer may act as a steward.

Section 4

Stewards, as requested by unit employees, have the right to investigate grievances and assist in the presentation of such grievances to management personnel. Meetings with supervisory personnel or the employee will be held in surroundings which are as private as possible and will be conducted in a quiet dignified manner. In no case will any such business be conducted in full view or hearing of patients or the general public.

Section 5

Stewards may collect union dues, but such activity may not be carried out during their working time or the working time of other employees or in the work areas of either the steward or the employee concerned.

Section 6

The stewards understand that their function does not in any way relieve them from observing all rules of conduct, established laws, regulations or medical center policy. Management personnel will recognize, meet with and work with union stewards in a conscientious manner to obtain a solution to the disagreement at the earliest possible stage.

Section 7

The medical center agrees to advise all supervisory personnel of the stewards' duties and responsibilities and the need to resolve disagreements as quickly as possible. Stewards will obtain permission from their supervisors to leave their work areas. This permission will be granted as soon as the work situation allows. The steward will also contact the supervisor of a complainant and arrange for a mutually agreeable time to interview the employee who has made the complaint. The stewards will complete their business as quickly as possible and return to their work site. If the steward is not allowed to leave his work area within a reasonable length of time, the action will be subject to the grievance procedure.

Section 8

A book rack for the display of Union Literature will be affixed to a wall in the basement corridor leading to the Medical Center Canteen. It will properly be labeled "Local 1056." The Union President and the Business Manager of the Union will each receive up to four hours of official time once-a-month for attendance at the monthly Union District Council Meeting. An advance schedule of these meetings for the calendar year will be submitted to the supervisor. The granting of time off to attend these meetings is contingent upon patient care needs.

ARTICLE VIII
GRIEVANCE PROCEDURE

Section 1

The following procedure shall be the sole procedure for processing all grievances. Equal Employment Opportunity discrimination complaints may be processed through this procedure, or the statutory procedure, but not both. Excluded from this procedure are grievances concerning any claimed violation of sub-chapter III, chapter 73 of Title 5, relating to prohibited political activities; retirement, life insurance, or health insurance; a national security suspension or removal under section 7532 of Title 5; any examination, certification or appointment; the termination of an employee during his or her probationary or trial period and the classification of any position. An aggrieved employee affected by an action, other than those indicated above, having statutory appeal

procedures may raise the matter under either the statutory procedure or the negotiated procedure, but not both. This will be governed by section 7121 of Title 5. In the processing of Canteen Service employees' grievances, the listed medical center officials in the steps below will be replaced by Canteen officials.

Step 1: In the event an employee has a grievance, it shall be presented orally to the immediate supervisor within seven (7) calendar days of the act or occurrence of the incident that gave rise to the grievance. It must be clearly identified by the employee or representative as a Step 1 grievance or it will not be recognized as a grievance under the procedure. The supervisor must provide an oral reply within seven calendar days in an effort to resolve the grievance.

Step 2: If the grievance is not satisfactorily resolved, it may be presented to the Service Chief in writing within eight (8) calendar days of the receipt of the supervisor's reply. The grievance shall contain the name of the grievant, the nature of the grievance, the section or sections of the negotiated Agreement or Regulations that have been violated, a summary of attempts to resolve the grievance at Step 1, the remedy requested and the name of the grievant's designated steward, if any. The Service Chief will provide a written reply to the grievance within ten (10) calendar days after the receipt of the grievance.

Step 3: If the grievance is not satisfactorily resolved at Step 2, the grievance may be presented to the Medical Center Director in writing within ten (10) calendar days of the Service Chief's decision.

The Medical Center Director will issue his decision within fourteen (14) calendar days of the date of receipt of the grievance.

Section 2

Union initiated grievances that do not dispute a specific action by Management, or one that extends to more than one Service, may be filed by the Union Business Manager, or his designee, with the Personnel Officer in accordance with time limits of Step 1. This will be considered as a Step 3 grievance.

Section 3

It is agreed that when a group has a grievance, it will be considered in the same manner as an individual complaint of one employee, and the decision will be binding on the group.

Section 4

Grievances initiated by Management can be filed by the Personnel Officer with the Union Business Manager in accordance with the time limits established in Step 1, and

will be considered a Step 3 grievance. The Union Business Manager will respond orally, unless otherwise requested, within ten (10) calendar days of receipt of Management's grievance.

