IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

EILEEN AHERN, ET AL., :
Plaintiffs :
:
v. : C.A. NO. 05-117ML
:
JIM NICHOLSON, SECRETARY, :
DEPARTMENT OF VETERANS AFFAIRS, :
Defendant :

Deposition of MAUREEN MASTALERZ, a Plaintiff herein, taken on behalf of the Defendant, on WEDNESDAY, JULY 18, 2007, at the United States Attorney's Office, Fleet Center, 50 Kennedy Plaza, Providence, Rhode Island, commencing at 9:41 a.m., before Diane J. DeStefano, RPR, a Notary Public in and for the State of Rhode Island.

Vivian S. Dafoulas & Associates
50 Fieldstone Drive
East Greenwich, RI 02818
(401) 885-0992



APPEARANCES:

FOR THE PLAINTIFFS:
FOLCARELLI LAW
BY: THOMAS FOLCARELLI, ESQUIRE
55 BRADFORD STREET, SUITE 203
PROVIDENCE, RHODE ISLAND 02903

FOR THE DEFENDANT:
OFFICE OF THE UNITED STATES ATTORNEY
BY: RICHARD B. MYRUS, ESQUIRE
FLEET CENTER, 50 KENNEDY PLAZA
PROVIDENCE, RHODE ISLAND 02903

COPY



I N D E X


| WITNESS | PAGE |
|---|---|
| MAUREEN MASTALERZ | |
| Direct Examination by Mr. Myrus | 5 |
| Cross-Examination by Mr. Folcarelli | 196 |
| Redirect Examination by Mr. Myrus | 203 |


E X H I B I T S

DEFENDANT'S:


| NO. | DESCRIPTION | PAGE |
|---|---|---|
| 23 | Position Description | 17 |
| 24 | Employee OT/CT Report | 30 |
| 25 | Diagnostic Imaging Service Pay Period General Information for Maureen Mastalerz | 30 |
| 26 | 2/14/2005 letter to Dept. of Veteran Affairs from Maureen Mastalerz | 35 |
| 27 | Record of Exit Interview | 47 |
| 28 | Report of Contact | 55 |
| 29 | Technologist Workload Report | 97 |
| 30 | Defendant Nicholson's First Set of Interrogatories Addressed to Plaintiff Maureen Mastalerz | 112 |
| 31 | Plaintiff Maureen Mastalerz's Response to Defendant Nicholson's First Set of Interrogatories | 112 |
| 32 | Supplemental Answers to Defendant Nicholson's First Set of Interrogatories to Plaintiff Maureen Mastalerz | 112 |
| 33 | 5/21/2004 Memorandum - Counseling Letter | 134 |




E X H I B I T S

DEFENDANT'S:


| NO. | DESCRIPTION | PAGE |
|---|---|---|
| 34 | 5/25/04 memo from Casimira Sta. Ines | 141 |
| 35 | 6/21/04 Admonishment | 141 |
| 36 | 5/19/04 Report of Contact | 141 |
| 37 | 7/14/04 letter from Vanessa Greenier, MD | 152 |
| 38 | 7/8/2004 letter to Maureen Mastalerz from Mehrdad Khatib | 152 |
| 39 | Standard for Medical Documentation | 152 |
| 40 | Certification of Health Care Provider | 152 |
| 41 | 8/5/04 memo to Maureen Mastalerz from Mehrdad Khatib | 152 |
| 42 | 9/15/04 letter from Vanessa Greenier, MD | 152 |
| 43 | Letter to John Sylvia from Maureen Mastalerz | 152 |
| 44 | 7/2/04 out-of-work slip from Vanessa Greenier, MD | 154 |
| 45 | 11/8/04 e-mail from Maureen Mastalerz to Mehrdad Khatib | 164 |
| 46 | Formal Complaint | 168 |
| 47 | 11/3/04 e-mail from Maureen Mastalerz to Mehrdad Khatib | 178 |
| 48 | 11/15/04 Reprimand | 178 |
| 49 | Leave System Policy Memorandum | 178 |

Page 173

Dr. Shafer's position?
A. He was a radiologist.
Q. You don't contend that Dr. Shafer discriminated against you; your position is that he was in the department during this period; is that right?
A. Repeat that, please?
Q. You don't contend that Dr. Shafer discriminated against you; it's your position that he was in the department during the period in question; is that right?
A. I think that he helped Mr. Khatib discriminate against me.
Q. How?
A. He -- he would just -- he would -- I'm trying to think of the words. Give me a minute. He would support Mr. Khatib's actions and words by -- he would just support him and he gave him more power to do what he did.
Q. Dr. Shafer never, himself, did anything specific to discriminate against you though; is that fair to say?
A. No, he left it pretty much up to Mr. Khatib.
Q. And you don't contend that anyone else at

Page 174

the hospital harassed you, other than Mr. Khatib; is that correct?
A. Not at that time, no. You mean at any time?
Q. Beginning in 2003, until the time that you left. Is that better?
A. Yes. It was really just Mr. Khatib.
Q. And you don't contend that anyone at the hospital retaliated against you other than Mr. Khatib; is that correct?
A. Yes. And --
Q. Now, you did -- sorry, let me just --
A. Okay.
Q. You were involved in a prior EEO matter in 2000; is that correct?
A. Yeah. I think it was then. I'm not sure of the dates.
Q. That was the matter involving Bruce --
A. Foster.
Q. -- Foster? Thank you. Yes?
A. Yes. But, you know, the retaliation -- it probably doesn't act as retaliation, but we did go to administration to complain about Mr. Khatib and they did nothing. Is that considered retaliation?
I went to Mr. McBurney and told him. We

