UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| EILEEN AHERN, et al., Plaintiffs | : | |
| VS. | : | C.A. NO. 05-117ML |
| JIM NICHOLSON, SECRETARY, DEPARTMENT OF VETERANS AFFAIRS, Defendant | : | |

Deposition of **RAJEEV KUMAR GUPTA**, a witness herein, taken on behalf of the Defendant, on MONDAY, JULY 23, 2007, 9:30 A.M., at the offices of United States Attorney, 50 Kennedy Plaza, Providence, Rhode Island, before Vivian S. Dafoulas, Registered Merit Reporter/Certified Realtime Reporter.

CONDENSED COPY

Vivian S. Dafoulas, RMR-CRR
50 Fieldstone Drive
East Greenwich, RI 02818-2064

(401) 885-0992

MR. MYRUS: Let me withdraw that question.
THE WITNESS: Okay.
Q. Did someone else write this for your signature do you think?
A. No. I wrote it by myself. I definitely, you know, I went through the documentation from psychiatric -- from the psychiatrist and the counselor along with it so the contribution of all of those things are over here in her diagnosis and symptomatology.
Q. It's not your position that Ms. Auger suffered a nervous breakdown as the end of her vacation approached, right?
A. That -- that actually, you know, patient -- patient's history.
Q. Patient history meaning --
A. Right.
Q. -- what the patient reported to you?
A. Reported to me, yes.
Q. So to the extent anyone were trying to suggest that your medical opinion is that she suffered a nervous breakdown, that wouldn't be accurate, right?
A. Hard to tell. I -- I -- exactly I couldn't understand your question, you know.



MR. MYRUS: Let me try to rephrase that.
Q. It's not your medical opinion that Ms. Auger suffered a nervous breakdown, correct? That's not your opinion?
A. Nervous breakdown actually, you know, exactly -- I don't understand exactly what the medical terminology you mentioned. Nervous breakdown could be, you know, just a patient is not able to cope up with her normalcy of life so -- which is true.
Q. These aren't your words; you are adopting the words of Ms. Auger here for purposes of this letter, is that fair to say?
A. Plus, you know, the psychiatrist and the counselor.
Q. Right. Well, there is no psychiatrist that ever reported to you that Ms. Auger suffered any nervous breakdown, right?
A. No. Not -- not, you know, I'm just saying, you know, that I'm referring to the, you know, other --
Q. Ms. Morin's statements?
A. Exactly.
Q. And in the next paragraph, the third sentence you write: "She was diagnosed as major



depression without psychosis, posttraumatic stress disorder as well as panic anxiety disorder"; right?
A. Right.
Q. You did not diagnose her as posttraumatic stress disorder, right?
A. No.
Q. So to the extent anyone is suggesting that you diagnosed her as having posttraumatic stress disorder, that would be wrong, right?
A. That's right.
Q. Now, in the last, the -- the third to last paragraph, in my personal opinion --
A. Uh-hum.
Q. You say you have no doubt that she suffered abuse caused by harassment --
A. Right.
Q. -- right?
A. Right.
Q. But you don't have any knowledge of specifically what abuse Ms. Auger suffered, is that right?
A. That's true. Some -- some stories, you know, she told me but, you know, I don't recall now but, you know, she did mention a lot of, you know, things.



Q. But nothing that she told you stands out in your mind as particularly --
A. No.
Q. -- bad, right?
A. I -- I don't recall, no.
MR. MYRUS: Can we mark this as the next exhibit, please?
(Whereupon, Gupta Exhibit No. 6 was marked.)
Q. This is Exhibit 6. It's a document entitled "List of Employment Related Incidents and Conditions Causing my Illness" created by Ms. Auger. Have you ever seen this document?
A. No. I don't think so. I don't recall seeing this one.
Q. If you turn to the third page AH1841, under 8 January '04, do you see where it says, "Debi gave Marty letters requesting documentation of duties as department coordinator for OPF to document experience gained. He didn't seem to like this."
A. Yes.
Q. And then January 9th, "In front of people in the hall Marty walked away from Debi mid-sentence while she was trying to discuss something with him."
A. Yes.

MR. MYRUS: Okay. Thank you.
(Adjourned at 1:05 p.m.)



STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS
KENT, Sc.

CERTIFICATION

I, VIVIAN S. DAFOULAS, Registered Merit Reporter/Certified Realtime Reporter, Notary Public in and for the State of Rhode Island, do hereby certify that the witness was first duly sworn to tell the truth, the whole truth and nothing but the truth in the matter of EILEEN AHERN, et al., vs. JAMES NICHOLSON; that I am in no way related or have any interest in said matter and that the testimony of said witness was duly recorded by me in computerized stenotype and is a true and accurate transcription of my notes.

IN WITNESS WHEREOF, I have hereunto set my hand this 28th day of July, 2007.

-----------------------
Vivian S. Dafoulas, RMR-CRR
East Greenwich, RI 02818
(401) 885-0992