Section 5

If any grievance is not taken up with the supervisor or acting supervisor within seven (7) calendar days after the occurrence of the matter out of which the grievance arose, such grievance shall not be presented or considered at a later date, except cases where the employee was not aware of being aggrieved, but in no case later than thirty (30) calendar days of the date of the alleged action. Extensions may be granted in unusual cases, provided it is mutually agreed upon by both parties.

Section 6

If management fails to respond within the time limits designated, the grievant or Union representative may advance the grievance to the next step within the prescribed time limit. If the grievant or the Union fails to advance the grievance to the next step within the prescribed time limit, the grievance shall be considered to be resolved.

Section 7

Employees who wish to designate a steward to represent them in any matter concerning their employment will do so in writing. Employees and a designated steward will be allowed up to eight hours of official time to prepare and present a grievance through all steps of the grievance procedure. Extensions to time limits indicated above may be mutually agreed upon, and an employee may terminate a grievance orally or in writing at any time. Requests for time extensions will be submitted to the Personnel Officer.

Section 8

Management and the Union agree that matters subject to grievance will not be posted on the Bulletin Boards by Management or the Union until after the grievance has been finally adjudicated. Material posted on the bulletin boards will be purged of non-bargaining unit names and other identifiable data on individuals.

## ARTICLE IX
## ARBITRATION

Section 1

If the Medical Center and the Union fail to settle any grievance under the grievance procedures, it may be submitted by either party to binding arbitration within ten (10) calendar days of the date of the Medical Center Director's decision. Within the ten-day

period, the party requesting arbitration will request the American Arbitration Association to submit a list of five arbitrators and a copy of the request will simultaneously be served on the other party. Each party will alternately strike one name from the list of arbitrators until one name remains, and he will be the arbitrator. The party requesting arbitration will strike the first name. Should one party decide not to participate in selecting the arbitrator, the list shall be returned to the American Arbitrations Association requesting an arbitrator be named.

Section 2

The Medical Center and the Union shall each bear the expense of preparing and presenting its own case before the arbitrator. The compensation for the arbitrator shall be equally shared by both parties. The grievant and the steward, if an employee, will be excused from duty to participate in the arbitration proceedings without charge to leave if these proceedings are scheduled during duty hours.

Section 3

When Management has rejected the grievance on the grounds that it is not grievable or arbitrable, the issue of grievability and arbitrability will be submitted to an arbitrator for decision. The arbitrator will make a determination concerning the grievability before holding a hearing on the merits of the grievance.

Section 4

Either party may file exceptions to an arbitrator's award with the Federal Labor Relations Authority or the Equal Employment Opportunity Commission as appropriate under prescribed regulations.

ARTICLE X
DUES DEDUCTION

Section 1

Upon receipt of a written assignment from an employee in the bargaining unit which authorized the deduction of union dues from their regular pay, the agency will effect the deduction no later than the second pay period after receipt of the authorization by Human Resources Management Service.

Section 2

Dues deduction with respect to any employee shall terminate when:

a. The Agreement between the Medical Center and the Union ceases to be applicable to the employee; or,

a. The employee is suspended or expelled from membership in the Union.

Section 3

Employees wishing to stop their dues deduction may submit such a request to the Human Resources Management Service. Any request for the cessation of dues deduction will be effected the first full pay period in March of each year provided the allotment has been in effect for one year. Request must be received prior to the start of that pay period.

## ARTICLE XI
## REASSIGNMENT AND TOURS OF DUTY

Section 1

Normally, employees' schedules will be established and posted ten (10) calendar days in advance of the administrative workweek. The employer shall endeavor to alert employees to changes in this schedule. However, management retains the right to change the schedule at any time in advance of the administrative workweek based on work requirements.

Section 2

Scheduling of tours of duty (shifts) will be made in a fair and equitable manner. Where permanent assignment to a particular tour of duty is a matter of policy, the request of a qualified senior employee as determined by Management, (in accordance with established seniority lists), will prevail when a vacancy exists except when an employee voluntarily agrees to short-term assignment to a different shift. The policy exists in Nursing Service, Nutrition and Food Service, and Housekeeping Aids in Facilities Management Service. During the first six (6) months of employment, assignments will be made at Management's discretion and this period may be extended in individual cases. Under this section, seniority may apply for indefinite assignment to shifts only after Management has determined which employees possess the requisite skills necessary to accomplish the work on that shift.