Page 175

went through the proper channels and they didn't do anything. That's not really a retaliation, but it didn't help the matter that they didn't take any kind of responsibility for their manager.
Q. What -- you don't have any evidence that Mr. Khatib was aware of your prior EEO activity regarding Bruce Foster, right?
A. I don't know if we had told him or not. I am not sure. I don't have any evidence per se to say, oh, yeah, I told him on such and such a date, but I'm sure he knew about it.
Q. That's just a gut feeling, right?
A. Well, people gossip, people talk. There is lots of people that want people to know what's going on exactly, so I'm sure he found out about it.
Q. What was your discussion with Mr. McBurney?
A. Eileen and I went to see him about the -- about the conditions in CT, and --
Q. Approximately when?
A. -- and in the department. I don't know. I'm trying to think of when because I know we got in trouble for making the appointment from Mr. Khatib. He said he wanted to know if we made any appointments. He had to know right away.

Page 176

Q. What was Mr. McBurney's title?
A. I don't know. What was his title?
Q. That's all right if you don't know.
A. I don't know. He was new. It was when he first came. He wasn't there --
Q. And then what did you say to Mr. McBurney as best you can recall?
A. We told him about the schedule and how they were overbooking the people and how we were just complaining about Mr. Khatib and his actions.
Q. And what did Mr. McBurney say?
A. He said he was going to look into it and do something.
Q. Did you talk to anyone else in the hospital administration about Mr. Khatib?
A. Yeah. We talked to Dr. Sta. Ines, Joe Yannish.
Q. What was the discussion you had with Joe Yannish if you can recall?
A. I can't recall. I'm trying to think who else we talked to.
Q. What discussions did you have with Dr. Sta. Ines?
A. We had all those meetings with her about Mr. Khatib and how his actions -- well, I didn't go

Page 205

think you still take it anyways.

I mean you use your common sense when you take it. It's not like you're going to say, oh, there's eight patients waiting and I'm going to take it anyways and leave you by yourself. I don't think I would ever do that. You make sure your shift is covered before you take off on last-minute annual leave.

And in past practices I did only put it in the computer and it was approved. But sometimes, if you are on vacation, it's been known -- I probably have done it. And you take an extra day. You don't actually put it in, but you put it in afterwards and it's not approved by the supervisor.

And in that department at that time it wasn't like it was a casual thing to say, "Hey, Marty, I'm going to leave early an hour tomorrow." You just wouldn't say that. He made the conditions so intolerable that I never talked to the man after a while because he would make me quake. I was just so horrified from being with him, from all his actions. I was actually scared of him.

Q. With respect to the backlog that we discussed, you agree that in March of 2004 there was a backlog of slips, correct?

Page 206

A. Uh-hum, yes. There was a backlog of slips that was made by Marty. There is always going to be a backlog of requests because there's ten doctors ordering and one CT machine.

Q. Even after the duplicates were culled out and the patients who were deceased were culled out, there was still a backlog, correct?

A. But it wasn't as large. It was a handable -- hander -- handable -- you could handle the backlog.

MR. MYRUS: I don't have any additional questions.

MR. FOLCARELLI: All right.

MR. MYRUS: Before we go off the record though, there are two things. Based on the order that the court issued and the correspondence between counsel for the plaintiffs and my predecessor, Ms. Mastalerz was going to supplement her interrogatory responses and did supplement, but I don't think that you supplemented Interrogatory No. 12, which was one of the ones that you had agreed to supplement.

MR. FOLCARELLI: Okay. I will take a look at that.

MR. MYRUS: We need to take a look at that.

Page 207

MR. FOLCARELLI: All right.

MR. MYRUS: And then we also need to discuss the interrogatory responses that we addressed today which Ms. Mastalerz has indicated were not appropriate to her, so we can talk about that.

MR. FOLCARELLI: Okay.

MR. MYRUS: I think those are the housekeeping issues. Oh, will you please provide to me the communication between you and whoever was at the VA regarding Ms. Mastalerz's leave issue?

MR. FOLCARELLI: All right.

MR. MYRUS: Thank you.

(Whereupon, the deposition was concluded at 4:12 p.m.)

Page 208

C E R T I F I C A T E

I, Diane J. DeStefano, a Notary Public in and for the State of Rhode Island, duly commissioned and qualified to administer oaths, do hereby certify that the foregoing deposition of Maureen Mastalerz, a Plaintiff in the above-entitled cause, was taken before me on behalf of the Defendant, Jim Nicholson, Secretary, Department of Veteran Affairs, at the offices of the United States Attorney, Fleet Center, 50 Kennedy Plaza, Providence, Rhode Island, on July 18, 2007, that previous to examination of said witness, who was of lawful age, she was first sworn by me and duly cautioned and sworn to testify the truth, the whole truth, and nothing but the truth, and that she thereupon testified as in the foregoing manner as set out in the aforesaid transcript.

I further certify that the foregoing deposition was taken down by me in machine shorthand and was later transcribed by computer and that the foregoing deposition is a true and accurate record of the testimony of said witness.

Pursuant to Rule 5(d) and 30(f) of the Federal Rules of Civil Procedure, original transcripts shall not be filed in court; therefore, the original is delivered and retained by the Defendant's attorney, Richard B. Myrus.

A correction and signature page was not requested by the witness.

IN WITNESS WHEREOF I hereunto set my hand this 2nd day of Oct 2007.

Diane J. DeStefano, Notary Public