Section 3

In work units requiring weekend coverage, days off will be scheduled as equitably as possible in accordance with the needs of the service, the desires of employees concerned and past practices. Management and the Union agree to meet as requested by either party for the purpose of discussing alternative scheduling as a means of decreasing the number of weekends unit employees are required to work. The following will apply to the specific services concerned:

a. NUTRITION & FOOD SERVICE. The scheduled tour shall consist of five (5) days with two (2) consecutive days off, unless management is unable to meet work



08/09/2007 THU 13:37 FAX 013/022

requirements or cost would be substantially increased.

b. FACILITIES MANAGEMENT SERVICE. Attempts will be made to schedule Housekeeping Aids, not specifically hired for weekend work, to be off every other weekend, whenever work demands permit. When vacancies exist at the same grade and require the same skills and knowledges, and applicants are equally qualified, selections will be made by service seniority.

c. NURSING SERVICE. An employee or employees may request having their particular days off, including weekends. If possible, based on work needs and requirements and employee skills needed for work during a shift, as determined by management, employees will generally not be required to work another tour of duty (shift) until two shifts have elapsed since the completion of their previous tour of duty. Employees may voluntarily agree to waive this provision.

Opportunities for Nursing Service personnel to change shift assignment or work area are announced to the staff by E-mail message. Staff has fourteen (14) days to apply to the Chief, Nursing Service by memorandum requesting consideration for the position. Unit staff will be given priority for shift vacancies on that unit prior to the vacancy being announced to the general Nursing staff.

Rotations from one tour of duty to another tour will be effected on an inverse seniority basis starting with every two pay period work schedule. Rotation is defined as a reassignment on one day or two consecutive days even if a day off is in between, except voluntary consecutive tours in excess of two days and tours for which overtime premium is paid. Should management determine that the needs of the medical center would be better met by a long term reassignment to another tour for the duration of that need, the least senior qualified LPN/NA of the ward on the day tour of duty will be reassigned if practical. Incorrect assignments are not subject to grievance and when they do occur, assignments will be interchanged. LPN/NA's selected for rotation to another position under this article must meet the qualifications of the position as determined by Management.

d. PATHOLOGY AND LABORATORY MEDICINE SERVICE. Employer agrees that weekend work will be assigned in a fair and equitable manner to all qualified technicians.

e. RESPIRATORY CARE UNIT. The Employer agrees that when assigning qualified technicians as determined by management to a particular tour of duty, department seniority in the Respiratory Care Unit of Medical Service will prevail.

<u>Section 4</u>

Authorized overtime will be distributed equitably among the employees qualified as determined by management to perform such duty. Except when scheduled overtime

merges with an employee's regularly scheduled tour of duty, overtime work performed by an employee who is called back to work will be considered to be at least two hours in duration consistent with appropriate regulations.

Section 5

Holiday work will be distributed equitably among all employees in the unit, and only those employees required to maintain essential services will be scheduled to perform duties. The Employer agrees that at least ten (10) days prior to a regularly designated holiday an appropriate work schedule will be posted in those services which have seven-days-a-week scheduling for unit employees. The Employer agrees to make every effort to schedule assignments so that no employee will be required to work both the Christmas and New Year holidays.

Section 6

No more than two (2) brief rest periods will be allowed in any eight (8) hour tour of duty. These rest periods will be approximately midway in the first four (4) hours of work and midway in the second four (4) hours of work and should not exceed ten (10) minutes each and must be regulated to maintain adequate coverage of essential functions at all times.

## ARTICLE XII
## MISCELLANEOUS

Section 1

The Medical Center will maintain safe working conditions and health protection for employees. The Union will cooperate toward this end and will encourage all employees to work in a safe manner. The Union will designate one employee from the unit to serve on the Medical Center Safety Committee.

Section 2

The Union agrees to provide the Personnel Officer with copies of letters, or other forms of correspondence, sent by an official of the Union to members of Congress, the Office of Personnel Management, Department of Veterans Affairs Central Office, news media or the White House which pertain to matters associated with this Medical Center. This section does not pertain to correspondence sent by an employee when not acting in any official union capacity.

Section 3

The Employer agrees to furnish the Union an appropriate space on the bulletin board, the basement floor of the medical center, located adjacent to the Canteen.

Section 4

Whenever the work processes so require, ten minutes of clean-up time will be allowed at the end of the work shift. Employees will be allowed adequate time to wash their hands prior to their lunch periods. Employees will be allowed to wear government owned uniforms to and from work and will not be required to change uniforms at the medical center. The medical center will continue to provide locker facilities, if available, for employees who prefer to change at the medical center.

Section 5

Sick leave appropriately scheduled in advance may be granted for medical, dental or optical examination or treatment. When an employee reports her pregnancy, supervisors shall determine (with advice from the Employee Health Physician and the employee's personal physician when necessary) whether her duties and work surroundings involve exposure to health hazards peculiar to her condition.

Section 6

To prevent the spread of infection and communicable disease, employees will follow isolation procedures established by the Medical Center Infection Control Committee and as outlined in the Infection Control Manual. Management will provide protective clothing as determined appropriate by the Infection Control Committee as outlined by present or future OSHA requirements.

ARTICLE XIII
ANNUAL LEAVE

Section 1

Employees shall earn annual leave in accordance with applicable laws. Approval of an employee's request to take annual leave may be granted when the employee has given the supervisor reasonable notice and when the employee can be reasonably spared. Annual leave for emergency reasons will be considered on an individual basis, and retroactive approval of annual leave may be given when circumstances warrant.

Section 2

Regularly scheduled annual leave will be requested in advance and scheduled in accordance with the following:

a. Management will take into consideration the workload to determine the number and types of employees who can be absent from the work area at any one time.



08/09/2007 THU 13:38 FAX 016/022

DVA0747

b. Leave schedules will be established for each assigned work area as determined by Management.

c. Employees with seniority will be given preference in granting annual leave. Seniority may be exercised only once in each leave period and then only for one-week periods (Sunday through Saturday) or more in full week increments. Individual requests for leave for less than one-week periods during that current leave period will be on a first-come, first-serve basis.

d. Senior employees who do not exercise their option in selecting leave in accordance with the leave periods will forfeit their seniority rights. Employees who are absent for any reason and are not available to select annual leave will be contacted by the supervisor either by mail or by telephone and given an opportunity to select their leave.

Employees not selecting within 48 hours after being contacted, or who cannot be contacted, will waive their right to exercise seniority for that leave period.

e. Normally, leave period will not exceed two weeks duration in any one leave period, or overlapping periods.

f. There will be three leave periods beginning and ending on or about:

(1) January 1 through April 30

(2) May 1 through September 30

(3) October 1 through December 31

g. Seniority is not transferable; however, after leave schedules have been approved, employees may agree to exchange leave periods with the approval of the supervisor.

h. Management will give employees an opportunity to select their annual leave at least thirty (30) days prior to the start of the leave period and will post or make available the approved leave schedule at least ten (10) days prior to the start of each leave period.

i. In work units requiring seven-days-a-week coverage, two weeks annual leave including both the Christmas and New Year holidays may not be requested. Employees may request one week which includes either holiday. Days off with annual leave will not include both holidays.

j. Services may establish a requirement that an SF-71 be initiated for a request for leave, regardless of the interval of time. It is the supervisor's responsibility to provide the SF-71.

# ARTICLE XIV
## PROMOTIONS

Section 1

It will be the policy of the Employer to select employees of the Medical Center for promotional opportunities to the extent possible according to appropriate laws and regulations. This policy is not intended to alter or violate any of the provisions of the Merit Promotion Plan. All vacancies within the unit, including trainee-type and others with promotion potential, will be announced under the Merit Promotion Plan unless excluded under provisions specified in the Plan or filled through non-promotion methods.

Section 2

For positions within the unit, if there are at least three high quality candidates located within the Medical Center, management agrees to give them consideration. This does not in any way limit management's right to make selections from any other recruitment source and to change that source at anytime. Voluntary applications will be accepted from VA employees at other locations as required by regulations. Such candidates will be required to meet the same qualification requirements as Medical Center employees.

Section 3

In ranking candidates for promotions under the Merit Promotion Plan, seniority at the Providence VA Medical Center will be used to break ties.

Section 4

The Employer agrees to use temporary promotions for the temporary replacement of higher grade personnel if the detail is to be a significant period of time.

Section 5

Upon the written request of an employee, Service Chiefs will document all informal details of more than five (5) consecutive workdays to higher graded positions. When documented details of more than five but less than thirty workdays equals thirty workdays or more during the fiscal year, the supervisor will consolidate and summarize the details and forward the summary to Human Resources Management Service for inclusion in the Official Personnel Folder.



08/09/2007 THU 13:39 FAX

018/022

DVA0749

## ARTICLE XV
## POSITION CLASSIFICATION

Section 1

Any downgrading or reclassification of job level shall be discussed by the Employer with the representative of the Union prior to the effective date of such change if requested by the employee. The Employer agrees to furnish the employee two copies of advance notices of adverse reclassification actions, one of which may be given to the Union. If no agreement can be reached on the matter through discussion, the Employer can proceed to effectuate the change subject, however, to the employee's right to challenge such change in accordance with existing regulations.

Section 2

The Employer will discuss changes in job descriptions or job requirements with the employee or employees concerned. When group action is going to be taken to change descriptions or requirements within the limits of the Privacy Act, the Union president will be notified. Further, an employee may at any reasonable time discuss his job description or job requirements with his supervisor. The Employer agrees that at the employee's request, a union representative may be present and represent the employee at such meetings.

Section 3

The employee has a right to appeal the classification of his position either to the VA Central Office or to the Office of Personnel Management. Wage Grade employees must appeal to the VA Central Office, prior to appealing to the Office of Personnel Management. The Union, when designated in writing by an employee, may also file on behalf of the employee. In either case, the appeals will be filed through the Chief, Human Resources Management Service for expediency.

## ARTICLE XVI
## TRAINING

Section 1

A training program for the medical center is of vital interest to the medical center and to the union. The objective of the training program is to provide organized on-the-job and classroom training to qualified employees to develop skills required of employees in the operation of the medical center. All employees are free to apply for training which will prepare them to perform their jobs better.



2019/022

08/09/2007 THU 13:39 FAX

DVA0750

Section 2

The Employer agrees that when formal training is required for advancement, selected candidates successfully completing such training will be promoted within a reasonable time, if performance and qualification standards are met.

ARTICLE XVII
DISCIPLINARY ACTIONS

Section 1

In all cases of adverse and/or disciplinary action by the Employer against any employee covered by this Agreement, the emplo- .e's steward shall, with the employee's consent, be notified of the actions taken by the Employer as soon as possible after the employee is notified.

Section 2

When disciplinary action is proposed or taken, all employees covered by this Agreement shall have a right to representation by the Union. In order to educate employees and supervisors concerning this right to union representation, the parties agree periodically to post notices on bulletin boards and to include articles in the Personnel Bulletin explaining the right to representation.

ARTICLE XVIII
SENIORITY AND SENIORITY LISTS

Section 1

Seniority will be based on the period of service since the last appointment at the VA Medical Center, Providence, Rhode Island. In the event of a previous appointment at the Providence VA Medical Center, the original date of that previous appointment is applicable only if the break in employment at the Providence VA is less than one (1) year. Employees with breaks in employment are responsible to notify their supervisor of their right to such seniority credit. Military service intervening between periods of service will not be considered a break in service provided the employee exercises his reemployment rights upon return from military service.

Section 2

When an employee is assigned to a regular shift, the employee's name shall be placed on the seniority list.

Section 3

The Employer will furnish the Union during the month of December with three copies of a list of all employees in the unit, indicating the date of seniority of each employee.

Section 4

Additions or deletions to seniority listings caused by employee accessions, separations, reassignments or other changes will be made by the timekeeper of each service concerned.

Section 5

Seniority listings will be displayed on the bulletin board of each service having such boards and will be available in all other services which have employees belonging to the unit.

ARTICLE XIX
APPROVAL AND DURATION

Section 1

Final authority for approval of this Agreement rests with the Under Secretary For Health in VA Central Office.

Section 2

The effective date of the Agreement will be the date of approval by the Under Secretary for Health. It shall remain in effect for a period of three years from its effective date and will automatically be renewed thereafter for like periods, unless terminated by either party under the terms of this Agreement. Each new three-year period will be a new duration period with a new effective date. Either party may terminate the Agreement at the end of any duration period by notifying the other at least 60 days, but not more than 105 days, in advance of the date the Agreement will be renewed.

Section 3

Once during each Agreement period either party may request modification of this Agreement by notifying the other in writing that such modification is desired. The notice shall state the nature of the revisions desired and should be given not less than 60 days, nor more than 90 days, before the end of the duration period of the Agreement. There shall be no more than one such request for modification during each Agreement period, except upon the mutual consent of the parties.

Signed in Providence, Rhode Island, this 30 day of Sept 1999

For the Medical Center:

JAMES CODY
Medical Center Director (acting)

ALAN L KOROLENKO
Chief, Human Resources
Management Service (acting)

For the Union:

RONALD COIA
Supervisor

FRANK MARATTA
President

Approved:

KENNETH J. CLARK
Chief Network Officer